FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2013 DEC -9  PM 4: 02

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

1    Martin Thomas Wirth

2    36 Iris Drive

3    Bailey, Colorado 80421

4    303-816-1054

5

6

7              UNITED STATES DISTRICT COURT FOR

8                   THE DISTRICT OF COLORADO

9                     '13 - CV - 03309

10   Martin Thomas Wirth,              )    Civil Action No._____

11          Plaintiff pro se           )

12   v.                                )    COMPLAINT FOR INJUNCTIVE AND

13   THE STATE OF COLORADO;            )    DECLARATORY RELIEF, REGARDING

14   JOHN HICKENLOOPER, in his official )   STATUTORY CIRCUMVENTIONS OF:

15   capacity as Governor of Colorado; )    CONSTITUTIONAL RESTRAINTS,

16   JOHN SUTHERS, in his official     )    RULES OF EVIDENCE, AND

17   capacity as Attorney General of   )    DUE PROCESS

18   Colorado;                         )

19   Stephen A. Groome, in his official )

20   capacity as 11th District Court judge; )

21   NATIONSTAR, LLC;                  )

22   LARRY CASTLE, in his corporate and )

23   individual capacities;            )

24   CASTLE STAWIARSKI, LLC;           )

25          Defendants.                )

26                                     )

27   _____)

28

Nature of the Action

1. Colorado's foreclosure statutes presume that non-existent indorsements or assignments exist based solely on an unsworn "certification" or "statement" by the foreclosing party's counsel. This presumption contradicts and negates Constitutional requirements of due process and fundamental rules of evidence. The statutes, infra, violate the Equal Protection Clause of the Fourteenth Amendment of the US Constitution in so far as evidentiary and due process protections to home and real property owners have been rendered practically non-existent compared to owners of other forms of collateral.

Jurisdiction

2. Pursuant to 28 USC § 1331 the United States District Court has jurisdiction over civil matters arising under the Constitution and laws of the United States.

Venue

3. Venue is proper pursuant to  28 USC § 1391 because the plaintiff resides in the State of Colorado and the defendants is the State of Colorado and it functionaries along with other court officials residing in Colorado.

Parties

4. Plaintiff resides at 36 Iris Drive, Bailey, Colorado 80421

5. Plaintiff's complaint is against the State of Colorado.

6. John Hickenlooper is the Governor of Colorado.

7. John Suthers is the Attorney General of Colorado.

8. Stephen A. Groome was the district court judge who presided over plaintiff's Rule 120 hearing, Colorado case 2013CV030104.

9. Nationstar, LLC was the presumed holder of a lien on the plaintiff's home.

10. Larry Castle is an attorney and founder of Castle Stawiarski law firm that handles foreclosures in Colorado.

1

2                                    <u>Statement of Facts</u>

3    Contents

4    I.      Summary                                                                    2

5    II.     Statutory Provisions                                                       4

6            A.      C.R.S. §38-38-101(6)(b) Deems Nonexistent Evidence of Indorsement or

7            Assignment to Exist                                                        4

8            B.      C.R.S. §38-38-101(1)(b)(II) and (c)(II) Allow Foreclosure by "Certification" or

9            "Statement" in Lieu of Evidence                                            5

10           C.      C.R.S. §38-39-102(3)(a)(I) Allows "Qualified Holders" to Release a Deed of

11           Trust Without Producing the Original Evidence of Debt                       6

12           D.      C.R.S. §38-38-504 Deems a Public Trustee's Deed to be Prima Facie

13           Evidence of Statutory Compliance and Truth                                 7

14           E.      C.R.S. §13-40-104(1)(f) Allows Eviction Based Solely on a Foreclosure Order

15           that is Not a Final Judgment as a Matter of Law                            8

16           F.      C.R.S. §38-38-101(2) and §38-39-102(3)(a)(I) Bar Adequate Remedies to

17           Parties Damaged by Improper Foreclosures                                   9

18   III.    A History of Action in Times of Economic Distress

19   IV.     11th Colorado District Court Ruling Against the Plaintiff was Based on the Presumed

20   but Non-Existent Evidence Allowed by C.R.S. §38-38-101.

21

22                                    **I. Summary**

23           11. Any presumption of evidence without proof contradicts and negates the

24   evidentiary requirements pursuant to Uniform Commercial Code CRS 4-3-203(c) and all

25   fundamental rules of evidence in common law where liens and secured promissory notes

26   must be expressly indorsed by the originator to assign the rights of a negotiable instrument

27   to another party. The provisions described below were added by Colorado House Bill 06-

28   1387 at the behest of banks and foreclosure attorneys in 2006 and refined to their present

1    form by House Bill 09-1207. The purposes and resulting effects of these bills are:

2      A)  to eliminate the burden of proof showing that mortgages had been properly

3           transferred, lowering the threshold of proof compared to other negotiable

4           instruments that must still show proper indorsements before anything may be seized

5           in lieu of payment, or money may be drawn from an account using a check,

6      B)  to replace the standard business practice of transference through explicit

7           indorsement of notes citing the transferee with an illogical negative burden of proof

8           put upon defendants, and

9      C)  to empower bank employees, mortgage companies, predatory lenders, and other

10         fraudelent operators to abuse homeowners by enabling facile and wrongful

11         deprivation of property using Colorado District Courts as instruments in wrong

12         doing.

13      12. The statute allows Colorado foreclosures to proceed based on undocumented

14    claims of a right to enforce a lien against real property. While a foreclosure under the

15    statute is not based on a deprivation of property prior to judgement, it has the same effect.

16    It converts Colorado District Courts into automatons granting extra-judicial powers to

17    attorneys taking real property while such extra-judicial powers do not exist for enforcement

18    of liens or promissory notes using other forms of property as security.

19

20                    **II. Statutory Provisions**

21      **A.  C.R.S. §38-38-101(6)(b) Deems Nonexistent Evidence of Indorsement or**

22                       **Assignment to Exist**

23      13. The primary point of entry into the statutory labyrinth is C.R.S. §38-38-101(6),

24    which defines "indorsement or assignment" for the rest of the statute. It was adopted as

25    part of an omnibus revision to Colorado foreclosure law in HB 06-1387, and refined to its

26    present form by HB 09-1207. A reading of the plain language of this section supports an

27    inference that the Constitutional underpinnings of the Rule 120 review process were not

28    considered by the Colorado Legislature when it enacted them.

1    §38-38-101(6) provides:

2    (6) Indorsement or assignment. (a) Proper indorsement or assignment of an

3    evidence of debt shall include the original indorsement or assignment or a certified

4    copy of an indorsement or assignment recorded in the county where the property

5    being foreclosed is located.

6    (b) Notwithstanding the provisions of paragraph (a) of this subsection (6), the

7    original evidence of debt or a copy thereof without proper indorsement or

8    assignment shall be deemed to be properly indorsed or assigned if a qualified

9    holder presents the original evidence of debt or a copy thereof to the officer together

10   with a statement in the certification of the qualified holder or in the statement of the

11   attorney for the qualified holder pursuant to subparagraph (II) of paragraph (b) of

12   subsection (1) of this section that the party on whose behalf the foreclosure was

13   commenced is the holder of the evidence of debt.

14   C.R.S. §38-38-101(6) (emphasis added).

15       14. Subsection (b) allows an unsworn "certification" by one who claims to be a

16   "qualified holder" (C.R.S. §38-38-100.3(20)) , or an unsworn "statement" by an attorney for

17   one who claims to be a qualified holder, to serve as a complete and determinative

18   substitute for any evidence whatsoever of an indorsement or assignment defined in

19   subsection (a), and allows an Order Authorizing Sale to be based solely on the certification

20   or statement, together with an uncertified copy of the purported evidence of debt.

