

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2013 DEC 23  PM 2: 55

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. **13-CV-03309-REB-KMT**

MARTIN THOMAS WIRTH, Plaintiff,

v.

JOHN HICKENLOOPER, In his Official Capacity as Governor of Colorado,

JOHN SUTHERS, In his Official Capacity as Attorney General of Colorado,

STEPHEN A. GROOME, In his Official Capacity as 11th District Court Judge,

VICKI ARMSTRONG, In her Official Capacity as Public Trustee of Park County,

NATIONSTAR MORTGAGE, LLC,

LAWRENCE E. CASTLE, In his Corporate and Individual Capacities,

THE CASTLE LAW GROUP, LLC,

MARY HAGER, Individually,

FEDERAL NATIONAL MORTGAGE ASSOCIATION (FANNIE MAE),

Defendants.

---

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

**REGARDING COLORADO STATUTORY VIOLATIONS OF: CONSTITUTIONAL**

**RESTRAINTS, RULES OF EVIDENCE, AND DUE PROCESS**

---

1

## PARTIES

1.  Plaintiff, MARTIN THOMAS WIRTH, is a citizen of the United States of America who presently resides at the following address:

    36 Iris Drive

    Bailey, Colorado 80421

2.  Defendant, THE STATE OF COLORADO, is a state in the United States of America located at the following address:

    136 State Capitol

    Denver, CO 80203-1792

3.  Defendant, JOHN HICKENLOOPER, is a citizen of the United States of America located at the following address:

    136 State Capitol

    Denver, CO 80203-1792

4.  Defendant, JOHN SUTHERS, is a citizen of the United States of America located at the following address:

    1300 Broadway, 10th Floor

    Denver, Colorado 80203

5.  Defendant, STEPHEN A. GROOME, is a citizen of the United States of America located at the following address:

    300 4th Street

    Fairplay, CO 80440

6.  Defendant, VICKI ARMSTRONG, is a citizen of the United States of America located at the following address:

    501 Main Street

    Fairplay, CO 80440

7. Defendant, NATIONSTAR MORTGAGE, LLC, is a Texas corporation located at the following address:

>   350 Highland Drive
>   Lewisville, TX 75067

8. Defendant, LAWRENCE E. CASTLE, is a citizen of the United States of America located at the following address:

>   999 18th Street, Suite 2201
>   Denver, CO 80202

9. Defendant, THE CASTLE LAW GROUP, LLC, is a Colorado corporation located at the following address:

>   999 18th Street, Suite 2201
>   Denver, CO 80202

10. Defendant, MARY HAGER, is a citizen of the United States of America located at the following address:

>   25577 Conifer Road, Suite 201
>   Conifer, CO 80202

11. Defendant, FEDERAL NATIONAL MORTGAGE ASSOCIATION (or FANNIE MAE), is a government sponsored enterprise of the United States of America located at the following address:

>   3900 Wisconsin Avenue, NW
>   Washington, DC 20016-2892

## JURISDICTION

12. Pursuant to 28 USC § 1331 the United States District Court has jurisdiction over civil matters arising under the Constitution and laws of the United States.

## NATURE OF THE ACTION

13. Colorado's foreclosure statutes presume that non-existent indorsements or assignments exist based solely on an unsworn "certification" or "statement" by the foreclosing party's counsel. This presumption contradicts and negates Constitutional requirements of due process and fundamental rules of evidence. The statutes, infra, violate the Equal Protection Clause of the Fourteenth Amendment of the US Constitution in so far as evidentiary and due process protections to home and real property owners have been rendered practically non-existent compared to owners of other forms of collateral.

## STATEMENT OF FACTS

Contents

I.    Summary                                                              5

II.   Statutory Provisions                                                 7

      A.    C.R.S. §38-38-101(6)(b) Deems Nonexistent Evidence of Indorsement or Assignment to Exist                                                7

      B.    C.R.S. §38-38-101(1)(b)(II) and (c)(II) Allow Foreclosure by "Certification" or "Statement" in Lieu of Evidence                                      8

      C.    C.R.S. §38-39-102(3)(a)(I) Allows "Qualified Holders" to Release a Deed of Trust Without Producing the Original Evidence of Debt                    10

      D.    C.R.S. §38-38-504 Deems a Public Trustee's Deed to be Prima Facie Evidence of Statutory Compliance and Truth                                 10

      E.    C.R.S. §13-40-104(1)(f) Allows Eviction Based Solely on a Foreclosure Order that is Not a Final Judgment as a Matter of Law                        11

      F.    C.R.S. §38-38-101(2) and §38-39-102(3)(a)(I) Bar Adequate Remedies to Parties Damaged by Improper Foreclosures                               12

III.    A History of Action in Times of Economic Distress                        13

IV.     11th Colorado District Court Ruling Against the Plaintiff was Based on the

        Presumed but Non-Existent Evidence Allowed by C.R.S. §38-38-101.           14

## I. Summary

14. Any presumption of evidence without proof contradicts and negates the
    evidentiary requirements pursuant to Uniform Commercial Code CRS 4-3-203(c)
    and all fundamental rules of evidence in common law where liens and secured
    promissory notes must be expressly indorsed by the originator to assign the
    rights of a negotiable instrument to another party. The provisions described below
    were added by Colorado House Bill 06-1387 at the behest of banks and
    foreclosure attorneys in 2006 and refined to their present form by House Bill 09-
    1207. The purposes and resulting effects of these bills are:

    A) to eliminate the burden of proof showing that mortgages had been properly
       transferred, lowering the threshold of proof compared to other negotiable
       instruments that must still show proper indorsements before anything may be
       seized in lieu of payment, or money may be drawn from an account using a
       check,

    B) to replace the standard business practice of transference through explicit
       indorsement of notes citing the transferee with an illogical negative burden of
       proof put upon defendants, and

    C) to empower bank employees, mortgage companies, predatory lenders, and
       other fraudelent operators to abuse homeowners by enabling facile and
       wrongful deprivation of property using Colorado District Courts as instruments
       in wrong doing.

15. The statute allows Colorado foreclosures to proceed based on undocumented claims of a right to enforce a lien against real property. While a foreclosure under the statute is not based on a deprivation of property prior to judgement, it has the same effect. It converts Colorado District Courts into automatons granting extra-judicial powers to attorneys taking real property while such extra-judicial powers do not exist for enforcement of liens or promissory notes using other forms of property as security.

## II. Statutory Provisions

### A.  C.R.S. §38-38-101(6)(b) Deems Nonexistent Evidence of Indorsement or Assignment to Exist

16. The primary point of entry into the statutory labyrinth is C.R.S. §38-38-101(6), which defines "indorsement or assignment" for the rest of the statute. It was adopted as part of an omnibus revision to Colorado foreclosure law in HB 06-1387, and refined to its present form by HB 09-1207. A reading of the plain language of this section supports an inference that the Constitutional underpinnings of the Rule 120 review process were not considered by the Colorado Legislature when it enacted them.

§38-38-101(6) provides:

(6) Indorsement or assignment. (a) Proper indorsement or assignment of an evidence of debt shall include the original indorsement or assignment or a certified copy of an indorsement or assignment recorded in the county where the property being foreclosed is located.

