**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 1, 2012**

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

| | |
|---|---|
| In re: MARK STANLEY MILLER, also known as A Moment to Remember Photo & Video, also known as Illusion Studioz; JAMILEH MILLER, | |
| Debtors. | No. 11-1232 |
| MARK STANLEY MILLER; JAMILEH MILLER, | |
| Appellants, | |
| v. | |
| DEUTSCHE BANK NATIONAL TRUST COMPANY, | |
| Appellee. | |

---

### APPEAL FROM THE UNITED STATES
### BANKRUPTCY APPELLATE PANEL FOR THE TENTH CIRCUIT
### (BAP No. 10-073-CO)

---

Submitted on the briefs:[*]

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Mark S. Miller and Jamileh Miller, Pro se.

Susan J. Hendrick, Aronowitz & Mecklenburg, LLP, Denver, Colorado, for the Appellee.

Before **KELLY**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and **MATHESON**, Circuit Judge.

**PORFILIO**, Senior Circuit Judge.

After Deutsche Bank National Trust Company (Deutsche Bank) brought a foreclosure action against the home owned by appellants Mark Stanley Miller and Jamileh Miller and obtained an Order Authorizing Sale (OAS) from a Colorado court, the Millers filed a Chapter 13 bankruptcy petition. Upon the filing of their petition, an automatic stay entered, halting the foreclosure proceedings. *See* 11 U.S.C. § 362(a). Deutsche Bank obtained an order from the bankruptcy court relieving it from the stay to permit the foreclosure to continue. *See id.* § 362(d). The Tenth Circuit Bankruptcy Appellate Panel (BAP) affirmed the bankruptcy court's order granting Deutsche Bank relief from the automatic stay. The Millers now appeal from the BAP's order affirming relief from stay.

The issue before us is whether Deutsche Bank established that it was a "party in interest" entitled to seek and obtain relief from the stay. *See id.* Because we conclude that Deutsche Bank did not meet its burden of proof on this issue, we reverse the BAP's order and remand for further proceedings.

## BACKGROUND

On April 20, 2006, the Millers executed a promissory note (Note) in the amount of $216,236 in favor of IndyMac Bank, F.S.B. (IndyMac). The Note was secured by a Deed of Trust assigning a security interest in the Millers' Colorado home to the public trustee of Arapahoe County and creating a power of sale in the public trustee. The Deed of Trust identified Mortgage Electronic Registration Systems, Inc. (MERS), acting as a nominee for IndyMac, as its beneficiary. It further provided that "[t]he Note . . . (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." Aplt. App. at 31.

**1.  State Court Proceedings**

The Millers failed to make the required payments on the Note. In February 2010, Deutsche Bank, claiming to be the current holder of the Note, filed a foreclosure action in the Arapahoe County, Colorado District Court and sought an OAS under Colorado Rule of Civil Procedure 120.[1]

On May 4, 2010, the Millers filed their "Motion for Hearing on Jurisdiction" in the Rule 120 proceeding. The Millers argued that Deutsche Bank lacked standing to seek an OAS. *See* Aplee. Supp. App. at 56 (arguing that

---

[1]  Deutsche Bank applied for the OAS in the name of "Deutsche Bank National Trust Company, as Trustee of the IndyMac INDX Mortgage Loan Trust 2006-AR13, Mortgage Pass-Through Certificates, Series 2006-AR13 Under the Pooling and Servicing Agreement dated May 1, 2006." Aplee. Supp. App. at 49.

"standing to bring [a Rule 120] proceeding stems from an interest recorded in the public record which the Petitioner here does not have and has made no effort to present such evidence to the court").

On May 6, 2010, the state district court entered an order denying the Millers' motion. In this order, the court determined that Deutsche Bank had made a sufficient showing that it was an "interested person" entitled to an OAS. The text of the order reads as follows:

> The issue before the Court is whether the party seeking the ord[e]r auth[or]izing sale is an "interested person" as that term is used in C.R.C.P. 120. *A copy of the note* is attached to the motion requesting an order auth[oriz]ing sale. The note on page 6 below the respo[n]d[e]nts' signatures is endorsed in blank by Lender. No evidence has been presented to suggest that the endorsement is not genuine or that the pet[i]tioner is not in possession of the original note. The pet[i]tioner is entitled to an order auth[oriz]ing sale.