21

22   **B.  C. R. S. §38-38-101(1)(b)(II) and (c)(II) Allow Foreclosure by "Certification" or**

23   **"Statement" in Lieu of Evidence**

24       15. There are two basic alternatives to initiating a Rule 120 foreclosure in Colorado.

25   A foreclosing party may choose to file either: (1) the original Note and Deed of Trust [§38-

26   38-101(1)(b) and (c)], or certified copies of same that have been recorded [§38-38-101(1)

27   (c) and (6)(a)], or, in the alternative, (2) a certification that it is a qualified holder of the

28   evidence of debt, or a statement by an attorney that its client is a qualified holder of the

1   evidence of debt, with copies (not required to be certified) of the Note and Deed of Trust

2   [§38-38-101(1)(b)(II) and (c)(II)]. The former is referred to herein as a "full-doc" foreclosure,

3   the latter as a "no-doc" foreclosure. If only §38-38-101(6)(b) is stricken as unconstitutional,

4   for reasons specified above, the remaining "no-doc" foreclosure provisions would remain

5   intact, subvert Mitchell's documentary proof requirements, violate the Court's concern with

6   "bare conclusory claims of ownership or lien. . .," (id.), and fail to adequately reduce the

7   risk of erroneous deprivation required by the Court in Mathews, supra, and Doehr, supra.

8

9                          *1. Fully Documented Foreclosure*

10          10. Under C.R.S. §§38-38-100(3) and 38-38-101, a "holder of evidence of debt" or its

11   attorney may file a foreclosure with:

12          (1) ". . . [t]he <u>original evidence</u> of debt, including any modifications to the original

13          evidence of debt, together with the <u>original indorsement</u> or assignment thereof, if

14          any, to the holder of the evidence of debt . . .," (C.R.S. §38-38-101(1)(b)), or ". . . a

15          <u>certified copy</u> of the indorsement or assignment <u>recorded</u> in the county where the

16          property being foreclosed is located. . .". C.R.S. §38-38-101(1)(b) and (6)(a)

17          (incorporated by reference in 38-38-101(1)(b)); and

18

19          (2) ". . . [t]he <u>original recorded deed of trust</u> securing the evidence of debt . . ."

20          (C.R.S. §38-38-101(1)(c)) or a ". . . <u>certified copy</u> of the recorded deed of trust . . .".

21          C.R.S. §38-38-101(1)(c)(I).

22   CRS. §38-38-101(1) & (6) (emphasis added)

23

24                      *2. Non or Partially Documented Foreclosure*

25          16. If a foreclosing party initiates a foreclosure under the alternative "certification" or

26   "statement" provisions of §§38-38-101(1)(b)(II) and (c)(II) – which allow a foreclosure to be

27   initiated with a certification or a statement of the attorney for a party who ". . . <u>claims to be</u>

28   <u>a qualified holder</u> . . ." (id.) (emphasis added), and also allow (as an <u>alternative</u> to an " . . .

1   original endorsement or assignment . . . to the holder of the evidence of debt . . .") ". . .

2   other proper indorsement or assignment in accordance with subsection (6) . . .". 38-38-

3   101(1)(b) (emphasis added) – the Rule 120 Court does not require evidence that supports

4   the certification or statement, as a fundamental part of its judicial control, regardless

5   whether the foreclosure is opposed.

6

7   **C. C.R.S. §38-39-102(3)(a)(I) Allows "Qualified Holders" to Release a Deed of Trust**

8   **Without Producing the Original Evidence of Debt**

9       17. Another "domino" in the deprivation of property without due process of law

10   occurs after a foreclosure based on only the "certification" and "statement" provisions of

11   §38-38-101, when a "qualified holder" is allowed by C. R. S. §38-39-102(3)(a)(I) to release

12   the homeowner's deed of trust without producing the original evidence of debt – just as it

13   was allowed to foreclose without the original evidence of debt. The statute provides, in

14   pertinent part:

15       (3)(a)(I) Subject to the provisions of subparagraph (II) of this paragraph (a), with

16       respect to either subsection (1) or (2) of this section, a holder of the original

17       evidence of debt that is a qualified holder, as defined in section 38-38-100.3(20),

18       may request the release of a deed of trust without producing or exhibiting the

19       original evidence of debt. . .

20   C.R.S. §38-39-102(3)(a)(I).

21       18. The risk of deprivation in this instance is not only to the homeowner (whose

22   deed may be released before an independent challenge of the foreclosure is completed),

23   but also to the true holder of the evidence of debt, the beneficiary to the deed of trust, to

24   any subsequent purchaser who relies on the release of the deed of trust, and other parties

25   who may be affected by this cloud on title.

26

27   **D.  C. R. S.  §38-38-504 Deems a Public Trustee's Deed to be Prima Facie Evidence**

28   **of Statutory Compliance and Truth**

19. The Colorado Legislature not only created a hearing that allows a foreclosing party to ". . . obtain an order authorizing sale . . ." (§38-38-105) with only "bare conclusory claims of ownership or lien" (Mitchell, supra). It went further in elevating bare "certifications" or "statements" to the status of "truth," and a presumption of statutory compliance, upon issuance of the foreclosure deed authorized by a Colorado District Court order, to wit:

> Any deed executed by an officer or other official under this article <u>shall be prima facie evidence of compliance</u> with all statutory requirements for the sale and execution of the deed and <u>evidence of the truth of the recitals contained in the deed</u>.

C.R.S. §38-38-504 (emphasis added).

## E. C.R.S. §13-40-104(1)(f) Allows Eviction Based Solely on a Foreclosure Order that is Not a Final Judgment as a Matter of Law.

20. Similarly, C.R.S. §13-40-104(1)(f) creates a "domino" deprivation of property without due process of law, by allowing a homeowner to be evicted from a home – based solely on the issuance of the public trustee's deed – even where the validity of the deed may be at issue in an independent action that challenges the validity of the Order that produced the public trustee's deed. The Statute provides, in pertinent part:

> (1) Any person is guilty of an unlawful detention of real property in the following cases:
>
> . . .
>
> (f) When the property has been duly sold under any power of sale, contained in any mortgage or trust deed that was executed by such person, or any person under whom such person claims by title subsequent to date of the recording of such mortgage or trust deed, and the title under such sale has been duly perfected and the purchaser at such sale, or his or her assigns, has duly demanded the possession thereof;

C.R.S. §13-40-104(1)(f).

**F.  C.R.S. §38-38-101(2) and §38-39-102(3)(a)(I) Bar Adequate Remedies to Parties Damaged by Constitutionally Defective Foreclosures**

21. In the event of an improper foreclosure, C.R.S. §38-38-101(2) provides for a remedy allowing compensation for wrongful deprivation of property:

. . .

> limited to actual economic loss suffered together with any court costs and reasonable attorney fees and costs incurred in defending a claim brought as a direct and proximate cause of the failure to produce the original evidence of debt, but such indemnity shall not include, and <u>no claimant shall be entitled to, any special, incidental, consequential, reliance, expectation, or punitive damages of any kind</u>. A qualified holder acting as agent, nominee, or trustee shall be liable for the indemnity pursuant to this subsection (2).

C.R.S. §38-38-101(2) (emphasis added).

. . .

> The indemnity granted by this paragraph (a) is limited to actual economic loss suffered and any court costs and reasonable attorney fees and costs incurred in defending a claim brought as a direct and proximate result of the failure to produce the original evidence of debt, but the indemnity does not include and no claimant is entitled to any special, incidental, consequential, reliance, expectation, or punitive damages.

C.R.S. §13-40-104(1)(f).