(b) Notwithstanding the provisions of paragraph (a) of this subsection (6), the original evidence of debt or a copy thereof <u>without</u> proper indorsement or assignment <u>shall be deemed to be properly indorsed or assigned</u> if a qualified holder presents the original evidence of debt <u>or a copy thereof</u> to the officer <u>together with a statement in the certification</u> of the qualified holder <u>or in the statement of the attorney for the qualified holder</u> pursuant to subparagraph (II) of paragraph (b) of subsection (1) of this section <u>that the party on whose behalf the foreclosure was commenced is the holder of the evidence of debt</u>.

C.R.S. §38-38-101(6) (emphasis added).

17. Subsection (b) allows an unsworn "certification" by one who claims to be a

7

"qualified holder" (C.R.S. §38-38-100.3(20)) , or an unsworn "statement" by an attorney for one who claims to be a qualified holder, to serve as a complete and determinative substitute for any evidence whatsoever of an indorsement or assignment defined in subsection (a), and allows an Order Authorizing Sale to be based solely on the certification or statement, together with an uncertified copy of the purported evidence of debt.

**B.   C. R. S. §38-38-101(1)(b)(II) and (c)(II) Allow Foreclosure by "Certification" or "Statement" in Lieu of Evidence**

18. There are two basic alternatives to initiating a Rule 120 foreclosure in Colorado. A foreclosing party may choose to file either: (1) the original Note and Deed of Trust [§38-38-101(1)(b) and (c)], or certified copies of same that have been recorded [§38-38-101(1)(c) and (6)(a)], or, in the alternative, (2) a certification that it is a qualified holder of the evidence of debt, or a statement by an attorney that its client is a qualified holder of the evidence of debt, with copies (not required to be certified) of the Note and Deed of Trust [§38-38-101(1)(b)(II) and (c)(II)]. The former is referred to herein as a "full-doc" foreclosure, the latter as a "no-doc" foreclosure. If only §38-38-101(6)(b) is stricken as unconstitutional, for reasons specified above, the remaining "no-doc" foreclosure provisions would remain intact, subvert Mitchell's documentary proof requirements, violate the Court's concern with "bare conclusory claims of ownership or lien. . .," (id.), and fail to adequately reduce the risk of erroneous deprivation required by the Court in Mathews, supra, and Doehr, supra.

*1. Fully Documented Foreclosure*

19. Under C.R.S. §§38-38-100(3) and 38-38-101, a "holder of evidence of debt" or its attorney may file a foreclosure with:

(1) ". . . [t]he <u>original evidence</u> of debt, including any modifications to the

original evidence of debt, together with the <u>original indorsement</u> or assignment thereof, if any, to the holder of the evidence of debt . . .," (C.R.S. §38-38-101(1)(b)), or ". . . a <u>certified copy</u> of the indorsement or assignment <u>recorded</u> in the county where the property being foreclosed is located. . .". C.R.S. §38-38-101(1)(b) and (6)(a) (incorporated by reference in 38-38-101(1)(b)); and

(2) ". . . [t]he <u>original recorded deed of trust</u> securing the evidence of debt . . ." (C.R.S. §38-38-101(1)(c)) or a ". . . <u>certified copy</u> of the recorded deed of trust . . .". C.R.S. §38-38-101(1)(c)(I).

CRS. §38-38-101(1) & (6) (emphasis added)

### 2. Non or Partially Documented Foreclosure

20. If a foreclosing party initiates a foreclosure under the alternative "certification" or "statement" provisions of §§38-38-101(1)(b)(II) and (c)(II) – which allow a foreclosure to be initiated with a certification or a statement of the attorney for a party who ". . . <u>claims to be</u> a qualified holder . . ." (id.) (emphasis added), and also allow (as an <u>alternative</u> to an " . . . original endorsement or assignment . . . to the holder of the evidence of debt . . .") ". . . <u>other proper indorsement or assignment in accordance with subsection (6)</u> . . .". 38-38-101(1)(b) (emphasis added) – the Rule 120 Court does not require evidence that supports the certification or statement, as a fundamental part of its judicial control, regardless whether the foreclosure is opposed.

**C. C.R.S. §38-39-102(3)(a)(I) Allows "Qualified Holders" to Release a Deed of Trust Without Producing the Original Evidence of Debt**

21. Another "domino" in the deprivation of property without due process of law occurs after a foreclosure based on only the "certification" and "statement" provisions of §38-38-101, when a "qualified holder" is allowed by C. R. S. §38-39-102(3)(a)(I) to release the homeowner's deed of trust without producing the original evidence of debt – just as it was allowed to foreclose without the original evidence of debt. The statute provides, in pertinent part:

> (3)(a)(I) Subject to the provisions of subparagraph (II) of this paragraph (a), with respect to either subsection (1) or (2) of this section, a holder of the original evidence of debt that is a qualified holder, as defined in section 38-38-100.3(20), may request the release of a deed of trust without producing or exhibiting the original evidence of debt. . .

C.R.S. §38-39-102(3)(a)(I).

22. The risk of deprivation in this instance is not only to the homeowner (whose deed may be released before an independent challenge of the foreclosure is completed), but also to the true holder of the evidence of debt, the beneficiary to the deed of trust, to any subsequent purchaser who relies on the release of the deed of trust, and other parties who may be affected by this cloud on title.

**D.  C. R. S.  §38-38-504 Deems a Public Trustee's Deed to be Prima Facie Evidence of Statutory Compliance and Truth**

23. The Colorado Legislature not only created a hearing that allows a foreclosing party to ". . . obtain an order authorizing sale . . ." (§38-38-105) with only "bare conclusory claims of ownership or lien" (Mitchell, supra). It went further in elevating bare "certifications" or "statements" to the status of "truth," and a presumption of statutory compliance, upon issuance of the foreclosure deed authorized by a Colorado District Court order, to wit:

> Any deed executed by an officer or other official under this article <u>shall be prima facie evidence of compliance</u> with all statutory requirements for the sale and execution of the deed and <u>evidence of the truth of the recitals contained in the deed</u>.

C.R.S. §38-38-504 (emphasis added).

**E.  C.R.S. §13-40-104(1)(f) Allows Eviction Based Solely on a Foreclosure Order that is Not a Final Judgment as a Matter of Law**

24. Similarly, C.R.S. §13-40-104(1)(f) creates a "domino" deprivation of property without due process of law, by allowing a homeowner to be evicted from a home – based solely on the issuance of the public trustee's deed – even where the validity of the deed may be at issue in an independent action that challenges the validity of the Order that produced the public trustee's deed. The Statute provides, in pertinent part:

> (1) Any person is guilty of an unlawful detention of real property in the following cases:
>
> . . .
>
> (f) When the property has been duly sold under any power of sale, contained in any mortgage or trust deed that was executed by such

person, or any person under whom such person claims by title subsequent to date of the recording of such mortgage or trust deed, and the title under such sale has been duly perfected and the purchaser at such sale, or his or her assigns, has duly demanded the possession thereof;

C.R.S. §13-40-104(1)(f).