*Id.* at 51 (emphasis added).

The state court thus reached its conclusions based on its review of a copy of the Note, which had been indorsed in blank. There is no evidence that the state court was presented with the original Note before it authorized the sale. A few days later, the Millers again moved for a hearing on the jurisdictional issue. The state court summarily denied their motion. It later entered an OAS and an additional summary order finding that Deutsche Bank had established jurisdiction in its pleadings and that the Millers had "not specified a legal reason why jurisdiction has not been established." *Id.* at 62.

### 2.  Proceedings in Bankruptcy Court

The Millers filed their Chapter 13 bankruptcy petition on June 22, 2010. On October 7, 2010, Deutsche Bank filed its motion for relief from stay.  In its motion, Deutsche Bank recited that it was the current owner of the Note and Deed of Trust.  A copy of the Note, indorsed in blank, was attached to the motion.[2]

The Millers responded in two ways.  First, they filed an adversary proceeding in which they accused Deutsche Bank of filing a fraudulent foreclosure and fraudulently seeking relief from stay.  (The adversary proceeding is not a subject of this appeal.)  Second, they lodged an objection to the motion for relief from stay.  In their objection, the Millers asserted that Deutsche Bank was not the proper party in interest and lacked standing to bring the motion. Specifically, they complained that Deutsche Bank had not produced the original Note or proved that it was in possession of the Note.

On November 3, 2010, the bankruptcy court held a hearing on the motion for relief from stay.  During the hearing, counsel for Deutsche Bank proffered a copy of the Note indorsed in blank by IndyMac, along with a copy of the Deed of Trust.  The bankruptcy judge asked counsel "where is the original of the note right now?"  Aplt. App., Vol. II at 95.  Counsel responded, "The original of the

---

[2] The copy of Deutsche Bank's motion in the record on appeal does not include an attached copy of the Note.

-5-

note has been requested, and it should be on the way to our firm here shortly. I can present that at any evidentiary hearing." *Id.*

Apparently, no further evidentiary hearing was held on the issue of Deutsche Bank's possession of the Note. Instead, the bankruptcy court made findings from the bench at the close of the hearing on the motion for relief from stay. The court observed that it had a copy of the Note and that "I have representation of counsel that the original is on its way." *Id.* at 107. After noting the state court's findings that Deutsche Bank had standing to proceed under Colorado Rule of Civil Procedure 120, the bankruptcy court found that "sufficient grounds exist for the lifting of the automatic stay" and that relief from stay was appropriate. *Id.* at 110.

### 3. The BAP Appeal

The Millers appealed the bankruptcy court's order granting relief from stay to the BAP. The BAP began its decision by noting that "[t]he details surrounding the assignment to Deutsche Bank are not part of the record on appeal." Aplee. Supp. App. at 6 n.8. In particular, the record submitted to the BAP did not even contain a copy of the Note, much less the original.[3]

---

[3]   To the extent the Millers assert that the absence of a copy of the indorsed Note from the BAP record prevents us from taking notice of the indorsement in this appeal, we disagree. The bankruptcy court had in its possession a copy of the Note, indorsed in blank, and made a finding based on the copy that the Note had been so indorsed. It was the Millers' duty as the appealing parties to designate
(continued...)

-6-

In its decision, the BAP spent little time discussing the adequacy of proof that Deutsche Bank was in possession of the original Note, and the legal consequences thereof. Instead, the BAP relied on the *Rooker-Feldman* doctrine. *See Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Though noting that the bankruptcy court had not expressly mentioned this doctrine, it concluded that the court had relied on the state court's decision on the standing issue. The BAP further concluded that in light of this doctrine, which generally prohibits federal courts from entertaining suits by parties who have lost in state court and who seek review of state court decisions in federal court, "the bankruptcy court properly declined to revisit the state court's decision that Deutsche Bank was an 'interested person' entitled to a Rule 120 order of sale." Aplee. Supp. App. at 16. Armed with the state-court decision finding Deutsche Bank had standing to proceed with the foreclosure, the BAP reached a further conclusion that Deutsche Bank had standing to seek relief from stay.