### III. A History of Action in Times of Economic Distress

22. In Home Building & Loan Association v Blaisdell, 290 U.S. 398 (1934) the Supreme Court upheld a state-legislated foreclosure moratorium during the "Great Depression," to protect the interests of real property owners during a time of . . .

. . . economic emergency which threaten[s] the loss of homes and lands which

1        furnish those in possession . . . necessary shelter . . . [from] . . . corporations, such

2        as insurance companies, banks, and investment and mortgage companies . . .

3  Id. at 444-446, passim [foreclosure moratorium did not violate Contracts Clause].

4       23. The significance of Blaisdell is not that it upheld a moratorium on foreclosures,

5  but that it did so on ". . . mortgages of unquestionable validity . . ." (id. 445) by parties who

6  were ". . . not seeking homes . . . [but only] . . . the reasonable protection of their

7  investment security. . ." (id. 444-446, passim). In stark contrast, foreclosing parties these

8  days aggressively seek Colorado homes, under a Colorado statute that allows them do so

9  based on a mere "certification" or "statement" that they have a right to do so, with no

10  evidence that they even hold a valid security interest, or are the real party in interest to

11  enforce it. The Blaisdell Court's "mortgages of unquestionable validity" may have been

12  replaced by "certifications" and "statements" parading as evidence, but this Court's Article

13  III jurisdiction to effect Constitutional remedies requested herein remains intact.

14

**IV. 11th Colorado District Court Ruling Against the Plaintiff was Based on the**

**Presumed but Non-Existent Evidence Allowed by C.R.S. §38-38-101(b)(II)**

17       24. In the course of the Rule 120 hearing in Colorado case 2013CV030104, the

18  plaintiff pro se, Wirth, questioned Nationstar employee Rachel Hook regarding the number

19  of indorsements to Nationstar that existed on the Note or whether Nationstar had any

20  documentary evidence expressly transferring the Note to Nationstar. After some evasion

21  of the question, Hook finally answered that there were no indorsements to Nationstar

22  (Exhibit A to be provided when the 11th District Court makes the transcript available). The

23  only indorsement on the Note was to Countrywide, another entirely separate corporate

24  entity. Pursuant to C.R.S. §38-38-101(b)(II) cited above, the 11th District Court presumed

25  the non-existent indorsement existed and ruled against Wirth.

26       25. If left unchecked, the results of this ruling will be to wrongfully deprive Wirth of

27  his real property, his home and place of business, and also to be to deprive Wirth's house

28  guests of necessary shelter.

1

2 <u>Claim I</u>

3 **Colorado Statutes are Patently Unconstitutional, Substituting Presumptions in Lieu**

4 **of Evidence**

5    26. To assure that due process of law is provided to Colorado homeowners who

6 face impairment or termination of real property rights, the Colorado Supreme Court has

7 consistently aligned its public trustee foreclosure proceedings with due process

8 requirements of the Fourteenth Amendment as interpreted by the United States Supreme

9 Court. E.g., Plymouth Capital Co., Inc. v. District Court, 955 P.2d 1014, 1015-1017 (Colo.

10 1998) [discussing intent of Rule 120 to accord with Mitchell v. W. T. Grant Co., 416 U.S.

11 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) and Sniadach v. Family Finance Corp., 395 U.S.

12 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969)]; Goodwin v. District Court, 779 P.2d 837, 842

13 (Colo. 1989) [citing North Georgia Finishing, Inc. v. Di–Chem, Inc., 419 U.S. 601, 95 S.Ct.

14 719, 42 L.Ed.2d 751 (1975); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556

15 (1972); Mitchell, supra; Sniadach, supra; ruling that Rule 120 Court's resolution of issue of

16 default adversely to homeowner, without considering evidence challenging "real party in

17 interest," is "tantamount to the taking of property in a summary fashion without any hearing

18 at all—a deprivation clearly violative of due process of law;".]; Moreland v. Marwich, Ltd.,

19 665 P.2d 613, 616-618 (Colo. 1983) [analyzing Rule 120's ". . . due process protections

20 against summary foreclosure actions consistent with those protections against deprivations

21 of property without a prior judicial hearing that have received recognition in a line of

22 modern decisions of the United States Supreme Court. . . .".]; Valley Development at Vail,

23 Inc. v. Warder, 557 P.2d 1180, 1181-1182 (Colo. 1976) [Rule 120 proceedings must provide

24 debtor an ". . . opportunity to be heard at a meaningful time or in a meaningful manner . . ."

25 to comport with ". . . constitutional requirements of due process. . .".]; Princeville Corp. v.

26 Brooks, 533 P.2d 916, 918 (Colo. 1975) [Rule 120 proceedings must ". . . conform to due

27 process (citations omitted) . . . [and] comport with the modern trend to restrict Ex parte

28 taking of property without a hearing. . .".]. The Colorado Supreme Court has not, however,

1   addressed the Constitutionality of the statutory provisions and procedures before the Court

2   in this case.

3         27. Refering to paragraphs 7 through 13 above, C.R.S. §38-38-101(6)(b) patently

4   bypasses the required documentary evidence foundations on which Mitchell, supra, and

5   the Colorado Supreme Court relied in upholding a Louisiana statute, in that <u>unsworn</u>

6   <u>"certifications" and "statements</u>:" (1) <u>are nothing more than ". . . bare conclusory claims of</u>

7   <u>ownership or lien</u> . . .," (2) <u>do not constitute</u> ". . . <u>specific facts shown by verified petition or</u>

8   <u>affidavit</u>. . .," (3) <u>diminish the</u> ". . . <u>requisite showing [that] must be made to a judge</u> . . ." to a

9   mere unsworn certification or statement, (4) effectively place <u>the homeowner</u> ". . . <u>at the</u>

10   <u>unsupervised mercy of the creditor and court functionaries</u> (I.E., public trustees who serve

11   as mere functionaries in accepting and recording certifications and statements, without

12   requiring authentication of any underlying evidence referenced in the certification or

13   statement). . .," (5) require a Rule 120 Court that strictly applies the statute to authorize and

14   approve an unopposed foreclosure sale based on an <u>unsworn certification or statement</u>

15   <u>that "shall be deemed"</u>  pursuant to C.R.S. §38-38-101(6)(b) to constitute a missing

16   <u>indorsement or assignment, thereby rendering</u> ". . . <u>judicial control of the process from</u>

17   <u>beginning to end</u>. . . " <u>superfluous, and increasing</u> ". . . <u>the risk that the ex parte procedure</u>

18   <u>will lead to a wrongful taking</u>. . . .," (6) <u>eliminate the requirement of</u> ". . . <u>[d]ocumentary</u>

19   <u>proof [that] is particularly suited for questions of the existence of a vendor's lien</u> and the

20   issue of default. . . .," and (7) <u>do not require the foreclosing party to</u> ". . . <u>prove[ ] the</u>

21   <u>grounds upon which the writ was issued.</u>'" See Mitchell, supra. Moreover, by relieving the

22   party seeking to terminate an owner's interest in property of the duty to produce any

23   evidence that it is the proper party to terminate such interest, subsection (b) creates grave

24   risk of erroneous deprivation of property, which risk led the Doehr Court to find the state

25   statute at issue unconstitutional.