**F.   C.R.S. §38-38-101(2) and §38-39-102(3)(a)(I) Bar Adequate Remedies to Parties Damaged by Constitutionally Defective Foreclosures**

25. In the event of an improper foreclosure, C.R.S. §38-38-101(2) provides for a remedy allowing compensation for wrongful deprivation of property:

> . . .
>
> limited to actual economic loss suffered together with any court costs and reasonable attorney fees and costs incurred in defending a claim brought as a direct and proximate cause of the failure to produce the original evidence of debt, but such indemnity shall not include, and <u>no claimant shall be entitled to, any special, incidental, consequential, reliance, expectation, or punitive damages of any kind</u>. A qualified holder acting as agent, nominee, or trustee shall be liable for the indemnity pursuant to this subsection (2).

C.R.S. §38-38-101(2) (emphasis added).

> . . .
>
> The indemnity granted by this paragraph (a) is limited to actual economic loss suffered and any court costs and reasonable attorney fees and costs incurred in defending a claim brought as a direct and proximate result of the failure to produce the original evidence of debt, but the indemnity does not include and no claimant is entitled to any special, incidental,

consequential, reliance, expectation, or punitive damages.

C.R.S. §13-40-104(1)(f).

### III. A History of Action in Times of Economic Distress

26. In Home Building & Loan Association v Blaisdell, 290 U.S. 398 (1934) the Supreme Court upheld a state-legislated foreclosure moratorium during the "Great Depression," to protect the interests of real property owners during a time of . . .

> . . . economic emergency which threaten[s] the loss of homes and lands which furnish those in possession . . . necessary shelter . . . [from] . . . corporations, such as insurance companies, banks, and investment and mortgage companies . . .

Id. at 444-446, passim [foreclosure moratorium did not violate Contracts Clause].

27. The significance of Blaisdell is not that it upheld a moratorium on foreclosures, but that it did so on ". . . mortgages of unquestionable validity . . ." (id. 445) by parties who were ". . . not seeking homes . . . [but only] . . . the reasonable protection of their investment security. . ." (id. 444-446, passim). In stark contrast, foreclosing parties these days aggressively seek Colorado homes, under a Colorado statute that allows them do so based on a mere "certification" or "statement" that they have a right to do so, with no evidence that they even hold a valid security interest, or are the real party in interest to enforce it. The Blaisdell Court's "mortgages of unquestionable validity" may have been replaced by "certifications" and "statements" parading as evidence, but this Court's Article III jurisdiction to effect Constitutional remedies requested herein remains intact.

**IV. 11th Colorado District Court Ruling Against the Plaintiff was Based on the Presumed but Non-Existent Evidence Allowed by C.R.S. §38-38-101(b)(II)**

28. In the course of the Rule 120 hearing in Colorado case 2013CV030104, the plaintiff pro se, Wirth, questioned Nationstar employee Rachel Hook regarding the number of indorsements to Nationstar that existed on the Note or whether Nationstar had any documentary evidence expressingly transferring the Note to Nationstar. After some evasion of the question, Hook finally answered that there were no indorsements to Nationstar (Exhibit A to be provided when the 11th District Court makes the transcript available). The only indorsement on the Note was to Countrywide, another entirely separate corporate entity. Pursuant to C.R.S. §38-38-101(b)(II) cited above, the 11th District Court presumed the non-existent indorsement existed and ruled against Wirth.

29. If left unchecked, the results of this ruling will be to wrongfully deprive Wirth of his real property, his home and place of business, and also to be to deprive Wirth's house guests of necessary shelter.

**FIRST CLAIM FOR RELIEF AND SUPPORTING FACTUAL ALLEGATIONS**

**Colorado Statutes are Patently Unconstitutional, Substituting Presumptions in**

**Lieu of Evidence**

30. To assure that due process of law is provided to Colorado homeowners who face
impairment or termination of real property rights, the Colorado Supreme Court
has consistently aligned its public trustee foreclosure proceedings with due
process requirements of the Fourteenth Amendment as interpreted by the United
States Supreme Court. E.g., Plymouth Capital Co., Inc. v. District Court, 955 P.2d
1014, 1015-1017 (Colo. 1998) [discussing intent of Rule 120 to accord with
Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974)
and Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d
349 (1969)]; Goodwin v. District Court, 779 P.2d 837, 842 (Colo. 1989) [citing
North Georgia Finishing, Inc. v. Di–Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42
L.Ed.2d 751 (1975); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d
556 (1972); Mitchell, supra; Sniadach, supra; ruling that Rule 120 Court's
resolution of issue of default adversely to homeowner, without considering
evidence challenging "real party in interest," is "tantamount to the taking of
property in a summary fashion without any hearing at all—a deprivation clearly
violative of due process of law;".]; Moreland v. Marwich, Ltd., 665 P.2d 613, 616-
618 (Colo. 1983) [analyzing Rule 120's ". . . due process protections against
summary foreclosure actions consistent with those protections against
deprivations of property without a prior judicial hearing that have received
recognition in a line of modern decisions of the United States Supreme
Court. . . .".]; Valley Development at Vail, Inc. v. Warder, 557 P.2d 1180, 1181-1182
(Colo. 1976) [Rule 120 proceedings must provide debtor an ". . . opportunity to be
heard at a meaningful time or in a meaningful manner . . ." to comport with ". . .

constitutional requirements of due process. . .".]; Princeville Corp. v. Brooks, 533 P.2d 916, 918 (Colo. 1975) [Rule 120 proceedings must ". . . conform to due process (citations omitted) . . . [and] comport with the modern trend to restrict Ex parte taking of property without a hearing. . .".]. The Colorado Supreme Court has not, however, addressed the Constitutionality of the statutory provisions and procedures before the Court in this case.

31.  Refering to paragraphs 7 through 13 above, C.R.S. §38-38-101(6)(b) patently bypasses the required documentary evidence foundations on which Mitchell, supra, and the Colorado Supreme Court relied in upholding a Louisiana statute, in that unsworn "certifications" and "statements:" (1) are nothing more than ". . . bare conclusory claims of ownership or lien . . .," (2) do not constitute ". . . specific facts shown by verified petition or affidavit. . .," (3) diminish the ". . . requisite showing [that] must be made to a judge . . ." to a mere unsworn certification or statement, (4) effectively place the homeowner ". . . at the unsupervised mercy of the creditor and court functionaries (I.E., public trustees who serve as mere functionaries in accepting and recording certifications and statements, without requiring authentication of any underlying evidence referenced in the certification or statement). . .," (5) require a Rule 120 Court that strictly applies the statute to authorize and approve an unopposed foreclosure sale based on an unsworn certification or statement that "shall be deemed" pursuant to C.R.S. §38-38-101(6)(b) to constitute a missing indorsement or assignment, thereby rendering ". . . judicial control of the process from beginning to end. . . " superfluous, and increasing ". . . the risk that the ex parte procedure will lead to a wrongful taking. . . .," (6) eliminate the requirement of ". . . [d]ocumentary proof [that] is particularly suited for questions of the existence of a vendor's lien and the issue of default. . . .," and (7) do not require the foreclosing

party to ". . . prove[ ] the grounds upon which the writ was issued.'" See Mitchell, supra. Moreover, by relieving the party seeking to terminate an owner's interest in property of the duty to produce any evidence that it is the proper party to terminate such interest, subsection (b) creates grave risk of erroneous deprivation of property, which risk led the Doehr Court to find the state statute at issue unconstitutional.