---

[3](...continued)
the record for the BAP appeal. *See* Fed. R. Bankr. P. 8006. Having failed to provide a complete record on this issue, they could not challenge the bankruptcy court's findings concerning the copy of the Note containing the indorsement. *See Lopez v. Long (In re Long)*, 255 B.R. 241, 245 (10th Cir. B.A.P. 2000) ("[W]hen the record on appeal fails to include copies of the documents necessary to decide an issue on appeal, [the BAP] is unable to rule on that issue and may summarily affirm the bankruptcy court.").

## ANALYSIS

### 1. Standard of Review

"Although this appeal is from a decision by the BAP, we review only the Bankruptcy Court's decision." *C.O.P. Coal Dev. Co. v. C.W. Mining Co. (In re C.W. Mining Co.)*, 641 F.3d 1235, 1240 (10th Cir. 2011) (internal quotation marks omitted). "We review matters of law de novo, and we review factual findings made by the bankruptcy court for clear error." *Id.* (citation omitted). "[W]e treat the BAP as a subordinate appellate tribunal whose rulings are not entitled to any deference (although they certainly may be persuasive)." *Parks v. Dittmar (In re Dittmar)*, 618 F.3d 1199, 1204 (10th Cir. 2010).

The bankruptcy court's decision whether to grant relief from stay is reviewed for an abuse of discretion. *Chizzali v. Gindi (In re Gindi)*, 642 F.3d 865, 872 (10th Cir. 2011), *overruled on other grounds by TW Telecom Holdings, Inc. v. Carolina Internet Ltd.*, 661 F.3d 495, 497 (10th Cir. 2011). We review the application of the *Rooker-Feldman* doctrine de novo. *See Mann v. Boatright*, 477 F.3d 1140, 1145 (10th Cir. 2007) (holding that the dismissal of a complaint pursuant to the *Rooker–Feldman* doctrine is reviewed de novo).

### 2. Relief from Stay Standard

The Bankruptcy Code provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay" if the party in interest has made the appropriate showing to obtain such relief. 11 U.S.C.

§ 362(d).[4]  The Bankruptcy Code does not define the term "party in interest" for purposes of this subsection.  Courts have concluded, however, that in order to invoke the court's power to award relief under § 362(d), a party must be either a creditor or a debtor of the bankruptcy estate.  *See, e.g., Roslyn Savings Bank v. Comcoach Corp. (In re Comcoach Corp.)*, 698 F.2d 571, 573 (2d Cir. 1983).  The question, then, is whether Deutsche Bank has established its status as a creditor of the Millers' bankruptcy estate.

### 3. Applicability of *Rooker-Feldman* and Other Preclusion Doctrines

Deutsche Bank argues that in reaching their conclusions on the standing issue, the BAP and the bankruptcy court properly relied on the *Rooker-Feldman* doctrine.  But we conclude this reliance was unjustified for at least two reasons.  First, given the posture of the parties in this bankruptcy court proceeding, the issue should have been analyzed as one of collateral estoppel (issue preclusion) rather than application of the *Rooker-Feldman* doctrine.  Second, neither

---

[4]  The Code provides that with the exception of the debtor's equity in the property, the party opposing relief from stay has the burden of proof on all issues. 11 U.S.C. § 362(g)(2).  Whether a party has standing to seek relief as a party in interest, however, is an issue distinct from whether that party's underlying claim is valid.  We conclude that Deutsche Bank bears the burden of proving its statutory standing as a "party in interest."  *See Colorado Farm Bureau Federation v. U.S. Forest Service*, 220 F.3d 1171, 1174 (10th Cir. 2000) (affirming dismissal of complaint where plaintiffs failed to carry their burden of establishing statutory standing under Administrative Procedures Act).  *Cf. Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992) (stating general rule that party invoking federal jurisdiction bears burden of establishing Article III standing).

*Rooker-Feldman* nor issue preclusion applies because the state court finding of "standing" was not a final judgment to which these doctrines could attach.

The *Rooker-Feldman* doctrine precludes a losing party in state court who complains of injury caused by the state-court judgment from bringing a case seeking review and rejection of that judgment in federal court. *See, e.g.*, *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005). While the Millers did "lose" in state court on their standing argument, it is Deutsche Bank that now seeks affirmative relief in a federal court, in the form of relief from the automatic stay.