26         28. C.R.S. §38-38-101 "creates an additional burden upon a debtor to establish

27   evidence of the creditor's identity which the creditor, itself, is not required to locate" –

28   Plaintiff respectfully submits that this is best addressed by the fundamental rule that every

1   action must be prosecuted in the name of the real party in interest. Applied to a Rule 120

2   proceeding, Colorado precedent is clear that a Rule 120 Court's resolution of the issue of

3   default adversely to a homeowner, without considering evidence challenging "real party in

4   interest," is ". . . tantamount to the taking of property in a summary fashion without any

5   hearing at all—a deprivation clearly violative of due process of law." Goodwin v. District

6   Court, 779 P.2d 837, 841-842 (Colo. 1989).

7        Colorado Rule of Civil Procedure 17(a) requires that every action "be prosecuted in

8        the name of the real party in interest." The real party in interest is that party who, by

9        virtue of substantive law, has the right to invoke the aid of the court in order to

10       vindicate the legal interest in question. . . . Implicit in Rule 120 is the requirement

11       that <u>the party seeking an order of sale have a valid interest in the property allegedly</u>

12       <u>subject to the power of sale.</u> Unless the "real party in interest" defense is considered

13       at a Rule 120 hearing, any order for sale might well result in the sale of property in

14       favor of a party who has no legitimate claim to the property at all. Once a debtor in a

15       Rule 120 proceeding raises the "real party in interest" defense, therefore, <u>the burden</u>

16       <u>should devolve upon the party seeking the order of sale to show that he or she is</u>

17       <u>indeed the real party in interest.</u>

18   Goodwin v. District Court, 779 P.2d 837, 842-843 (Colo. 1989) [Order Authorizing Sale

19   vacated; remanded for determination whether purported assignment of promissory note

20   and deed of trust were invalid due to interlineations, and whether person seeking to

21   foreclose was, if assignment was invalid, real party in interest in Rule 120 proceeding] .

22       29. In Goodwin, the existence of "interlineations" on assignments of the loan

23   documents raised evidentiary issues as to whether the assignments were valid, and,

24   therefore, whether the foreclosing party was the party entitled to invoke the power of sale

25   provisions in the deed of trust. Foreclosures filed in recent years by parties whose names

26   appear nowhere on any loan documents, and who provide no evidence of any valid

27   assignments, raise evidentiary questions more fundamental than those raised by mere

28   "interlineations."

1    30. A "certification" by one who claims to be a "qualified holder of evidence of debt,"

2    or a "statement" by an attorney for such party, is no substitute for evidence that the

3    certifying party is, in fact, the holder of the evidence of debt, with the right to invoke the

4    power of sale contained in the deed of trust. Under Goodwin, supra, if the homeowner

5    challenges the petitioner's right to invoke the power of sale, the burden shifts to the

6    foreclosing party to prove – with actual evidence – that it is the holder of the evidence of

7    debt, with a right to invoke the power of sale contained in the deed of trust. Though

8    Goodwin predates recent practices in the securitization of mortgages, the fundamental

9    rules of procedure and evidence still apply. If the name of the beneficiary on the deed of

10   trust, and/or the name of the obligee on the note, do not match the names on the

11   "certification" or "statement," there is an evidentiary gap that must be filled with evidence of

12   indorsements or assignments of interests to the party attempting to foreclose.

13   31. If a Rule 120 Court refuses or declines to consider a valid challenge based on a

14   "real party in interest" defense, the homeowner may file an independent action under Rule

15   105 for a complete adjudication of the foreclosing party's claims of rights and interests (See

16   discussion of Rule 105 proceedings below). The independent action, however, is no

17   substitute for due process in the Rule 120 proceeding, to wit:

18        While we recognize that the Goodwins could have filed an independent action to

19        enjoin the public sale, C.R.C.P. 120(d), the availability of a collateral remedy should

20        not serve to divest the Goodwins of their opportunity to defend against the

21        deprivation of their real property interest by showing that the parties seeking the

22        order of sale were without authority to exercise the power of sale on which any order

23        of sale necessarily would be predicated.

24   Goodwin, supra at 842 (emphasis added).

25   32. Due process of law clearly requires that a Rule 120 Court require the foreclosing

26   party to be the real party in interest, as a threshold question. To provide process that is due

27   and protect against wrongful deprivations of property, this inquiry must be evidence-based,

28   and is related to the questions of whether the foreclosing party has the right to enforce a

1   valid, recorded security interest, as discussed above.

2       33. The significance of C.R.S. §38-38-101(6)(b) to the foreclosure process as a

3   whole is made clear by the definition of "holder of an evidence of debt" in §38-38-100.3(10),

4   which – on its face – renders all evidence-based definitions of "holder of an evidence of

5   debt" meaningless if the foreclosing party relies on §38-38-101(6)(b) as a basis for the

6   foreclosure. Specifically, §38-38-100.3(10) provides:

7       (10) "Holder of an evidence of debt" means the person in actual possession of <u>or</u>

8       <u>otherwise entitled to enforce</u> an evidence of debt; except that "holder of an evidence

9       of debt" does not include a person acting as a nominee solely for the purpose of

10      holding the evidence of debt or deed of trust as an electronic registry without any

11      authority to enforce the evidence of debt or deed of trust. For the purposes of

12      articles 37 to 40 of this title, the following persons are <u>presumed to be</u> the holder of

13      an evidence of debt:

14

15      (a) The person who is the obligee of and who is in possession of an original

16      evidence of debt;

17

18      (b) The person in possession of an original evidence of debt together with the proper

19      indorsement or assignment thereof to such person in accordance with section <u>38-</u>

20      <u>38-101 (6)</u>;

21

22      (c) The person in possession of a negotiable instrument evidencing a debt, which

23      has been duly negotiated to such person or to bearer or indorsed in blank; <u>or</u>

24

25      (d) The person in possession of an evidence of debt with authority, which may be

26      granted by the original evidence of debt or deed of trust, to enforce the evidence of

27      debt as agent, nominee, or trustee or in a similar capacity for the obligee of the

28      evidence of debt.

1    C.R.S. §38-38-100.3(10) (emphasis added)

2        34. Reviewing the definitions one by one, production of: (a) the original "evidence of

3    debt" (infra, paragraph 30) by the named obligee; or (b) the original evidence of debt with

4    proper indorsement or assignment to the possessor as defined by §38-38-101(6)(a) [via

5    the cross-reference in subsection (b)]; or (c) a negotiable instrument evidencing a debt,

6    with evidence of negotiation to the possessor, or to bearer, or indorsed in blank; or (d) the

7    original evidence of debt, with evidence to establish an agency or similar relationship with

8    the named obligee; would be consistent with documentation requirements under the

9    common law and various provisions of the U.C.C., and would also meet the documentation

10   requirements underlying Mitchell, supra, Matthews, supra, and Doehr, supra. Under these

11   definitions, the foreclosure would be based on "documentary proof," and not on "bare

12   conclusory claims of ownership or lien," as required by Mitchell, supra.

13       35. C.R.S. §38-38-100.3(8) defines "evidence of debt" as "a writing that evidences a

14   promise to pay or a right to the payment of a monetary obligation, such as a promissory

15   note, bond, negotiable instrument, a loan, credit, or similar agreement, or a monetary

16   judgment entered by a court of competent jurisdiction." Standing alone, the evidence of

17   debt is presumably the original evidence of debt, since there is no reference to a "copy"

18   constituting evidence of debt.

19       36. Subsection (d) acknowledges the possibility that an agent, nominee, or person

20   in a similar relationship with a named obligee may have the authority to enforce an

21   obligation for the named obligee, but mere acknowledgement of this possibility does not

22   prove the existence of such a relationship. If the foreclosing party claims to be acting as an

23   agent for another, it must also prove the existence of the agency relationship with

24   competent evidence. Hancock v. Minneapolis-Moline, Inc., 482 P.2d 426, 428 (Colo.App.

25   1971) [citing 3 Am.Jur.2d Agency § 348; burden of proof is on the party who claims to be

26   an agent with authority to file suit to prove the existence of the agency relationship under

27   C.R.C.P. Rule 17].

28       37. A foreclosing party who meets the requirements of the fully documented

1  foreclosure referenced in paragraph 10 above, and produces in the Rule 120 Court original

2  or certified copies of recorded documents that show evidence of title and valid

3  indorsements or assignments to that party, would presumably comply with Mitchell's.