32. C.R.S. §38-38-101 "creates an additional burden upon a debtor to establish evidence of the creditor's identity which the creditor, itself, is not required to locate" – Plaintiff respectfully submits that this is best addressed by the fundamental rule that every action must be prosecuted in the name of the real party in interest. Applied to a Rule 120 proceeding, Colorado precedent is clear that a Rule 120 Court's resolution of the issue of default adversely to a homeowner, without considering evidence challenging "real party in interest," is ". . . tantamount to the taking of property in a summary fashion without any hearing at all—a deprivation clearly violative of due process of law." Goodwin v. District Court, 779 P.2d 837, 841-842 (Colo. 1989).

Colorado Rule of Civil Procedure 17(a) requires that every action "be prosecuted in the name of the real party in interest." The real party in interest is that party who, by virtue of substantive law, has the right to invoke the aid of the court in order to vindicate the legal interest in question. . . . Implicit in Rule 120 is the requirement that the party seeking an order of sale have a valid interest in the property allegedly subject to the power of sale. Unless the "real party in interest" defense is considered at a Rule 120 hearing, any order for sale might well result in the sale of property in favor of a party who has no legitimate claim to the property at all. Once a debtor in a Rule 120 proceeding raises the "real party in

interest" defense, therefore, <u>the burden should devolve upon the party</u> <u>seeking the order of sale to show that he or she is indeed the real party in</u> <u>interest</u>.

Goodwin v. District Court, 779 P.2d 837, 842-843 (Colo. 1989) [Order Authorizing Sale vacated; remanded for determination whether purported assignment of promissory note and deed of trust were invalid due to interlineations, and whether person seeking to foreclose was, if assignment was invalid, real party in interest in Rule 120 proceeding] .

33. In Goodwin, the existence of "interlineations" on assignments of the loan documents raised evidentiary issues as to whether the assignments were valid, and, therefore, whether the foreclosing party was the party entitled to invoke the power of sale provisions in the deed of trust. Foreclosures filed in recent years by parties whose names appear nowhere on any loan documents, and who provide no evidence of any valid assignments, raise evidentiary questions more fundamental than those raised by mere "interlineations."

34. A "certification" by one who claims to be a "qualified holder of evidence of debt," or a "statement" by an attorney for such party, is no substitute for evidence that the certifying party is, in fact, the holder of the evidence of debt, with the right to invoke the power of sale contained in the deed of trust. Under Goodwin, supra, if the homeowner challenges the petitioner's right to invoke the power of sale, the burden shifts to the foreclosing party to prove – with actual evidence – that it is the holder of the evidence of debt, with a right to invoke the power of sale contained in the deed of trust. Though Goodwin predates recent practices in the securitization of mortgages, the fundamental rules of procedure and evidence still apply. If the name of the beneficiary on the deed of trust, and/or the name of the obligee on the note, do not match the names on the "certification" or "statement," there is an evidentiary gap that must be filled with evidence of indorsements or

assignments of interests to the party attempting to foreclose.

35.  If a Rule 120 Court refuses or declines to consider a valid challenge based on a "real party in interest" defense, the homeowner may file an independent action under Rule 105 for a complete adjudication of the foreclosing party's claims of rights and interests (See discussion of Rule 105 proceedings below). The independent action, however, is no substitute for due process in the Rule 120 proceeding, to wit:

> While we recognize that the Goodwins could have filed an independent action to enjoin the public sale, C.R.C.P. 120(d), <u>the availability of a collateral remedy should not serve to divest the Goodwins of their opportunity to defend against the deprivation of their real property interest</u> by showing that the parties seeking the order of sale <u>were without authority to exercise the power of sale</u> on which any order of sale necessarily would be predicated.

Goodwin, supra at 842 (emphasis added).

36.  Due process of law clearly requires that a Rule 120 Court require the foreclosing party to be the real party in interest, as a threshold question. To provide process that is due and protect against wrongful deprivations of property, this inquiry must be evidence-based, and is related to the questions of whether the foreclosing party has the right to enforce a valid, recorded security interest, as discussed above.

37.  The significance of C.R.S. §38-38-101(6)(b) to the foreclosure process as a whole is made clear by the definition of "holder of an evidence of debt" in §38-38-100.3(10), which – on its face – renders all evidence-based definitions of "holder of an evidence of debt" meaningless if the foreclosing party relies on §38-38-101(6)(b) as a basis for the foreclosure. Specifically, §38-38-100.3(10) provides:

(10) "Holder of an evidence of debt" means the person in actual possession of <u>or otherwise entitled to enforce</u> an evidence of debt; except that "holder of an evidence of debt" does not include a person acting as a nominee solely for the purpose of holding the evidence of debt or deed of trust as an electronic registry without any authority to enforce the evidence of debt or deed of trust. For the purposes of articles 37 to 40 of this title, the following persons are <u>presumed to be</u> the holder of an evidence of debt:

(a) The person who is the obligee of and who is in possession of an original evidence of debt;

(b) The person in possession of an original evidence of debt together with the proper indorsement or assignment thereof to such person in accordance with section <u>38-38-101 (6)</u>;

(c) The person in possession of a negotiable instrument evidencing a debt, which has been duly negotiated to such person or to bearer or indorsed in blank; <u>or</u>

(d) The person in possession of an evidence of debt with authority, which may be granted by the original evidence of debt or deed of trust, to enforce the evidence of debt as agent, nominee, or trustee or in a similar capacity for the obligee of the evidence of debt.

C.R.S. §38-38-100.3(10) (emphasis added)

38. Reviewing the definitions one by one, production of: (a) the original "evidence of

debt" (infra, paragraph 30) by the named obligee; or (b) the original evidence of debt with proper indorsement or assignment to the possessor as defined by §38-38-101(6)(a) [via the cross-reference in subsection (b)]; or (c) a negotiable instrument evidencing a debt, with evidence of negotiation to the possessor, or to bearer, or indorsed in blank; or (d) the original evidence of debt, with evidence to establish an agency or similar relationship with the named obligee; would be consistent with documentation requirements under the common law and various provisions of the U.C.C., and would also meet the documentation requirements underlying Mitchell, supra, Matthews, supra, and Doehr, supra. Under these definitions, the foreclosure would be based on "documentary proof," and not on "bare conclusory claims of ownership or lien," as required by Mitchell, supra.

39. C.R.S. §38-38-100.3(8) defines "evidence of debt" as "a writing that evidences a promise to pay or a right to the payment of a monetary obligation, such as a promissory note, bond, negotiable instrument, a loan, credit, or similar agreement, or a monetary judgment entered by a court of competent jurisdiction." Standing alone, the evidence of debt is presumably the original evidence of debt, since there is no reference to a "copy" constituting evidence of debt.

40. Subsection (d) acknowledges the possibility that an agent, nominee, or person in a similar relationship with a named obligee may have the authority to enforce an obligation for the named obligee, but mere acknowledgement of this possibility does not prove the existence of such a relationship. If the foreclosing party claims to be acting as an agent for another, it must also prove the existence of the agency relationship with competent evidence. Hancock v. Minneapolis-Moline, Inc., 482 P.2d 426, 428 (Colo.App. 1971) [citing 3 Am.Jur.2d Agency § 348; burden of proof is on the party who claims to be an agent with authority to file suit to prove the existence of the agency relationship under C.R.C.P. Rule 17].