It is undeniable that the Millers have not accepted the state court's judgment on the standing issue. They do raise as a defense a similar standing issue to that on which they lost in state court.[5] But attempts merely to relitigate an issue determined in a state case are properly analyzed under issue or claim preclusion principles rather than *Rooker-Feldman*. This is because, in addition to the inherently limited scope of *Rooker-Feldman*, preclusion in federal court on the basis of a state-court judgment is determined by state law, not a federally-specified doctrine. "[I]ncorporation of preclusion principles into

---

[5] We also note that the standing required for a creditor to proceed under Rule 120(a) ("any interested person") is not precisely the same as the statutory standing required to seek relief from stay under § 362(d) (a "party in interest"). In light of our other reasons for rejecting the preclusive effect of the state court order, we need not determine whether the slight difference in wording would have any effect on the preclusion analysis.

*Rooker-Feldman* risks turning that limited doctrine into a uniform *federal* rule governing the preclusive effect of state-court judgments, contrary to the Full Faith and Credit Act." *Lance v. Dennis*, 546 U.S. 459, 466 (2006) (citing 28 U.S.C. § 1738).

We must therefore consider the preclusive effect under Colorado law of the standing determination the Colorado state court reached in the Rule 120 proceeding. We note that Rule 120 itself provides that "[t]he granting of [a Rule 120 motion] shall be *without prejudice* to the right of any person aggrieved to seek *injunctive or other relief* in any court of competent jurisdiction[.]" Colo. R. Civ. P. 120(d) (emphasis added). By filing their bankruptcy petition, the Millers sought and obtained injunctive relief in a court of competent jurisdiction, in the form of the automatic stay.

We further note indications that the Colorado courts would limit the effect of determinations in Rule 120 proceedings. The Colorado Court of Appeals has stated that "proceedings pursuant to C.R.C.P. 120 are not adversarial in nature, are not final, and generally no appeal may be taken to review the resulting orders." *United Guar. Residential Ins. Co. v. Vanderlaan*, 819 P.2d 1103, 1105

-11-

(Colo. Ct. App. 1991).[6]  Accordingly, no final judgment is entered in Rule 120 proceedings and the rulings of the court in such proceedings do not have preclusive effect.  *Id.*

We conclude that neither the *Rooker-Feldman* doctrine nor issue preclusion applies to prevent a federal court from determining whether Deutsche Bank is a "party in interest" entitled to seek relief from stay.  Because the BAP incorrectly relied on *Rooker-Feldman* and because neither the bankruptcy court nor the BAP conducted a proper statutory standing analysis under § 362(d), we could simply stop our analysis here and remand for a further consideration of the standing issue.  The parties, however, have presented arguments on the merits concerning standing, and the sufficiency of Deutsche Bank's showing concerning standing in this case is a legal issue that can be resolved on appeal.  We will therefore now proceed to discuss why Deutsche Bank has failed to demonstrate its standing as a "party in interest."

---

[6]   Cases from the Colorado federal district court have reached differing results concerning whether orders in Rule 120 proceedings have preclusive effect or sufficient finality under the *Rooker-Feldman* doctrine to prevent relitigation in subsequent federal proceedings.  *See Goldenhersh v. Aurora Loan Servs., LLC*, No. 10-CV-01936-MSK, 2010 WL 3245166, at *2 (D. Colo. Aug. 16, 2010) (discussing split in cases).  We find those cases denying preclusive effect or *Rooker-Feldman* treatment more persuasive than those granting preclusive effect or applying *Rooker-Feldman*.

### 4. Deutsche Bank's Status as "Party in Interest"

We return to the key question: is Deutsche Bank a "creditor" of the Millers with standing to seek relief from stay? To answer this question, we turn to the Bankruptcy Code. According to the Bankruptcy Code, a "creditor" includes an "entity that has a claim against the debtor." 11 U.S.C. § 101(10)(a). A "claim" is a "right to payment." *Id.* § 101(5)(A).

Does Deutsche Bank have a "right to payment" from the Millers? In examining this question, we begin with the principle that "[w]ithin the context of a bankruptcy proceeding, state law governs the determination of property rights." *In re Mims*, 438 B.R. 52, 56 (Bankr. S.D.N.Y. 2010). We must therefore turn to Colorado law, in particular that state's version of the Uniform Commercial Code (U.C.C. or Code).