4  requirement of documentary proof. Because this evidence can be reviewed by a judge in

5  the Rule 120 procedure, fully documented foreclosures reduce the risk of wrongful

6  deprivation consistent with Mathews, supra, and Doehr, supra. It would also presumably

7  comply with Colorado common law by producing evidence that it currently holds legal title

8  to the note [Platte Valley Savings & Loan v Crall, 821 P.2d 305, 307 (Colo. App. 1991);

9  American Surety Co. v. Scott, 63 F.2d 961, 964 (10th Cir. 1933) and citations therein (under

10  Colorado law, the one who holds the legal title is the real party in interest)]; or that it has a

11  full and complete assignment of the note, valid at the time its claim arose and at the time

12  the case was filed [Alpine Associates, Inc. v. KP & R,, Inc., 802 P. 2d 1119, 1121 (Colo. App.

13  1990)]. If the foreclosing party claims to be acting as an agent for another, the Rule 120

14  Court should also have before it proof of the existence of the agency relationship with

15  competent evidence. Hancock v. Minneapolis-Moline, Inc., 482 P.2d 426, 428 (Colo.App.

16  1971) [citing 3 Am.Jur.2d Agency § 348; burden of proof is on the party who claims to be

17  an agent with authority to file suit to prove the existence of the agency relationship]. Finally,

18  the Rule 120 Court would presumably apply pertinent provisions of the U.C.C. to the

19  documentary evidence. Plaintiff sees no Constitutional problems with Colorado's fully

20  documented foreclosure provisions that governed all public trustee foreclosures prior to the

21  amendment of Colorado foreclosure statutes by HB 06-1387.

22      38. In stark contrast, an non or partially documented foreclosure based on a mere

23  "certification" or "statement" under §38-38-101(6)(b) – incorporated by reference in the

24  definition of "holder of an evidence of debt" under the definition in §38-38-100.3(b) – allows

25  a party who has no indorsement or assignment, yet is presumptuously deemed to have

26  one upon claiming to be a "qualified holder," to attain the status of "holder of an evidence of

27  debt" under §38-38-100.3(b) by the "certification" or "statement" alone, thereby rendering

28  the remaining evidence-based definitions of "holder of an evidence of debt" superfluous

1    and meaningless, subverting Mitchell's due process documentary proof requirements, and

2    violating the Court's concern with "bare conclusory claims of ownership or lien." Id.

3    Because this scheme does not adequately guard against the risk of wrongful or erroneous

4    deprivation, §38-38-101(6)(b) does not survive Constitutional scrutiny under Mitchell,

5    supra, and Doehr, supra, and is therefore Constitutionally defective on its face.

6         39. If §38-38-101(6)(b) is determined to be unconstitutional, for reasons specified

7    above, a Rule 120 Court will not be bound by a statutory provision that a party "shall be

8    deemed" to have a non-existent endorsement or assignment. Independently of the status

9    of §38-38-101(6)(b), a Rule 120 Court should still require evidence to support claims made

10   in a "certification" or "statement" foreclosure under §§38-38-101(1)(b)(II) and (c)(II). The

11   core components of judicial control over the process from beginning to end, and

12   documentary proof of a party's right to foreclose, must accord with fundamental

13   requirements of due process of law. Mitchell, supra; Doehr, supra.

14

15

16

17

18                                    <u>Claim II</u>

19              <u>**"Real Party in Interest" is the Threshold Question**</u>

20        40. The Colorado foreclosure statute is constitutionally defective under Connecticut

21   v. Doehr, 501 U.S. 1, 111 S. Ct. 2105, 115 L. Ed. 2d 1 (1991) and Mitchell v. W. T. Grant Co.,

22   416 U.S. 600, 94 S. Ct. 1895, 40 L. Ed. 2d 406 (1974).

23        41. The "procedures approved" in Mitchell, supra withstood due process scrutiny of

24   the United States Supreme Court because, inter alia:

25              . . . bare conclusory claims of ownership or lien will not suffice under the

26         Louisiana statute. Article 3501 authorizes the writ 'only when the nature of the claim

27         and the amount thereof, if any, and the grounds relied upon for the issuance of the

28         writ clearly appear from specific facts shown by verified petition or affidavit.

1    Moreover, in the parish where this case arose, the requisite showing must be made

2    to a judge, and judicial authorization obtained. Mitchell was not at the unsupervised

3    mercy of the creditor and court functionaries. The Louisiana law provides for judicial

4    control of the process from beginning to end. This control is one of the measures

5    adopted by the State to minimize the risk that the ex parte procedure will lead to a

6    wrongful taking. It is buttressed by the provision that should the writ be dissolved

7    there are 'damages for the wrongful issuance of a writ' and for attorney's fees

8    'whether the writ is dissolved on motion or after trial on the merits.' Art. 3506.

9                . . .

10    Documentary proof is particularly suited for questions of the existence of a

11    vendor's lien and the issue of default. . . .

12                . . .

13    Louisiana law expressly provides for an immediate hearing and dissolution of

14    the writ 'unless the plaintiff proves the grounds upon which the writ was issued.' Art.

15    3506.

16    Mitchell, supra at 416 U.S. 616-618, 94 S. Ct. 1904-1905 (emphasis added).

17        42. Inspired by Mitchell, Rule 120 was drafted to (1) require a District Court to both

18    authorize and subsequently approve a foreclosure sale; (2) require a hearing in a District

19    Court if the homeowner challenges the foreclosure, but allow the Court to ". . . dispense

20    with the hearing if no responsive pleading were filed and if the motion established a prima

21    facie case for the issuance of an order authorizing sale . . .;" (3) in the interest of "economy

22    of language," the Rule presumes that ". . . a court could not be expected to find the

23    existence of a 'default' unless a 'debt' existed, nor could the existence of a 'circumstance

24    authorizing . . . exercise of a power of sale' be reconciled with the absence of a 'lien.';" (4)

25    acknowledging the ". . . narrow scope and summary nature . . ." of the proceeding, the Rule

26    expressly allows ". . . relitigating in collateral proceedings the merits of issues first raised in

27    a Rule 120 proceeding . . .," and limits the Court's purview to " . . . 'reasonable probability'

28    rather than finality;" and (5) ". . . in short . . . Rule 120 should provide a hearing on specific

1   issues of constitutional magnitude, leaving subsidiary issues to be litigated in more

2   conventional forums." Though the Colorado Rule 120 did not adopt Mitchell's approval of

3   damages and attorneys' fees for wrongful issuance of an order authorizing sale, this would

4   clearly have been appropriate if the Rule had adopted all pertinent elements identified by

5   the Mitchell Court.

6       43. Fundamental elements of Mitchell's due process inquiry were re-iterated in

7   Mathews v. Eldridge, 424 U.S. 319, 334-335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), then

8   refocused and again applied in Connecticut v. Doehr, 501 U. S. 1, 111 S. Ct. 2105, 115 L.

9   Ed. 2d 1 (1991), resulting in a three-part inquiry to guide this Court's present analysis.

10  Various types of property interests are involved in these cases, but the Supreme Court is

11  ". . . no more inclined now than we have been in the past to distinguish among different

12  kinds of property in applying the due process clause." North Georgia Finishing, supra at

13  419 U.S. 608, 95 S.Ct. 723 (citing Fuentes, supra with emphasis added).