41.  A foreclosing party who meets the requirements of the fully documented foreclosure referenced in paragraph 10 above, and produces in the Rule 120 Court original or certified copies of recorded documents that show evidence of title and valid indorsements or assignments to that party, would presumably comply with Mitchell's requirement of documentary proof. Because this evidence can be reviewed by a judge in the Rule 120 procedure, fully documented foreclosures reduce the risk of wrongful deprivation consistent with Mathews, supra, and Doehr, supra. It would also presumably comply with Colorado common law by producing evidence that it currently holds legal title to the note [Platte Valley Savings & Loan v Crall, 821 P.2d 305, 307 (Colo. App. 1991); American Surety Co. v. Scott, 63 F.2d 961, 964 (10th Cir. 1933) and citations therein (under Colorado law, the one who holds the legal title is the real party in interest)]; or that it has a full and complete assignment of the note, valid at the time its claim arose and at the time the case was filed [Alpine Associates, Inc. v. KP & R,, Inc., 802 P. 2d 1119, 1121 (Colo. App. 1990)]. If the foreclosing party claims to be acting as an agent for another, the Rule 120 Court should also have before it proof of the existence of the agency relationship with competent evidence. Hancock v. Minneapolis-Moline, Inc., 482 P.2d 426, 428 (Colo.App. 1971) [citing 3 Am.Jur.2d Agency § 348; burden of proof is on the party who claims to be an agent with authority to file suit to prove the existence of the agency relationship]. Finally, the Rule 120 Court would presumably apply pertinent provisions of the U.C.C. to the documentary evidence. Plaintiff sees no Constitutional problems with Colorado's fully documented foreclosure provisions that governed all public trustee foreclosures prior to the amendment of Colorado foreclosure statutes by HB 06-1387.

42. In stark contrast, an non or partially documented foreclosure based on a mere

"certification" or "statement" under §38-38-101(6)(b) – incorporated by reference in the definition of "holder of an evidence of debt" under the definition in §38-38-100.3(b) – allows a party who has no indorsement or assignment, yet is presumptuously deemed to have one upon claiming to be a "qualified holder," to attain the status of "holder of an evidence of debt" under §38-38-100.3(b) by the "certification" or "statement" alone, thereby rendering the remaining evidence-based definitions of "holder of an evidence of debt" superfluous and meaningless, subverting Mitchell's due process documentary proof requirements, and violating the Court's concern with "bare conclusory claims of ownership or lien." Id. Because this scheme does not adequately guard against the risk of wrongful or erroneous deprivation, §38-38-101(6)(b) does not survive Constitutional scrutiny under Mitchell, supra, and Doehr, supra, and is therefore Constitutionally defective on its face.

43. If §38-38-101(6)(b) is determined to be unconstitutional, for reasons specified above, a Rule 120 Court will not be bound by a statutory provision that a party "shall be deemed" to have a non-existent endorsement or assignment. Independently of the status of §38-38-101(6)(b), a Rule 120 Court should still require evidence to support claims made in a "certification" or "statement" foreclosure under §§38-38-101(1)(b)(II) and (c)(II). The core components of judicial control over the process from beginning to end, and documentary proof of a party's right to foreclose, must accord with fundamental requirements of due process of law. Mitchell, supra; Doehr, supra.

## SECOND CLAIM FOR RELIEF AND SUPPORTING FACTUAL ALLEGATIONS

### "Real Party in Interest" is the Threshold Question

44. The Colorado foreclosure statute is constitutionally defective under Connecticut v.
Doehr, 501 U.S. 1, 111 S. Ct. 2105, 115 L. Ed. 2d 1 (1991) and Mitchell v. W. T.
Grant Co., 416 U.S. 600, 94 S. Ct. 1895, 40 L. Ed. 2d 406 (1974).

45. The "procedures approved" in Mitchell, supra withstood due process scrutiny of
the United States Supreme Court because, inter alia:

. . . bare conclusory claims of ownership or lien will not suffice under the
Louisiana statute. Article 3501 authorizes the writ 'only when the nature of
the claim and the amount thereof, if any, and the grounds relied upon for
the issuance of the writ clearly appear from specific facts shown by verified
petition or affidavit. Moreover, in the parish where this case arose, the
requisite showing must be made to a judge, and judicial authorization
obtained. Mitchell was not at the unsupervised mercy of the creditor and
court functionaries. The Louisiana law provides for judicial control of the
process from beginning to end. This control is one of the measures
adopted by the State to minimize the risk that the ex parte procedure will
lead to a wrongful taking. It is buttressed by the provision that should the
writ be dissolved there are 'damages for the wrongful issuance of a writ'
and for attorney's fees 'whether the writ is dissolved on motion or after trial
on the merits.' Art. 3506.

. . .

Documentary proof is particularly suited for questions of the existence of a
vendor's lien and the issue of default. . . .

. . .

Louisiana law expressly provides for an immediate hearing and dissolution

24

of the writ 'unless the plaintiff <u>proves</u> the grounds upon which the writ was

issued.' Art. 3506.

Mitchell, supra at 416 U.S. 616-618, 94 S. Ct. 1904-1905 (emphasis added).

46.  Inspired by Mitchell, Rule 120 was drafted to (1) require a District Court to both

authorize and subsequently approve a foreclosure sale; (2) require a hearing in a

District Court if the homeowner challenges the foreclosure, but allow the Court to

". . . dispense with the hearing if no responsive pleading were filed and if the

motion established a prima facie case for the issuance of an order authorizing

sale . . .;" (3) in the interest of "economy of language," the Rule presumes that ". .

. a court could not be expected to find the existence of a 'default' unless a 'debt'

existed, nor could the existence of a 'circumstance authorizing . . . exercise of a

power of sale' be reconciled with the absence of a 'lien.';" (4) acknowledging the

". . . narrow scope and summary nature . . ." of the proceeding, the Rule

expressly allows ". . . relitigating in collateral proceedings the merits of issues first

raised in a Rule 120 proceeding . . .," and limits the Court's purview to " . . .

'reasonable probability' rather than finality;" and (5) ". . . in short . . . Rule 120

should provide a hearing on specific issues of constitutional magnitude, leaving

subsidiary issues to be litigated in more conventional forums." Though the

Colorado Rule 120 did not adopt Mitchell's approval of damages and attorneys'

fees for wrongful issuance of an order authorizing sale, this would clearly have

been appropriate if the Rule had adopted all pertinent elements identified by the

Mitchell Court.

47.  Fundamental elements of Mitchell's due process inquiry were re-iterated in

Mathews v. Eldridge, 424 U.S. 319, 334-335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976),

then refocused and again applied in Connecticut v. Doehr, 501 U. S. 1, 111 S. Ct.

2105, 115 L. Ed. 2d 1 (1991), resulting in a three-part inquiry to guide this Court's

present analysis. Various types of property interests are involved in these cases, but the Supreme Court is ". . . <u>no more inclined</u> now than we have been in the past <u>to distinguish among different kinds of property</u> in applying the due process clause." North Georgia Finishing, supra at 419 U.S. 608, 95 S.Ct. 723 (citing Fuentes, supra with emphasis added).