We ask first how Colorado law would classify the Note signed by the Millers. Under Colorado law, a promise or order such as the Note is payable "to order" "if it is payable (i) to the order of an identified person or (ii) to an identified person or order." Colo. Rev. Stat. § 4-3-109(b). The Note at issue here is payable "to the order of Lender. Lender is IndyMac Bank, F.S.B., a federally chartered savings bank[.]" Aplt. App., Vol. I at 14. Thus, the Note is payable to the "order" of IndyMac Bank under § 4-3-109(b).

But "[a]n instrument payable to an identified person [such as IndyMac Bank] may become payable to bearer if it is indorsed in blank pursuant to section

4-3-205(b)." Colo. Rev. Stat. § 4-3-109(c).[7]  Section 4-3-205(b) provides that "[i]f an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a 'blank indorsement.'  When indorsed in blank, an instrument becomes payable to bearer and may be *negotiated by transfer of possession* alone until specifically indorsed." (emphasis added).

Deutsche Bank presented evidence that IndyMac had indorsed the Note in blank.  Is proof of this indorsement sufficient under the U.C.C. requirements to establish Deutsche Bank as the successor holder of the note?  As we shall see, it is not, because Deutsche Bank must also prove it has possession of the Note.

The U.C.C. identifies the requirements for "negotiation" of a note, that is, for "transfer of possession . . . to a person who thereby becomes its holder." *Id.* § 4-3-201(a).  This statute provides that "if an instrument is payable to an identified person, negotiation requires *transfer of possession* of the instrument and its indorsement by the holder." *Id.* § 4-3-201(b) (emphasis added).  The Official Commentary to section 4-3-201 explains that negotiation "*always requires a change in possession of the instrument* because nobody can be a holder without possessing the instrument, either directly or through an agent."

---

[7]   For U.C.C. purposes, "'Person' means an individual, corporation, business trust, estate, trust, partnership, limited liability company, association, joint venture, government, government subdivision, agency, or instrumentality, or any other legal or commercial entity." Colo. Rev. Stat. § 4-1-201(26).

(emphasis added). *See also* Colo. Rev. Stat. § 4-1-201(b)(20)(A) (defining "holder" of negotiable instrument as "person in possession" of it).

"Possession is an element designed to prevent two or more claimants from qualifying as holders who could take free of the other party's claim of ownership." *Georg v. Metro Fixtures Contractors, Inc.*, 178 P.3d 1209, 1213 (Colo. 2008) (citation omitted).[8] "With rare exceptions, those claiming to be holders have physical ownership of the instrument in question." *Id.* (citation omitted).[9] In the case of bearer paper such as the Note, physical possession is essential because it constitutes proof of ownership and a consequent right to payment.[10]

---

[8] We note that the 9th Circuit BAP has stated that because relief from stay is a limited proceeding that does not ultimately determine the lender's and debtor's rights, "the concern of real party in interest jurisprudence for avoiding double payment is quite reduced" in such proceedings. *Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 914 (9th Cir. B.A.P. 2011). We also note, however, that after making this statement in *Veal*, the 9th Circuit BAP reversed a bankruptcy court determination granting relief from stay because the purported holder of the note and mortgage could not produce the original note or otherwise provide proof under state law that it was the holder of the note or a person entitled to enforce it. *See id.* at 917-18.

[9] Colorado law recognizes a theory of "constructive possession" where the instrument is held for its owner in the hands of a third party. *See Georg*, 178 P.3d at 1213-14. There is no evidence of constructive possession or constructive delivery in this case.

[10] A lost instrument may be enforced in certain circumstances by a person who was formerly in possession of it. *See* Colo. Rev. Stat. § 4-3-309. Here, even assuming such a loss, Deutsche Bank has offered no proof that it was ever in possession of the Note "and entitled to enforce it when loss of possession

(continued...)

While Deutsche Bank has offered proof that IndyMac assigned the Note in blank, it elicited no proof that Deutsche Bank in fact obtained physical possession of the original Note from IndyMac, either voluntarily or otherwise.[11]  Under the U.C.C. requirements, Deutsche Bank has therefore failed to show that it is the current holder of the Note.