14      44. In Doehr, supra, as in the present case, the dispute was between private parties,

15  one of whom sought to rely on a state statute to file a lien on the other's real property, to

16  wit:

17          Such enactments are designed to enable one of the parties to "make use of

18          state procedures with the overt, significant assistance of state officials," and they

19          undoubtedly involve state action "substantial enough to implicate the Due Process

20          Clause." Tulsa Professional Collection Services, Inc. v. Pope, 485 U.S. 478, 486, 108

21          S.Ct. 1340, 1345, 99 L.Ed.2d 565 (1988). Nonetheless, any burden that increasing

22          procedural safeguards entails primarily affects not the government, but the party

23          seeking control of the other's property. See Fuentes v. Shevin, supra, 407 U.S., at

24          99–101, 92 S.Ct., at 2003–2005 (WHITE, J., dissenting). For this type of case,

25          therefore, the relevant inquiry requires, as in Mathews, first, consideration of the

26          private interest that will be affected by the prejudgment measure; second, an

27          examination of the risk of erroneous deprivation through the procedures under

28          attack and the probable value of additional or alternative safeguards; and third, in

1     contrast to Mathews, principal attention to the interest of the party seeking the

2     prejudgment remedy, with, nonetheless, due regard for any ancillary interest the

3     government may have in providing the procedure or forgoing the added burden of

4     providing greater protections.

5 Doehr, supra at 501 U. S. 11, 111 S. Ct. 2112.

6     45. All private homeowner interests are affected when the fundamental rules of

7 evidence are ignored, from Doehr:

8     For a property owner like Doehr, attachment ordinarily clouds title; impairs the

9     ability to sell or otherwise alienate the property; taints any credit rating; reduces the

10     chance of obtaining a home equity loan or additional mortgage; and can even place

11     an existing mortgage in technical default where there is an insecurity clause.

12     . . .

13     . . . [O]ur cases show that even the temporary or partial impairments to

14     property rights that attachments, liens, and similar encumbrances entail are

15     sufficient to merit due process protection. Without doubt, state procedures for

16     creating and enforcing attachments, as with liens, "are subject to the strictures of

17     due process." Peralta v. Heights Medical Center, Inc., 485 U.S. 80, 85, 108 S.Ct.

18     896, 899, 99 L.Ed.2d 75 (1988) (citing Mitchell, supra, 416 U.S., at 604, 94 S. Ct.,

19     171898; Hodge v. Muscatine County, 196 U.S. 276, 281, 25 S.Ct. 237, 239, 49 L.Ed.

20     477 (1905)).

21 Id. at 501 U. S., at 11-12, 111 S. Ct., at 2113 (emphasis added).

22     The private interests of Colorado homeowners affected by foreclosures on their real

23 property are even more significant than the interest affected in Doehr, supra.

24     46. Pursuant to C.R.S. §38-38-105, since the deed would not exist but for the

25 Orders authorizing and approving the sale, and the Orders are the product of a

26 Constitutionally defective statutory presumption that replaces a requirement for scrutiny of

27 evidence in a hearing, the statute that endows the deed with the status of prima facie

28 evidence of truth of its recitals is also Constitutionally defective, in that it statutorily creates

1    a "domino" deprivation of property without due process of law. The Rule 120 Order is not a

2    final judgment, and is entered without prejudice to the homeowner filing an independent

3    action for injunctive or other relief to challenge the validity of the foreclosure. A homeowner

4    who files such an action will be faced with a defense that someone else now owns the

5    subject home, and a claim under §38-38-504 that all recitals contained in the voidable

6    trustee's deed are true.

7         47. The statute directly conflicts with more than a century of Colorado precedent

8    under which it is clear that the homeowner is the owner of the property, the foreclosing

9    party held only a "lien" on the property (if the validity of the lien is proven with

10   competent evidence), and ownership of the property cannot be determined until the

11   conclusion of a homeowner's independent challenge to a foreclosure. See explication in

12   §II.C.1., supra, of Colorado law establishing the beneficiary of the deed of trust holds only a

13   lien on the property.

14        48. In an action to quiet title under C.R.C.P. Rule 105, ". . . the pertinent date fixing

15   the rights of the parties is the date upon which the complaint is filed . . ." Fastenau v. Engel,

16   270 P.2d 1019, 1022 (Colo. 1954). Even if the complaint is filed after a Public Trustee's

17   Deed has been issued, the Public Trustee's Deed may be voided if the homeowner prevails

18   in vacating the non-adjudicated Order Authorizing Sale on which the Public Trustee's Deed

19   is based.

20        49. Colorado is a "lien theory" state, which means that the homeowner holds title to

21   the property, even while it is encumbered by a deed of trust, and the beneficiary of the

22   deed of trust holds only a lien in the property, to wit:

23        Mortgages, trust deeds, or other instruments intended to secure the payment

24        of an obligation affecting title to or an interest in real property shall not be deemed a

25        conveyance, regardless of its terms, so as to enable the owner of the obligation

26        secured to recover possession of real property without foreclosure and sale, but the

27        same shall be deemed a lien.

28   C.R.S. §38-35-117.

1     A deed of trust in real property given as security for a debt is a mortgage.

2     Morris v. Cheney, 81 Colo. 393, 395, 255 P. 987, 988 (1927). A mortgage is not a

3     conveyance of a real property interest, because Colorado subscribes to a lien theory

4     of mortgages. § 38-35-117, 10 C.R.S. (2001). Although <u>a deed of trust does not</u>

5     <u>create an ownership interest in real property</u>, it does constitute a legal or equitable

6     interest in real property for the purposes of the section 39-11-128(1)(a) notice

7     requirement.

8     Columbus Investments v. Lewis, 48 P.3d 1222, 1225 (Colo. 2002) (emphasis added).

9     50. Colorado homeowners not only face the risk of total loss of real property in a

10    foreclosure under the statutory provisions discussed herein, by a party that is not required

11    to produce evidence of its right to enforce a valid security interest in the property, but also

12    face the risks of erroneous partial impairments of property rights that concerned the Court

13    in Doehr. As soon as a foreclosing party who "claims to be" the holder of the evidence of

14    debt files the Notice of Election and Demand with the Office of the Public Trustee to

15    commence the foreclosure, the following occurs: (1) in accordance with C.R.S. §38-38-102,

16    the Public Trustee promptly records the Notice of Election and demand in the office of the

17    Clerk and Recorder where the property is located, thereby creating a cloud on title; (2) in

18    accordance with C.R.S. §38-38-103(5)(a), the Public Trustee commences advertisement of

19    the Notice of Election and Demand, which Notice includes the names of the foreclosing

20    party who claims to be the holder of the evidence of debt, the names of the original

21    grantors of the deed of trust, the legal description of the property being foreclosed and the

22    date of the sale, thereby creating a stigma for the property and the owner, diminishing the

23    market value of the property, and negatively impacting the homeowner's credit rating with

24    credit reporting agencies. Distressed properties, whether bank-owned, pre-foreclosure or

25    short sales not in foreclosure, sell at a significant discount compared to non-distressed

26    properties.

27    See http://www.realtytrac.com/content/foreclosure-market-report/us-foreclosure-and-short-

28    sales-report-year-end-and-q4-2012-7609.

1    51. Here, as in Doehr, supra, State procedures for enforcing a lien on real property,

2    through the foreclosure procedures that are before this Court for review, are clearly

3    "subject to the strictures of due process." Id. at 501 U. S., at 12, 111 S. Ct., at 2113.

4    52. The risks of erroneous deprivation of protected property interests through

5    Colorado's Rule 120 foreclosure process are substantial. The Doehr Court found the risks

6    to be substantial where enforcement of the lien was contingent on the outcome of a

7    personal injury suit, and distinguished those from circumstances involving enforcement of a

8    lien on a debt, as in Mitchell, supra. Doehr, supra at 501 U. S., at 12-14, 111 S. Ct., at 2113-

9    2114. The factors upheld in Mitchell, supra, and expressly relied upon in the drafting of

10   Rule 120 amendments, therefore control in assessing the risks of erroneous deprivations of

11   protected property interests in Colorado foreclosures.