48. In Doehr, supra, as in the present case, the dispute was between private parties, one of whom sought to rely on a state statute to file a lien on the other's real property, to wit:

> Such enactments are designed to enable one of the parties to "make use of state procedures with the overt, significant assistance of state officials," and they undoubtedly involve state action "substantial enough to implicate the Due Process Clause." Tulsa Professional Collection Services, Inc. v. Pope, 485 U.S. 478, 486, 108 S.Ct. 1340, 1345, 99 L.Ed.2d 565 (1988). Nonetheless, any burden that increasing procedural safeguards entails primarily affects not the government, but the party seeking control of the other's property. See Fuentes v. Shevin, supra, 407 U.S., at 99–101, 92 S.Ct., at 2003–2005 (WHITE, J., dissenting). For this type of case, therefore, the relevant inquiry requires, as in Mathews, first, consideration of the private interest that will be affected by the prejudgment measure; second, an examination of the risk of erroneous deprivation through the procedures under attack and the probable value of additional or alternative safeguards; and third, in contrast to Mathews, principal attention to the interest of the party seeking the prejudgment remedy, with, nonetheless, due regard for any ancillary interest the government may have in providing the procedure or forgoing the added burden of providing greater protections.

Doehr, supra at 501 U. S. 11, 111 S. Ct. 2112.

49. All private homeowner interests are affected when the fundamental rules of
evidence are ignored, from Doehr:

> For a property owner like Doehr, attachment ordinarily clouds title; impairs
> the ability to sell or otherwise alienate the property; taints any credit rating;
> reduces the chance of obtaining a home equity loan or additional
> mortgage; and can even place an existing mortgage in technical default
> where there is an insecurity clause.
>
> . . .
>
> . . . [O]ur cases show that even the temporary or partial impairments to
> property rights that attachments, liens, and similar encumbrances entail
> are sufficient to merit due process protection. Without doubt, state
> procedures for creating and enforcing attachments, as with liens, "are
> subject to the strictures of due process." Peralta v. Heights Medical Center,
> Inc., 485 U.S. 80, 85, 108 S.Ct. 896, 899, 99 L.Ed.2d 75 (1988) (citing
> Mitchell, supra, 416 U.S., at 604, 94 S. Ct., 171898; Hodge v. Muscatine
> County, 196 U.S. 276, 281, 25 S.Ct. 237, 239, 49 L.Ed. 477 (1905)).

Id. at 501 U. S., at 11-12, 111 S. Ct., at 2113 (emphasis added).

The private interests of Colorado homeowners affected by foreclosures on their
real property are even more significant than the interest affected in Doehr, supra.

50. Pursuant to C.R.S. §38-38-105, since the deed would not exist but for the Orders
authorizing and approving the sale, and the Orders are the product of a
Constitutionally defective statutory presumption that replaces a requirement for
scrutiny of evidence in a hearing, the statute that endows the deed with the
status of prima facie evidence of truth of its recitals is also Constitutionally
defective, in that it statutorily creates a "domino" deprivation of property without

due process of law. The Rule 120 Order is not a final judgment, and is entered without prejudice to the homeowner filing an independent action for injunctive or other relief to challenge the validity of the foreclosure. A homeowner who files such an action will be faced with a defense that someone else now owns the subject home, and a claim under §38-38-504 that all recitals contained in the voidable trustee's deed are true.

51.  The statute directly conflicts with more than a century of Colorado precedent under which it is clear that the homeowner is the owner of the property, the foreclosing party held only a "lien" on the property (if the validity of the lien is proven with competent evidence), and ownership of the property cannot be determined until the conclusion of a homeowner's independent challenge to a foreclosure. See explication in §II.C.1., supra, of Colorado law establishing the beneficiary of the deed of trust holds only a lien on the property.

52.  In an action to quiet title under C.R.C.P. Rule 105, ". . . the pertinent date fixing the rights of the parties is the date upon which the complaint is filed . . ." Fastenau v. Engel, 270 P.2d 1019, 1022 (Colo. 1954). Even if the complaint is filed after a Public Trustee's Deed has been issued, the Public Trustee's Deed may be voided if the homeowner prevails in vacating the non-adjudicated Order Authorizing Sale on which the Public Trustee's Deed is based.

53.  Colorado is a "lien theory" state, which means that the homeowner holds title to the property, even while it is encumbered by a deed of trust, and the beneficiary of the deed of trust holds only a lien in the property, to wit:

> Mortgages, trust deeds, or other instruments intended to secure the payment of an obligation affecting title to or an interest in real property shall not be deemed a conveyance, regardless of its terms, so as to enable the owner of the obligation secured to recover possession of real property

28

without foreclosure and sale, but the same shall be deemed a lien.

C.R.S. §38-35-117.

> A deed of trust in real property given as security for a debt is a mortgage. Morris v. Cheney, 81 Colo. 393, 395, 255 P. 987, 988 (1927). A mortgage is not a conveyance of a real property interest, because Colorado subscribes to a lien theory of mortgages. § 38-35-117, 10 C.R.S. (2001). Although a deed of trust does not create an ownership interest in real property, it does constitute a legal or equitable interest in real property for the purposes of the section 39-11-128(1)(a) notice requirement.

Columbus Investments v. Lewis, 48 P.3d 1222, 1225 (Colo. 2002) (emphasis added).

54. Colorado homeowners not only face the risk of total loss of real property in a foreclosure under the statutory provisions discussed herein, by a party that is not required to produce evidence of its right to enforce a valid security interest in the property, but also face the risks of erroneous partial impairments of property rights that concerned the Court in Doehr. As soon as a foreclosing party who "claims to be" the holder of the evidence of debt files the Notice of Election and Demand with the Office of the Public Trustee to commence the foreclosure, the following occurs: (1) in accordance with C.R.S. §38-38-102, the Public Trustee promptly records the Notice of Election and demand in the office of the Clerk and Recorder where the property is located, thereby creating a cloud on title; (2) in accordance with C.R.S. §38-38-103(5)(a), the Public Trustee commences advertisement of the Notice of Election and Demand, which Notice includes the names of the foreclosing party who claims to be the holder of the evidence of debt, the names of the original grantors of the deed of trust, the legal description of the property being foreclosed and the date of the sale, thereby creating a stigma for the property and the owner, diminishing the market value of the

property, and negatively impacting the homeowner's credit rating with credit reporting agencies. Distressed properties, whether bank-owned, pre-foreclosure or short sales not in foreclosure, sell at a significant discount compared to non-distressed properties.

See http://www.realtytrac.com/content/foreclosure-market-report/us-foreclosure-and-short-sales-report-year-end-and-q4-2012-7609.

55.  Here, as in Doehr, supra, State procedures for enforcing a lien on real property, through the foreclosure procedures that are before this Court for review, are clearly "subject to the strictures of due process." Id. at 501 U. S., at 12, 111 S. Ct., at 2113.