Colorado law does not limit enforcement of an obligation to a holder who received the instrument through negotiation.  A note may also be enforced by a *transferee*.  *See* Colo. Rev. Stat. § 4-3-203.  "Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument."  *Id.* § 4-3-203(b).  But transfer requires delivery:  "An instrument is transferred when it is *delivered* by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument."  *Id.* § 4-3-203(a) (emphasis added).  "Delivery" with respect to an instrument "means voluntary transfer of possession" of the instrument.  *Id.* § 4-1-201(14).  Because Deutsche Bank has failed to prove

---

[10](...continued)
occurred."  *Id.* § 4-3-309(a)(i).

[11]   "The former [U.C.C.] requirement that delivery is required for a negotiation has been changed to a requirement that there be a *change in possession* of the instrument.  Change of possession can be either voluntary or involuntary. . . . Clearly, therefore, a thief or finder [of a bearer instrument] is a holder[.]"  2 Frederick M. Hart, Erik F. Gerding & William F. Willier, *Negotiable Instruments Under the Uniform Commercial Code* § 3.05[1] (2011) (emphasis added) (footnotes omitted).

transfer of possession of the original Note it has failed to establish its status as a transferee.

Deutsche Bank also argues that it has standing because under Colorado law it can initiate a public trustee foreclosure without producing the original Note. It cites Colo. Rev. Stat. § 38-38-101(1), which provides that the "holder of an evidence of debt" may initiate a foreclosure. An "evidence of debt" includes a promissory note such as the Note at issue here. Colo. Rev. Stat. § 38-38-100.3(8). Under certain circumstances, the "holder of an evidence of debt" can file a public trustee foreclosure without supplying the original note. *See id.* § 38-38-101(b)(I)-(III).

But this argument depends, first, on Deutsche Bank's ability to show that it is a "holder of an evidence of debt." Article 38 defines a "holder of an evidence of debt" as a person "*in actual possession of*" or "*entitled to enforce* an evidence of debt." Colo. Rev. Stat. § 38-38-100.3(10) (emphasis added). Section 38-38-100.3(10) lists a number of presumptive holders of a debt presumed to be the "holder of an evidence of debt." Each of these requires *possession* of the evidence of debt, which Deutsche Bank has thus far failed to demonstrate. *See id.* § 38-38-100.3(10)(a)-(d).

Deutsche Bank appears to argue that notwithstanding its failure to prove it has actual possession of the Note, it qualifies as a "person entitled to enforce an evidence of debt" under § 38-38-100.3(10) and thus is a "holder of an evidence of

-17-

debt" because (1) it holds a copy of the Note indorsed in blank and (2) it can initiate a foreclosure without presenting the original Note to the public trustee. Deutsche Bank contends that it is a "qualified holder," *see id.* § 38-38-100.3(21), that would be permitted under Colorado law to foreclose without presenting the original note, *see id.* § 38-38-101(B)(II). But foreclosure under this provision requires either the bank or its attorney to execute a statement "citing the paragraph of section 38-38-100.3(20) under which the holder claims to be a qualified holder and certifying or stating that the copy of the evidence of debt is true and correct" and that the bank agrees to "indemnify and defend any person liable for repayment of any portion of the original evidence of debt in the event that the original evidence of debt is presented for payment to the extent of any amount, other than the amount of a deficiency remaining under the evidence of debt after deducting the amount bid at sale, and any person who sustains a loss due to any title defect that results from reliance upon a sale at which the original evidence of debt was not presented." *Id.* §§ 38-38-101(b)(II), 38-38-101(2)(a). There is no evidence that Deutsche Bank or its attorneys have executed such a certification or intend to do so. We therefore reject Deutsche Bank's claim to standing founded on these statutes.

### 5. Conclusion

For the foregoing reasons, the evidence is insufficient as it currently stands to establish that Deutsche Bank is a "party in interest" entitled to seek relief from

-18-

stay. The bankruptcy court therefore abused its discretion by granting Deutsche Bank relief from stay.

The Millers raise a number of other objections to the proceedings and orders in the bankruptcy court and the BAP but we need not reach any of them in light of the remand we now order. The judgment of the BAP is REVERSED and the case is REMANDED to the BAP with instructions to remand to the bankruptcy court for further proceedings in accordance with this opinion. The Millers' motion for leave to file a supplemental appendix is DENIED.