12   53. As shown in the detailed review of statutory foreclosure procedures, infra, the

13   "certification" and "statement" provisions of Colorado's foreclosure statute bypass the

14   fundamental documentary evidence foundations on which Mitchell, supra, and the

15   Colorado Supreme Court, relied in upholding a Louisiana statute, in that unsworn

16   "certifications" and "statements:" (1) are nothing more than ". . . bare conclusory claims of

17   ownership or lien . . .," (2) do not constitute ". . . specific facts shown by verified petition or

18   affidavit. . .," (3) diminish the ". . . requisite showing [that] must be made to a judge . . ." to a

19   mere unsworn certification or statement, (4) effectively place the homeowner ". . . at the

20   unsupervised mercy of the creditor and court functionaries (I.E. public trustees who serve

21   as mere functionaries in accepting and recording certifications and statements, without

22   requiring authentication of any underlying evidence referenced in the certification or

23   statement) . . .," (5) require a Rule 120 Court that strictly applies the statute to authorize

24   and approve an unopposed foreclosure sale based on an unsworn certification or

25   statement that "shall be deemed" pursuant to CRS §38-38-101(6)(b) to constitute a missing

26   endorsement or assignment, thereby rendering ". . . judicial control of the process from

27   beginning to end. . . " superfluous, and increasing ". . . the risk that the ex parte procedure

28   will lead to a wrongful taking. . . .," (6) eliminate the requirement of ". . . [d]ocumentary

1   proof [that] is particularly suited for questions of the existence of a vendor's lien and the

2   issue of default. . . .," and (7) do not require the foreclosing party to ". . . prove[ ] the

3   grounds upon which the writ was issued.'" See Mitchell, supra at 416 U.S., at 616-618, 94

4   S. Ct., at 1904-1905 (emphasis added). The risks of erroneous deprivation of real property

5   under these procedures are substantial.

6       55. The interests of the foreclosing party are protected in Colorado foreclosure

7   statutes, and will not be impaired if the due process defects specified below are remedied

8   by this Court. The foreclosing party may still enforce a valid lien on real property under the

9   expedited public trustee foreclosure process that has been in effect in Colorado for more

10   than a century – they will simply have to produce evidence to support their claims of right,

11   as they were required to do until legislative enactment of the problematic "certification" and

12   "statement" provisions in 2006. Due process requires, inter alia, "documentary proof" rather

13   than "bare conclusory claims of ownership or lien" (Mitchell, supra at 416 U.S., at 616-618,

14   94 S. Ct., at 1904-1905); Colorado law required the same for more than a century before

15   the enactment of the "certification" and "statement" provisions in 2006. If foreclosing parties

16   choose not to pursue foreclosures under Rule 120, they may pursue a judicial foreclosure

17   under C.R.C.P. Rule 105, so their right to enforce valid liens on real property will not be

18   impaired.

19       56. Additionally, the State's interest in providing foreclosure processes will not be

20   impaired by the Constitutional due process remedies requested herein. From Doehr:

21          The State's substantive interest in protecting any rights of the plaintiff cannot

22       be any more weighty than those rights themselves. Here the plaintiff's interest is de

23       minimis. <u>Moreover, the State cannot seriously plead additional financial or</u>

24       <u>administrative burdens involving predeprivation hearings when it already claims to</u>

25       <u>provide an immediate post-deprivation hearing.</u>

26   Doehr, supra at 501 U. S., at 16, 111 S. Ct., at 2115 (emphasis added).

27       57. The State already provides for a Rule 120 "pre-deprivation" hearing under C.R.S.

28   §38-38-105. Rule 120(d) expressly allows an independent "post-deprivation" action to

1 challenge the Rule 120 order. Accordingly, ". . . the State cannot seriously plead additional

2 financial or administrative burdens . . ." (id.) as a bar to restoration of due process

3 protections to Rule 120 proceedings. The proceeding already exists (though in

4 Constitutionally defective form), and will simply provide pre-deprivation due process

5 protections to obviate the need for more expensive, and time consuming, post-deprivation

6 proceedings. Furthermore, Colorado due process precedent already acknowledges the

7 need for the relief sought herein:

8      While we recognize that the Goodwins could have filed an independent action

9      to enjoin the public sale, C.R.C.P. 120(d), the availability of a collateral remedy

10      should not serve to divest the Goodwins of their opportunity to defend against the

11      deprivation of their real property interest by showing that the parties seeking the

12      order of sale were without authority to exercise the power of sale on which any order

13      of sale necessarily would be predicated.

14 Goodwin v. District Court, 779 P.2d 837, 842 (Colo. 1989).

15      58. Finally, notably absent from the history of Rule 120, and from Mitchell,

16 Matthews, and Doehr, is the approval of any process analogous to a mere "certification" by

17 a foreclosing party, or a "statement" by that party's attorney, to substitute for evidence at

18 any point in a Rule 120 proceeding. For such provisions, we must turn to the current

19 version of C.R.S. §38-38-101, the statute of concern to this Court, and one of the statutes

20 of concern to the plaintiff and other homeowners in the state.

21

22 Claim III

23 **Damages are Unconstitutionally Limited**

24      59. A core component of the Louisiana statutes upheld by the Mitchell, supra Court

25 was that:

26      The debtor may immediately seek dissolution of the writ, which must be ordered

27      unless the creditor proves the grounds for issuance (existence of the debt, lien, and

28      delinquency), failing which the court may order return of the property and assess

COMPLAINT

1     <u>damages, including attorney's fees, in the debtor's favor</u>.

2 Mitchell, supra at 416 U.S. 606, 94 S. Ct. 1899 (emphasis added).

3     60. The Court considered the potential for an award of damages and attorneys' fees

4 to the debtor to contribute – along with the requirement of competent documentary

5 evidence – to minimizing the risk that a writ would be wrongfully issued. Id. at 416 U.S.

6 609-610, 617, 94 S. Ct. 1901, 1905. Attorneys' fees were allowed independently or as an

7 element of damages (id. at 416 U.S. 622, 94 S. Ct. 1907). Damages were ". . . not restricted

8 to pecuniary loss. They may encompass injury to social standing or reputation as well as

9 humiliation and mortification." Id. at 416 U.S. 607, n. 8, 94 S. Ct. 1899, n. 8.

10     61. The Doehr Court, through four concurring justices, went further, in discussing the

11 inadequacy of a bond to remedy damages a homeowner would suffer due to a wrongful

12 attachment on real property.

13     The necessity for at least a prompt postattachment hearing is self-evident because

14     the right to be compensated at the end of the case, if the plaintiff loses, for all

15     provable injuries caused by the attachment is inadequate to redress the harm

16     inflicted, harm that could have been avoided had an early hearing been held. An

17     individual with an immediate need or opportunity to sell a property can neither do

18     so, nor otherwise satisfy that need or recreate the opportunity. The same applies to

19     a parent in need of a home equity loan for a child's education, an entrepreneur

20     seeking to start a business on the strength of an otherwise strong credit rating, or

21     simply a homeowner who might face the disruption of having a mortgage placed in

22     technical default. The extent of these harms, moreover, grows with the length of the

23     suit. . .

24

25     Many state attachment statutes require that the amount of a bond be anywhere from

26     the equivalent to twice the amount the plaintiff seeks. See, e.g., Utah Rule of

27     Civ.Proc. 64C(b). These amounts bear no relation to the harm the defendant might

28     suffer even assuming that money damages can make up for the foregoing

1    disruptions. It should be clear, however, that such an assumption is fundamentally

2    flawed. Reliance on a bond does not sufficiently account for the harms that flow from

3    an erroneous attachment to excuse a State from reducing that risk by means of a

4    timely hearing.