56.  The risks of erroneous deprivation of protected property interests through Colorado's Rule 120 foreclosure process are substantial. The Doehr Court found the risks to be substantial where enforcement of the lien was contingent on the outcome of a personal injury suit, and distinguished those from circumstances involving enforcement of a lien on a debt, as in Mitchell, supra. Doehr, supra at 501 U. S., at 12-14, 111 S. Ct., at 2113-2114. The factors upheld in Mitchell, supra, and expressly relied upon in the drafting of Rule 120 amendments, therefore control in assessing the risks of erroneous deprivations of protected property interests in Colorado foreclosures.

57.  As shown in the detailed review of statutory foreclosure procedures, infra, the "certification" and "statement" provisions of Colorado's foreclosure statute bypass the fundamental documentary evidence foundations on which Mitchell, supra, and the Colorado Supreme Court, relied in upholding a Louisiana statute, in that unsworn "certifications" and "statements:" (1) are nothing more than ". . . bare conclusory claims of ownership or lien . . .," (2) do not constitute ". . . specific facts shown by verified petition or affidavit. . .," (3) diminish the ". . . requisite

showing [that] must be made to a judge . . ." to a mere unsworn certification or statement, (4) effectively place the homeowner ". . . at the unsupervised mercy of the creditor and court functionaries (I.E. public trustees who serve as mere functionaries in accepting and recording certifications and statements, without requiring authentication of any underlying evidence referenced in the certification or statement) . . .," (5) require a Rule 120 Court that strictly applies the statute to authorize and approve an unopposed foreclosure sale based on an unsworn certification or statement that "shall be deemed" pursuant to CRS §38-38-101(6)(b) to constitute a missing endorsement or assignment, thereby rendering ". . . judicial control of the process from beginning to end. . . " superfluous, and increasing ". . . the risk that the ex parte procedure will lead to a wrongful taking. . . .," (6) eliminate the requirement of ". . . [d]ocumentary proof [that] is particularly suited for questions of the existence of a vendor's lien and the issue of default. . . .," and (7) do not require the foreclosing party to ". . . prove[ ] the grounds upon which the writ was issued.'" See Mitchell, supra at 416 U.S., at 616-618, 94 S. Ct., at 1904-1905 (emphasis added). The risks of erroneous deprivation of real property under these procedures are substantial.

58. The interests of the foreclosing party are protected in Colorado foreclosure statutes, and will not be impaired if the due process defects specified below are remedied by this Court. The foreclosing party may still enforce a valid lien on real property under the expedited public trustee foreclosure process that has been in effect in Colorado for more than a century – they will simply have to produce evidence to support their claims of right, as they were required to do until legislative enactment of the problematic "certification" and "statement" provisions in 2006. Due process requires, inter alia, "documentary proof" rather than "bare conclusory claims of ownership or lien" (Mitchell, supra at 416 U.S., at 616-618,

94 S. Ct., at 1904-1905); Colorado law required the same for more than a century before the enactment of the "certification" and "statement" provisions in 2006. If foreclosing parties choose not to pursue foreclosures under Rule 120, they may pursue a judicial foreclosure under C.R.C.P. Rule 105, so their right to enforce valid liens on real property will not be impaired.

59.  Additionally, the State's interest in providing foreclosure processes will not be impaired by the Constitutional due process remedies requested herein. From Doehr:

> The State's substantive interest in protecting any rights of the plaintiff cannot be any more weighty than those rights themselves. Here the plaintiff's interest is de minimis. <u>Moreover, the State cannot seriously plead additional financial or administrative burdens involving predeprivation hearings when it already claims to provide an immediate post-deprivation hearing.</u>

Doehr, supra at 501 U. S., at 16, 111 S. Ct., at 2115 (emphasis added).

60. The State already provides for a Rule 120 "pre-deprivation" hearing under C.R.S. §38-38-105. Rule 120(d) expressly allows an independent "post-deprivation" action to challenge the Rule 120 order. Accordingly, ". . . the State cannot seriously plead additional financial or administrative burdens . . ." (id.) as a bar to restoration of due process protections to Rule 120 proceedings. The proceeding already exists (though in Constitutionally defective form), and will simply provide pre-deprivation due process protections to obviate the need for more expensive, and time consuming, post-deprivation proceedings. Furthermore, Colorado due process precedent already acknowledges the need for the relief sought herein:

> While we recognize that the Goodwins could have filed an independent action to enjoin the public sale, C.R.C.P. 120(d), the availability of a

> collateral remedy should not serve to divest the Goodwins of their
> opportunity to defend against the deprivation of their real property interest
> by showing that the parties seeking the order of sale were without
> authority to exercise the power of sale on which any order of sale
> necessarily would be predicated.

Goodwin v. District Court, 779 P.2d 837, 842 (Colo. 1989).

61.  Finally, notably absent from the history of Rule 120, and from Mitchell, Matthews,
     and Doehr, is the approval of any process analogous to a mere "certification" by a
     foreclosing party, or a "statement" by that party's attorney, to substitute for
     evidence at any point in a Rule 120 proceeding. For such provisions, we must
     turn to the current version of C.R.S. §38-38-101, the statute of concern to this
     Court, and one of the statutes of concern to the plaintiff and other homeowners in
     the state.

### THIRD CLAIM FOR RELIEF AND SUPPORTING FACTUAL ALLEGATIONS
### Damages are Unconstitutionally Limited

62. A core component of the Louisiana statutes upheld by the Mitchell, supra Court
was that:

> The debtor may immediately seek dissolution of the writ, which must be
> ordered unless the creditor proves the grounds for issuance (existence of
> the debt, lien, and delinquency), failing which the <u>court may order return of
> the property and assess damages, including attorney's fees, in the
> debtor's favor</u>.

Mitchell, supra at 416 U.S. 606, 94 S. Ct. 1899 (emphasis added).

63. The Court considered the potential for an award of damages and attorneys' fees
to the debtor to contribute – along with the requirement of competent
documentary evidence – to minimizing the risk that a writ would be wrongfully
issued. Id. at 416 U.S. 609-610, 617, 94 S. Ct. 1901, 1905. Attorneys' fees were
allowed independently or as an element of damages (id. at 416 U.S. 622, 94 S.
Ct. 1907). Damages were ". . . not restricted to pecuniary loss. They may
encompass injury to social standing or reputation as well as humiliation and
mortification." Id. at 416 U.S. 607, n. 8, 94 S. Ct. 1899, n. 8.

64. The Doehr Court, through four concurring justices, went further, in discussing the
inadequacy of a bond to remedy damages a homeowner would suffer due to a
wrongful attachment on real property.

> The necessity for at least a prompt postattachment hearing is self-evident
> because the right to be compensated at the end of the case, if the plaintiff
> loses, for all provable injuries caused by the attachment is inadequate to
> redress the harm inflicted, harm that could have been avoided had an early
> hearing been held. An individual with an immediate need or opportunity to

sell a property can neither do so, nor otherwise satisfy that need or recreate the opportunity. The same applies to a parent in need of a home equity loan for a child's education, an entrepreneur seeking to start a business on the strength of an otherwise strong credit rating, or simply a homeowner who might face the disruption of having a mortgage placed in technical default. The extent of these harms, moreover, grows with the length of the suit. . .