5  Doehr, supra at 501 U.S. 22-23, 111 S. Ct. 2118-2119.

6        62. Appropriate damages, and attorneys' fees, are clearly core components of

7  remedies for due process violations. Colorado's statutes fall dismally short of these

8  standards, by allowing only actual economic loss, no attorneys' fees, and by expressly

9  excluding non-economic damages.

10  C.R.S. §38-38-101(2) and §38-39-102(3)(a)(I).

11

12                                    Claim IV

13    **Commencing a Separate Action Against Forcible Entry and Detainer in the Same**

14        **District Court is Extremely Unlikely to Provide Any Protection**

15        63. Though a homeowner may move to enjoin the action for forcible entry and

16  detainer (FED) pursuant to C.R.S. §13-40-104(1)(f)  in an independent action while the

17  validity of the foreclosure and ownership of the property is challenged, the FED alone –

18  based on a foreclosure that is the product of a "certification" or "statement," and not based

19  on evidence – constitutes an independent deprivation of property without due process of

20  law under Doehr, supra.

21        64. The 11th Colorado District Court applied the Unconstitutional provisions of

22  Colorado foreclosure statutes per Claims I and II to wrongfully deprive the plaintiff, Wirth, of

23  his home and place of business in a Rule 120 hearing on the 2nd of December 2013 in

24  case number 2013CV030104. The plaintiff and his guests, who are being provided with

25  necessary shelter, are now in imminent danger of being wrongfully deprived of home and

26  property while also being threatened with an armed and forcible entry onto the property

27  and into the home.

28        65. Because of jurisdiction and venue, the plaintiff is compeled to commence any

1   independent action against the forcible entry in the same Colorado District Court that

2   presumed evidence in the Rule 120 hearing and has already ruled against the plaintiff

3   under the Unconstitutional statutes cited in Claims I and II above. This is tantamount to

4   asking the District Court to admit wrong doing and to provide conflicting protections in a

5   separate procedure done in the same District Court. A ruling in such an action is unlikely to

6   be in favor of protecting the plaintiff's interest in staying in his home and providing

7   necessary shelter to his guests.

8

9                               Claim V

10   **Colorado Foreclosure Statutes are Interpreted as a Permit for District Courts to**

11   **Fabricate Evidence and Practice Advocacy from the Bench**

12        66. In applying the Colorado foreclosure statutes, the 11th Colorado District Court

13   flatly refused to acknowledge the need for indorsements on the note that was used to go

14   forward with the sale of plaintiff's real property. The note was written to one entity,

15   Countrywide, and had not been transferred to any other entity. Another non-indorsed entity,

16   Nationstar, initiated the foreclosure without proving to have any properly documented and

17   proven interest in the property. Wirth, in the course of questioning Nationstar's

18   representative, Rachel Hook, proved that Nationstar had no indorsement transferring the

19   note to them. The 11th Colorado District Court thereby violated the Constitutional rights of

20   Wirth and expressly advocated on behalf of Nationstar by presumptively inventing

21   indorsement evidence on their behalf.

22

23                               Claim VI

24   **Colorado foreclosure statutes Enable District Courts to Exercise Political Beliefs**

25   **and give Violent Force to biases based on Personal Opinions.**

26        67. In concluding the Rule 120 hearing, the Colorado 11th District Court stated that

27   the burden of forcing lenders trading large numbers of mortgages to prove that the notes

28   had been legitimately transferred was excessive while ignoring the horrendous burdens of

1    wrongful deprivations of properties and forceful evictions of property owners and their

2    invited guests from homes, shelter, and places of business. Ignoring the Constitutional

3    requirements of due process and rules of evidence per the Fourteenth Amendment,

4    Section 1 enables political opinions and inhuman biases to supplant ordinary judicial

5    restraint and objectivity.

6

7                                      Claim VII

8    **All Owners of Real Property in Colorado Deserve the Protections Afforded to Them**

9              **by Constitutional Restraints against Abuses of State Powers**

10          68. The plaintiff, Wirth, is only one of many thousands of persons and families who

11   have been wrongfully deprived of real properties, homes, and places of business during

12   these economically troubled times. All of these persons and their households need relief

13   from the Court by forcing the state of Colorado to align its statutes with the Constitution,

14   force its courts to respect the fundamental rules of evidence and due process, to provide

15   equal protections to homeowners pursuant to the Fourteenth Amendment, Section 1.

16   Colorado homeowners are unequally protected under the law in comparison to owners of

17   other types of secured collateral. A foreclosure on real property in Colorado has a lower

18   threshold of proof than the transference from one party to another of the right to cash a

19   personal check.

20

21                                  Request for Relief

22          Wherefore, the plaintiff respectfully requests:

23

24          69. Immediately enjoin and restrain Park County from selling, or forcibly entering

25   and detaining the plaintiff's home, or posting eviction notices, or evicting the plaintiff from

26   his property located at 36 Iris Drive, Bailey, Colorado 80421 because plaintiff is unlikely to

27   obtain any such relief per Claim IV above.

28

1      70. Vacate the judgement of the 11th District Court of Colorado case number

2    2013CV030104.

3

4      71. Enjoin and stop all foreclosure proceedings, sales, forcible entries, and evictions

5    of property owners in the state of Colorado until the Constitutional questions called forth in

6    this complaint are properly addressed and resolved.

7

8      72. Repeal C.R.S. §38-38-101(6)(b) for enabling wrongful deprivations of real

9    property in violation of the fundamental rules of evidence, due process, and the equal

10   protections required by the Fourteenth Amendment, Section 1 of the US Constitution and

11   as described in Claims I, II, V and VI above.

12

13     73. Repeal C.R.S. §38-39-102(3)(a)(I) for enabling wrongful deprivations of real

14   property and clouding titles thereof prior to judgements in violation of due process

15   guarantees provided in the Fourth and Fourteenth Amendments of the US Constitution and

16   as described in Claims I through VII above.

17

18     74. Repeal  C.R.S.  §38-38-504 for enabling a presumption of evidence against

19   home owners defending their real property interests regardless of the existence of actual

20   evidence as described in Claim II above.

21

22     75. Repeal C.R.S.  §13-40-104(1)(f) for enabling the forceful and potentially violent

23   evictions of real property owners prior to final judgements as a matter of law as described

24   in Claim IV.

25

26     76. Repeal C.R.S.  §38-38-101(2) and §38-39-102(3)(a)(I) for Unconstitutionally

27   limiting damages to real property owners whose property has been shown to be wrongfully

28   taken or clouded thus prohibiting wronged owners of real property from enjoying equal

1  protection under the law as do owners of other types of property in violation of the Equal

2  Protection Clause of the Fourteenth Amendment, Section 1 as described in Claim IV

3  above.

4

5      77. Declare that the state of Colorado shall establish procedures to: 1. enable real

6  properties wrongfully taken under its foreclosure statutes since 2006 to be returned to their

7  owners where those properties have been left vacant, or 2. compensate victims wrongfully

8  deprived of property for loss of real property values, and consequent economic damages

9  including those for duress, pain, injuries, and illnesses caused by stress, displacement,

10  exposure, and other suffering.

11

12      Respectfully submitted this 9th day of December 2013.

13

14

15                                                       By: Martin Thomas Wirth

16                                                       Plaintiff pro se

17                                                       36 Iris Drive

18                                                       Bailey, Colorado 80421

19                                                       303-816-1054

COMPLAINT                                          32