Many state attachment statutes require that the amount of a bond be anywhere from the equivalent to twice the amount the plaintiff seeks. See, e.g., Utah Rule of Civ.Proc. 64C(b). These amounts bear no relation to the harm the defendant might suffer even assuming that money damages can make up for the foregoing disruptions. It should be clear, however, that such an assumption is fundamentally flawed. Reliance on a bond does not sufficiently account for the harms that flow from an erroneous attachment to excuse a State from reducing that risk by means of a timely hearing.

Doehr, supra at 501 U.S. 22-23, 111 S. Ct. 2118-2119.

65. Appropriate damages, and attorneys' fees, are clearly core components of remedies for due process violations. Colorado's statutes fall dismally short of these standards, by allowing only actual economic loss, no attorneys' fees, and by expressly excluding non-economic damages.

C.R.S. §38-38-101(2) and §38-39-102(3)(a)(l).

**FOURTH CLAIM FOR RELIEF AND SUPPORTING FACTUAL ALLEGATIONS**

**Commencing a Separate Action Against Forcible Entry and Detainer in the Same District Court is Extremely Unlikely to Provide Any Protection**

66. Though a homeowner may move to enjoin the action for forcible entry and detainer (FED) pursuant to C.R.S. §13-40-104(1)(f) in an independent action while the validity of the foreclosure and ownership of the property is challenged, the FED alone – based on a foreclosure that is the product of a "certification" or "statement," and not based on evidence – constitutes an independent deprivation of property without due process of law under Doehr, supra.

67. The 11th Colorado District Court applied the Unconstitutional provisions of Colorado foreclosure statutes per Claims I and II to wrongfully deprive the plaintiff, Wirth, of his home and place of business in a Rule 120 hearing on the 2nd of December 2013 in case number 2013CV030104. The plaintiff and his guests, who are being provided with necessary shelter, are now in imminent danger of being wrongfully deprived of home and property while also being threatened with an armed and forcible entry onto the property and into the home.

68. Because of jurisdiction and venue, the plaintiff is compeled to commence any independent action against the forcible entry in the same Colorado District Court that presumed evidence in the Rule 120 hearing and has already ruled against the plaintiff under the Unconstitutional statutes cited in Claims I and II above. This is tantamount to asking the District Court to admit wrong doing and to provide conflicting protections in a separate procedure done in the same District Court. A ruling in such an action is unlikely to be in favor of protecting the plaintiff's interest in staying in his home and providing necessary shelter to his guests.

36

**FIFTH CLAIM FOR RELIEF AND SUPPORTING FACTUAL ALLEGATIONS**

**Colorado Foreclosure Statutes are Interpreted as a Permit for District Courts to**

**Fabricate Evidence and Practice Advocacy from the Bench**

69. In applying the Colorado foreclosure statutes, the 11th Colorado District Court flatly refused to acknowledge the need for indorsements on the note that was used to go forward with the sale of plaintiff's real property. The note was written to one entity, Countrywide, and had not been transferred to any other entity. Another non-indorsed entity, Nationstar, initiated the foreclosure without proving to have any properly documented and proven interest in the property. Wirth, in the course of questioning Nationstar's representative, Rachel Hook, proved that Nationstar had no indorsement transferring the note to them. The 11th Colorado District Court thereby violated the Constitutional rights of Wirth and expressly advocated on behalf of Nationstar by presumptively inventing indorsement evidence on their behalf.

**SIXTH CLAIM FOR RELIEF AND SUPPORTING FACTUAL ALLEGATIONS**

**Colorado foreclosure statutes Enable District Courts to Exercise Political Beliefs and give Violent Force to biases based on Personal Opinions**

70. In concluding the Rule 120 hearing, the Colorado 11th District Court stated that the burden of forcing lenders trading large numbers of mortgages to prove that the notes had been legitimately transferred was excessive while ignoring the horrendous burdens of wrongful deprivations of properties and forceful evictions of property owners and their invited guests from homes, shelter, and places of business. Ignoring the Constitutional requirements of due process and rules of evidence per the Fourteenth Amendment, Section 1 enables political opinions and inhuman biases to supplant ordinary judicial restraint and objectivity.

**SEVENTH CLAIM FOR RELIEF AND SUPPORTING FACTUAL ALLEGATIONS**

**All Owners of Real Property in Colorado Deserve the Protections Afforded to Them by Constitutional Restraints against Abuses of State Powers**

71. The plaintiff, Wirth, is only one of many thousands of persons and families who have been wrongfully deprived of real properties, homes, and places of business during these economically troubled times. All of these persons and their households need relief from the Court by forcing the state of Colorado to align its statutes with the Constitution, force its courts to respect the fundamental rules of evidence and due process, to provide equal protections to homeowners pursuant to the Fourteenth Amendment, Section 1. Colorado homeowners are unequally protected under the law in comparison to owners of other types of secured collateral. A foreclosure on real property in Colorado has a lower threshold of proof than the transference from one party to another of the right to cash a personal check.

## REQUEST FOR RELIEF

Wherefore, the plaintiff respectfully requests:

72. Immediately enjoin and restrain Park County from selling, or forcibly entering and detaining the plaintiff's home, or posting eviction notices, or evicting the plaintiff from his property located at 36 Iris Drive, Bailey, Colorado 80421 because plaintiff is unlikely to obtain any such relief per Claim IV above.

73. Vacate the judgement of the 11th District Court of Colorado case number 2013CV030104.

74. Enjoin and stop all foreclosure proceedings, sales, forcible entries, and evictions of property owners in the state of Colorado until the Constitutional questions called forth in this complaint are properly addressed and resolved.

75. Repeal C.R.S. §38-38-101(6)(b) for enabling wrongful deprivations of real property in violation of the fundamental rules of evidence, due process, and the equal protections required by the Fourteenth Amendment, Section 1 of the US Constitution and as described in Claims I, II, V and VI above.

76. Repeal C.R.S. §38-39-102(3)(a)(I) for enabling wrongful deprivations of real property and clouding titles thereof prior to judgements in violation of due process guarantees provided in the Fourth and Fourteenth Amendments of the US Constitution and as described in Claims I through VII above.

77. Repeal  C.R.S.  §38-38-504 for enabling a presumption of evidence against home owners defending their real property interests regardless of the existence of actual evidence as described in Claim II above.

78. Repeal C.R.S.  §13-40-104(1)(f) for enabling the forceful and potentially violent evictions of real property owners prior to final judgements as a matter of law as described in Claim IV.

79. Repeal C.R.S. §38-38-101(2) and §38-39-102(3)(a)(I) for Unconstitutionally limiting damages to real property owners whose property has been shown to be wrongfully taken or clouded thus prohibiting wronged owners of real property from enjoying equalprotection under the law as do owners of other types of property in violation of the Equal Protection Clause of the Fourteenth Amendment, Section 1 as described in Claim IV above.

80. Declare that the state of Colorado shall establish procedures to: 1. enable real properties wrongfully taken under its foreclosure statutes since 2006 to be returned to their owners where those properties have been left vacant, or 2. compensate victims wrongfully deprived of property for loss of real property values, and consequent economic damages including those for duress, pain, injuries, and illnesses caused by stress, displacement, exposure, and other suffering.

Respectfully re-submitted this 23rd day of December 2013.

By: Martin Thomas Wirth

Plaintiff pro se

36 Iris Drive

Bailey, Colorado 80421

303-816-1054

martin.wirth@specialtywrench.com

41