DATE FILED: July 26, 2013 6:01 PM
FILING ID: F5A1F87CA1BF8
CASE NUMBER: 2013CV30104

| | |
|---|---|
| DISTRICT COURT, PARK COUNTY, COLORADO<br>Court Address:  300 4th St., P.O. Box 190<br>            Fairplay, CO  80440 | |
| IN THE MATTER OF THE MOTION OF NATIONSTAR MORTGAGE LLC FOR AN ORDER AUTHORIZING THE PUBLIC TRUSTEE TO SELL CERTAIN REAL ESTATE UNDER A POWER OF SALE CONTAINED WITHIN A DEED OF TRUST | ▲COURT USE ONLY▲ |
| Attorneys for Petitioner:<br>**The Castle Law Group, LLC**<br>Address:            999 18th Street, Suite 2201<br>                    Denver, CO  80202<br>Phone Number:    (303) 865-1400<br>Atty. Reg. #:    #23449 (Deanna L. Westfall) dwestfall@cmsatty.com<br>            #34145 (Cynthia Lowery-Graber) cgraber@cmsatty.com<br>            #34531 (Alison L. Berry) aberry@cmsatty.com<br>            #34935 (Britney Beall-Eder) bbeall-eder@cmsatty.com<br>            #39976 (Christopher T. Groen) cgroen@cmsatty.com<br>            #40351 (Kimberly L. Martinez) kmartinez@cmsatty.com<br>            #42309 (Reagan Larkin) rlarkin@cmsatty.com | Case Number:<br><br><br>Division: |
| VERIFIED MOTION FOR ORDER AUTHORIZING SALE PURSUANT TO RULE 120, COLORADO RULES OF CIVIL PROCEDURE. | |

WHEREAS, Martin T. Wirth, Grantor(s) by Deed of Trust dated January 18, 2002, recorded January 29, 2002 at Reception No. 560414  in the records of the County of Park, Colorado, to secure to Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Home Loans, Inc. the payment of a Promissory Note of even date therewith for the principal sum of $138,000.00 as provided in said Deed of Trust, conveyed to the Park County Public Trustee, on the terms set forth in said Note and Deed of Trust, the following described real property ("Property") situate in said County to-wit:

**SEE EXHIBIT A ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE**

**WHICH HAS THE ADDRESS OF 36 Iris Drive  Bailey, CO  80421-2316**

WHEREAS, the **venue** in this Court is proper because this matter involves either (a) a consumer obligation secured by a deed of trust encumbering real property all, or a substantial part, of which is located in the County in which this action is occurring, or (b) a non-consumer



obligation secured by a deed of trust encumbering real property, which may be heard in any county under Rule 120(f) C.R.C.P.

WHEREAS, Nationstar Mortgage LLC, the Petitioner, represents that it is the holder of the Note and the beneficiary of the Deed of Trust; that said Deed of Trust grants a power of sale to the Public Trustee of the County in which the Property is located; that said indebtedness secured thereby is in **default** in that the mortgagor has failed to pay the monthly installments of principal, interest and, if applicable, taxes and insurance, together with applicable late charges as provided in the subject Note and is in **default** under the terms of the subject Deed of Trust; and that the Petitioner desires to foreclose the same and has filed with the appropriate Public Trustee the Notice of Election and Demand for Sale pursuant to the statutes in such case made and provided.

WHEREAS, an Order of the Court is required authorizing a sale under the power of sale contained in said Deed of Trust.

WHEREAS, the Petitioner, through its undersigned counsel, caused a search to be performed using the Defense Manpower Data Center website, a central repository of the United States Department of Defense Resource Information, to determine the military status of the current owner of the Property and those persons obligated to pay the indebtedness evidenced by the Note. Based on the foregoing, upon information and belief, the current owner of the Property and those persons obligated to pay the indebtedness are not on active military duty and/or are not entitled to the protections afforded under the Servicemembers Civil Relief Act, 50 U.S.C. §501, *et seq.*

WHEREAS, the names of all persons who were the Grantor or Grantors in such Deed of Trust, and those persons who appear to have acquired a record interest in the Property subsequent to the recording of such Deed of Trust and prior to the recording of the Notice of Election and Demand thereunder, whether by deed, mortgage, judgment or any other instrument of record, and the address of each such person as such address appears in the recorded instruments of writing, are listed on EXHIBIT 1 hereof.

WHEREAS, the names and last known address(es) (as shown by the records of the Petitioner) of the Grantor or Grantors of said Deed of Trust, of the current record owner or owners, and of any person or persons known or believed by Petitioner to be personally liable on the indebtedness secured by said Deed of Trust, are also listed on EXHIBIT 1 hereof.

WHEREFORE, Petitioner prays that the Clerk of the Court fix a time and place for the hearing of this Motion, and that the Court examine this Motion and response(s) thereto, if any, and summarily grant the Motion by entering an Order authorizing a Public Trustee's Sale under the power of sale contained in said Deed of Trust.

The Castle Law Group, LLC
Original signature on file                **Alison L. Berry**
                                           **#34531**
/S/ _____

Attorney for Nationstar Mortgage LLC

Address of Petitioner:
350 Highland Dr.
Lewisville, TX  75067

STATE OF COLORADO    )
   CITY AND         ) ss.
COUNTY OF DENVER    )

Alison L. Berry
#34531

**VERIFICATION**

I, _____, am an attorney at the law firm of The Castle Law Group, LLC, counsel for the Petitioner.  I have reviewed the pertinent business records of the Petitioner and/or its servicing agent as they relate to the servicing of the mortgage loan referenced herein.  These business records are made and kept in the ordinary course of the Petitioner's and/or its servicing agent's business contemporaneously with the activity or transactions described therein. The business records are made from information provided by individuals with knowledge of the activity and transactions described in such records. It is Petitioner's and/or its servicing agent's regular business practices to make and keep these records and rely upon them in conducting their daily business.  I have read the foregoing Verified Motion for Order Authorizing Sale and the facts contained therein are true and correct based upon my review of the pertinent business records.

Original signature on file

/S/ _____    Alison L. Berry
                                  #34531          JUL 1 9 2013

Subscribed and sworn to before me _____.

My commission expires

HEATHER DUARTE
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20124061258
MY COMMISSION EXPIRES 09/14/2016

Original signature on file

/S/ _____
Notary Public
**STATE OF COLORADO**
999 18th Street, Suite 2201
Denver, CO  80202

(SEAL)
Wirth / 13-03477

# EXHIBIT A

LOT 53,
FRIENDSHIP RANCH UNIT 2,

AND

A PART OF THE SOUTH 1/2 OF SECTION 8, TOWNSHIP 7 SOUTH, RANGE 72 WEST OF THE 6TH P.M., DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY BOUNDARY OF FRIENDSHIP RANCH UNIT 2 THENCE THE SOUTH 1/4 CORNER OF SAID SECTION 8 BEARS SOUTH 6 DEGREES 25 MINUTES EAST, 516 FEET;
THENCE SOUTH 53 DEGREES 17 MINUTES EAST, ALONG SAID BOUNDARY, 476 FEET TO THE MOST SOUTHERLY CORNER OF SAID LOT 54 IN SAID SUBDIVISION;
THENCE SOUTH 76 DEGREES 31 MINUTES WEST, 532.44 FEET;
THENCE NORTH 60 DEGREES 25 MINUTES WEST, 368.91 FEET TO A POINT ON THE SOUTH BOUNDARY OF SAID SUBDIVISION;
THENCE NORTH 89 DEGREES 29 MINUTES 30 SECONDS EAST, ALONG SAID BOUNDARY, 143.16 FEET TO THE POINT OF BEGINNING,

EXCEPT THE WEST OR WESTERLY 60 FEET THEREOF CONVEYED BY DEED RECORDED IN BOOK 217 AT PAGE 370.

COUNTY OF PARK,
STATE OF COLORADO

EXHIBIT 1

Wirth / 13-03477

Michelle Miller
Public Trustee of Park County
501 Main Street
Fairplay, CO  80440

The Castle Law Group, LLC
999 18th Street, Suite 2201
Denver, CO  80202

Owner
36 Iris Drive
Bailey, CO  80421-2316

Occupant
36 Iris Drive
Bailey, CO  80421-2316

Lessee
36 Iris Drive
Bailey, CO  80421-2316

Martin T. Wirth
36 Iris Drive
Bailey, CO  80421-2316

Countrywide Home Loans, Inc.
MSN SV-79 / Document Control Dept
PO Box 10266
Van Nuys, CA  91410-0266

Countrywide Home Loans, Inc.
4500 Park Granada
Calabasas, CA  91302-1613

Bank of America, N.A.
c/o CoreLogic - Mail Stop: ASGN
1 CoreLogic Drive
Westlake, TX  76262-9823

Bank of America, N.A.
PO Box 10232
Simi Valley, CA  93065-6298

Bank of America, N.A.
400 Countrywide Way
SV 35
Simi Valley, CA  93065-6298

Bank of America, N.A.
Attn: CA6-919-02-41
400 National Way
Simi Valley, CA  93065

Asset Acceptance LLC
c/o Law Offices of Irvin Borenstien
3025 South Parker Road / Tower II, Suite #711
Aurora, CO  80014

Law Offices of Irvin Borenstein
The Market Place
3025 South Parker Road / Tower II, Suite #711
Aurora, CO  80014

The Bank of New York Mellon FKA The Bank of New York, as Trustee for the Benefit of the
Certificateholders of the CWHEQ Inc., CWHEQ Revolving Homeequity Loan Trust, Series
2007-G
c/o BAC, M/C: CA6-914-01-43
1800 Tapo Canyon Road
Simi Valley, CA  93063

| DISTRICT COURT, PARK COUNTY, COLORADO<br>Court Address: 300 4th St., P.O. Box 190<br>Fairplay, CO 80440 | DATE FILED: July 26, 2013 6:01 PM<br>FILING ID: F5A1F87CA1BF8<br>CASE NUMBER: 2013CV30104 |
|---|---|
| IN THE MATTER OF THE MOTION OF NATIONSTAR MORTGAGE LLC FOR AN ORDER AUTHORIZING THE PUBLIC TRUSTEE TO SELL CERTAIN REAL ESTATE UNDER A POWER OF SALE CONTAINED WITHIN A DEED OF TRUST | ▲COURT USE ONLY▲ |
| Attorneys for Petitioner:<br>**The Castle Law Group, LLC**<br>Address:  999 18th Street, Suite 2201<br>Denver, CO 80202<br>Phone Number:  (303) 865-1400<br>Atty. Reg. #: #23449 (Deanna L. Westfall) dwestfall@cmsatty.com<br>#34145 (Cynthia Lowery-Graber) cgraber@cmsatty.com<br>#34531 (Alison L. Berry) aberry@cmsatty.com<br>#34935 (Britney Beall-Eder) bbeall-eder@cmsatty.com<br>#39976 (Christopher T. Groen) cgroen@cmsatty.com<br>#40351 (Kimberly L. Martinez) kmartinez@cmsatty.com<br>#42309 (Reagan Larkin) rlarkin@cmsatty.com | Case Number:<br><br><br>Division: |
| CERTIFICATE OF POSTING AND MAILING OF NOTICE | |

    The undersigned certifies that a copy of the Notice has been filed with the Clerk of this Court and a copy of said Notice has been provided to the Clerk of this Court for the purpose of posting said Notice in a place designated by the Clerk of this Court not less than 14 days prior to the date set for hearing.

    The undersigned further certifies that on this date a copy of the Notice issued by Petitioner in this proceeding was mailed via U.S. Mail, postage pre-paid, to each person and entity at their respective addresses.

    DATED:  July 26, 2013

                The Castle Law Group, LLC<br>                Original signature on file

                /S/ Melissa Sandoval, Legal Assistant

Wirth / 13-03477

EXHIBIT 1

Wirth / 13-03477

Michelle Miller
Public Trustee of Park County
501 Main Street
Fairplay, CO  80440

The Castle Law Group, LLC
999 18th Street, Suite 2201
Denver, CO  80202

Owner
36 Iris Drive
Bailey, CO  80421-2316

Occupant
36 Iris Drive
Bailey, CO  80421-2316

Lessee
36 Iris Drive
Bailey, CO  80421-2316

Martin T. Wirth
36 Iris Drive
Bailey, CO  80421-2316

Countrywide Home Loans, Inc.
MSN SV-79 / Document Control Dept
PO Box 10266
Van Nuys, CA  91410-0266

Countrywide Home Loans, Inc.
4500 Park Granada
Calabasas, CA  91302-1613

Bank of America, N.A.
c/o CoreLogic - Mail Stop: ASGN
1 CoreLogic Drive
Westlake, TX  76262-9823

Bank of America, N.A.
PO Box 10232
Simi Valley, CA  93065-6298

Bank of America, N.A.
400 Countrywide Way
SV 35
Simi Valley, CA  93065-6298

Bank of America, N.A.
Attn: CA6-919-02-41
400 National Way
Simi Valley, CA  93065

Asset Acceptance LLC
c/o Law Offices of Irvin Borenstien
3025 South Parker Road / Tower II, Suite #711
Aurora, CO  80014

Law Offices of Irvin Borenstein
The Market Place
3025 South Parker Road / Tower II, Suite #711
Aurora, CO  80014

The Bank of New York Mellon FKA The Bank of New York, as Trustee for the Benefit of the
Certificateholders of the CWHEQ Inc., CWHEQ Revolving Homeequity Loan Trust, Series
2007-G
c/o BAC, M/C: CA6-914-01-43
1800 Tapo Canyon Road
Simi Valley, CA  93063

<table>
<tr><td colspan="2">

DISTRICT COURT, PARK COUNTY, COLORADO
Court Address:  300 4th St., P.O. Box 190
             Fairplay, CO  80440

</td></tr>
</table>

| DISTRICT COURT, PARK COUNTY, COLORADO<br>Court Address:  300 4th St., P.O. Box 190<br>         Fairplay, CO  80440 | |
|---|---|
| IN THE MATTER OF THE MOTION OF NATIONSTAR MORTGAGE LLC FOR AN ORDER AUTHORIZING THE PUBLIC TRUSTEE TO SELL CERTAIN REAL ESTATE UNDER A POWER OF SALE CONTAINED WITHIN A DEED OF TRUST | DATE FILED: July 26, 2013 6:01 PM<br>FILING ID: F5A1F87CA1BF8<br>CASE NUMBER: 2013CV30104<br><br>▲COURT USE ONLY▲ |
| Attorneys for Petitioner:<br>**The Castle Law Group, LLC**<br>Address:       999 18th Street, Suite 2201<br>              Denver, CO  80202<br>Phone Number:  (303) 865-1400<br>Atty. Reg   #23449 (Deanna L. Westfall) dwestfall@cmsatty.com<br>          #34145 (Cynthia Lowery-Graber) cgraber@cmsatty.com<br>          #34531 (Alison L. Berry) aberry@cmsatty.com<br>          #34935 (Britney Beall-Eder) bbeall-eder@cmsatty.com<br>          #39976 (Christopher T. Groen) cgroen@cmsatty.com<br>          #40351 (Kimberly L. Martinez) kmartinez@cmsatty.com<br>          #42309 (Reagan Larkin) rlarkin@cmsatty.com | Case Number:<br><br><br>Division: |
| **DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT** | |

1.      **This cover sheet shall be filed with each pleading containing an initial claim for relief in every district court civil (CV) case, and shall be served on all parties along with the pleading.**  It shall not be filed in Domestic Relations (DR), Probate (PR), Water (CW), Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases.  Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's show cause order requiring its filing.

2.      **Check one of the following:**

☐ This case is governed by Chief Justice Directive ("CJD") 11-02 and the "Colorado Civil Access Pilot Project Rules Applicable to Business Actions in District Court" because:

- The case is filed within the period of January 1, 2012 through December 31, 2013; *AND*

- The case is filed in a Pilot Project participating jurisdiction (Adams County, Arapahoe County, Denver County, Gilpin County, or Jefferson County); *AND*

- The case is a "Business Action" as defined in CJD 11-02, Amended Appendix A for inclusion in the Pilot Project.

☒ This case is not governed by the Colorado Civil Access Pilot Project Rules.

*NOTE:* ***Cases subject to the Colorado Civil Access Pilot Project must be governed by the Rules      in      CJD      11-02      (available      at*** *http://www.courts.state.co.us/Courts/Supreme_Court/Directives/Index.cfm).   The presiding*

*judge will review Item 2 for accuracy. The designation on this initial Cover Sheet will control unless the Court orders otherwise.*

**3.    If this case is not governed by the Colorado Civil Access Pilot Project Rules as indicated in Item 2, check the following:**

☐ This case is governed by C.R.C.P. 16.1 because:

- The case is not a class action, forcible entry and detainer, C.R.C.P. 106, C.R.C.P. 120, or other similar expedited proceeding; *AND*

- A monetary judgment over $100,000 is not sought by any party against any other single party. This amount includes attorney fees, penalties, and punitive damages; it excludes interest and costs, as well as the value of any equitable relief sought.

☒ This case is not governed by C.R.C.P. 16.1 because (check ALL boxes that apply):

☒ The case is a class action, forcible entry and detainer, C.R.C.P. 106, C.R.C.P. 120, or other similar expedited proceeding.

☐ A monetary judgment over $100,000 is sought by any party against any other single party. This amount includes attorney fees, penalties, and punitive damages; it excludes interest and costs, as well as the value of any equitable relief sought.

*NOTE: In any case to which C.R.C.P. 16.1 does not apply, the parties may elect to use the simplified procedure by separately filing a Stipulation to be governed by the rule within 35 days of the at-issue date. See C.R.C.P. 16.1(b)(1) (re: case type) and C.R.C.P. 16.1(e) (re: amount in controversy). In any case to which C.R.C.P. 16.1 applies, the parties may opt out of the rule by separately filing a Notice to Elect Exclusion (JDF 602) within 45 days of the at-issue date. See C.R.C.P. 16.1(d).*

☐ A Stipulation or Notice with respect to C.R.C.P. 16.1 has been separately filed with the Court, indicating:

☐ C.R.C.P. 16.1 applies to this case.

☐ C.R.C.P. 16.1 does not apply to this case.

**4.** ☐    This party makes a **Jury Demand** at this time and pays the requisite fee.  See C.R.C.P. 38.  (Checking this box is optional.)

Date: _____ IJUL '19 2013 _____

Alison L. Berry
#34531

Signature of Party or Attorney for Party

File No:  13-03477

| DISTRICT COURT, PARK COUNTY, COLORADO<br>Court Address:  300 4th St., P.O. Box 190<br>Fairplay, CO  80440 | DATE FILED: July 26, 2013 6:01 PM<br>FILING ID: F5A1F87CA1BF8<br>CASE NUMBER: 2013CV30104 |
|---|---|
| IN THE MATTER OF THE MOTION OF NATIONSTAR MORTGAGE LLC FOR AN ORDER AUTHORIZING THE PUBLIC TRUSTEE TO SELL CERTAIN REAL ESTATE UNDER A POWER OF SALE CONTAINED WITHIN A DEED OF TRUST | ▲COURT USE ONLY▲ |
| Attorneys for Petitioner:<br>**The Castle Law Group, LLC**<br>Address:              999 18th Street, Suite 2201<br>                         Denver, CO  80202<br>Phone Number:     (303) 865-1400<br>Atty. Reg. #: #23449 (Deanna L. Westfall) dwestfall@cmsatty.com<br>           #34145 (Cynthia Lowery-Graber) cgraber@cmsatty.com<br>           #34531 (Alison L. Berry) aberry@cmsatty.com<br>           #34935 (Britney Beall-Eder) bbeall-eder@cmsatty.com<br>           #39976 (Christopher T. Groen) cgroen@cmsatty.com<br>           #40351 (Kimberly L. Martinez) kmartinez@cmsatty.com<br>           #42309 (Reagan Larkin) rlarkin@cmsatty.com | Case Number:<br><br>Division: |
| NOTICE OF HEARING August 19, 2013 ||

**THE PEOPLE OF THE STATE OF COLORADO, TO THE GRANTOR(S) IN THE DEED OF TRUST DESCRIBED HEREIN, AND TO THOSE PERSONS WHO APPEAR TO HAVE ACQUIRED A RECORD INTEREST IN THE REAL ESTATE THEREIN DESCRIBED, SUBSEQUENT TO THE RECORDING OF SUCH DEED OF TRUST, GREETINGS:**

WHEREAS, Martin T. Wirth, Grantor(s) by Deed of Trust dated January 18, 2002, recorded January 29, 2002 at Reception No. 560414  in the records of the County of Park, Colorado, to secure to Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Home Loans, Inc. the payment of a Promissory Note of even date therewith for the principal sum of $138,000.00 as provided in said Deed of Trust, conveyed to the Park County Public Trustee, on the terms set forth in said Note and Deed of Trust, the following described real property ("Property") situate in said County to-wit:

**SEE EXHIBIT A ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE**

**WHICH HAS THE ADDRESS OF 36 Iris Drive  Bailey, CO  80421-2316**

NOTICE is hereby given that Nationstar Mortgage LLC, Petitioner herein, has filed its Motion with this Court seeking an Order of this Court authorizing a Public Trustee's sale under the power of sale contained in said Deed of Trust on the grounds that the indebtedness secured by said Deed of Trust is in default in that among other events of default the current Mortgagor has failed to pay monthly installments of principal, interest, and if applicable, taxes and insurance together with applicable late charges as provided in the subject Deed of Trust and Note.

NOTICE is also given that any interested party who disputes the existence of such default under the terms of said Deed of Trust and Note secured thereby, or who otherwise disputes the existence of circumstances authorizing the exercise of the power of sale contained in said Deed of Trust, or who desires to raise such other grounds for the objection to the issuance of an Order Authorizing Sale which may exist pursuant to the Servicemembers Civil Relief Act, as amended, must file a response to Petitioner's Motion for Order Authorizing Sale, verified by the oath of such person, setting forth the facts upon which he relies and attaching copies of all documents which support his position. Said response must be in writing and filed with the Clerk of the District Court in and for the County of Park, State of Colorado, at the address set forth below, and shall be served upon the Petitioner pursuant to Rule 5(b) of the Colorado Rules of Civil Procedure at the office of **The Castle Law Group, LLC,** 999 18th Street, Suite 2201, Denver, CO 80202, telephone (303) 865-1400, not less than seven (7) days prior to the date set for hearing on Petitioner's Motion for Order Authorizing Sale.

If this case is not filed in the County where your property is located, you have the right to ask the Court to move the Case to that County. Your request may be made as a part of your response or any paper you file with the Court at least seven days before the hearing.

Be advised that the Clerk of this Court has set the hearing at the time and place set forth below when and where any interested person may appear if they so desire, with or without an attorney.

Date and Time of Hearing:    **August 19, 2013 at 10:00 am**

Place of Hearing:        **District Court of Park County**
**300 4th St., P.O. Box 190**
**Fairplay, CO 80440**

**IF NO RESPONSE IS FILED BY August 12, 2013 THE COURT MAY WITHOUT ANY HEARING AUTHORIZE THE FORECLOSURE AND PUBLIC TRUSTEE'S SALE WITHOUT FURTHER NOTICE.**

DATED: _____JUL 1 9 2013_____

The Castle Law Group, LLC
Original signature on file        **Alison L. Berry**
**#34531**

/S/

Attorney for Nationstar Mortgage LLC

Wirth / 13-03477
Petitioners Address:   350 Highland Dr.
Lewisville, TX 75067

**IMPORTANT NOTICE**
THE NOTICE AND MOTION IN THIS MATTER ARE BEING FILED SIMULTANEOUSLY WITH THE MAILING OF THIS NOTICE. YOU MAY OBTAIN THE COURT'S CASE/CIVIL ACTION NUMBER BY CONTACTING THE COURT OR OUR OFFICE.

# EXHIBIT A

LOT 53,
FRIENDSHIP RANCH UNIT 2,

AND

A PART OF THE SOUTH 1/2 OF SECTION 8, TOWNSHIP 7 SOUTH, RANGE 72 WEST OF THE 6TH P.M., DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY BOUNDARY OF FRIENDSHIP RANCH UNIT 2 THENCE THE SOUTH 1/4 CORNER OF SAID SECTION 8 BEARS SOUTH 4 DEGREES 25 MINUTES EAST, 510 FEET;
THENCE SOUTH 53 DEGREES 17 MINUTES EAST, ALONG SAID BOUNDARY, 476 FEET TO THE MOST SOUTHERLY CORNER OF SAID LOT 54 IN SAID SUBDIVISION;
THENCE SOUTH 76 DEGREES 31 MINUTES WEST, 532.44 FEET;
THENCE NORTH 00 DEGREES 25 MINUTES WEST, 388.91 FEET TO A POINT ON THE SOUTH BOUNDARY OF SAID SUBDIVISION;
THENCE NORTH 89 DEGREES 29 MINUTES 30 SECONDS EAST, ALONG SAID BOUNDARY, 143.16 FEET TO THE POINT OF BEGINNING,

EXCEPT THE WEST OR WESTERLY 60 FEET THEREOF CONVEYED BY DEED RECORDED IN BOOK 217 AT PAGE 378.

COUNTY OF PARK,
STATE OF COLORADO

# COPY

Prepared by : K. NICHOLAS

Prepared by : K. NICHOLAS



## NOTE

DATE FILED: July 26, 2013 6:01 PM
FILING ID: F5A1F87CA1BF8
CASE NUMBER: 2013CV30104

JANUARY 18, 2002        EVERGREEN                    COLORADO
        [Date]              [City]                         [State]

36 IRIS DRIVE, BAILEY, CO 80421-2316
                            [Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $  138,000.00  (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
COUNTRYWIDE HOME LOANS, INC.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of  7.125  %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the FIRST         day of each month beginning on
MARCH 01, 2002      . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on FEBRUARY 01, 2032      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
4500 Park Granada, Calabasas, CA 91302-1613
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $929.73

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

### 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

### 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  FIFTEEN         calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.000   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    [Initials] _____

VMP MORTGAGE FORMS - (800)521-7291

[logo] -8N (0005).02    CHL (07/01)              Page 1 of 7                              Form 3200 1/01





(D) No Waiver By Note Holder

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY _____
SHELLIE SHEA
ASST. SECRETARY

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
MARTIN T. WIRTH                 -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                              -Borrower                                        -Borrower

[Sign Original Only]



STATEMENT BY ATTORNEY FOR QUALIFIED HOLDER PURSUANT TO 38-38-101, C.R.S.

I, _____, of The Castle Law Group, LLC as attorneys for Nationstar Mortgage LLC ("Qualified Holder"), provide the below Statement to the County Public Trustee of Park County, Colorado, that the following is true and correct, to the best of our knowledge, following reasonable inquiry:

Check applicable boxes:

1. ☑☐ Nationstar Mortgage LLC ("Qualified Holder") is the holder of the evidence of debt. A true and correct copy, except for redaction of any non-public information and personal identifying information required by applicable federal or state law of the evidence of debt is attached hereto. The attached copy of the evidence of debt may not include post-execution endorsements as contemplated by 38-38-101(2), C.R.S.

2. ☑☐ Nationstar Mortgage LLC ("Qualified Holder") is the current beneficiary of the Deed of Trust. A true and correct copy, except for redaction of any non-public information and personal identifying information required by applicable federal or state law of the recorded Deed of Trust is attached hereto.

3. ☐ Nationstar Mortgage LLC, is a Qualified Holder pursuant to Section 38-38-100.3(20), C.R.S. A true and correct copy(ies), except for redaction of any non-public information and personal identifying information required by applicable federal or state law of modification(s) is attached hereto.

4. ☐ Nationstar Mortgage LLC is a Qualified Holder pursuant to Section 38-38-100.3(20); C.R.S. A true and correct copy, except for redaction of any non-public information and personal identifying information required by applicable federal or state law of the recorded partial release of the deed of trust is attached hereto.

5. ☑☐ Nationstar Mortgage LLC ("Qualified Holder") is one of the following entities described in Section 38-38-100.3 (20), C.R.S.:

   ☐ (a). A bank, as defined in section 11-101-401(5), C.R.S.;

   ☐ (b). An industrial bank, as defined in section 11-108-101(1) C.R.S.;

   ☐ (c). A federally chartered savings and loan association doing business in Colorado or a savings and loan association chartered under the "Savings and Loan Association Law", articles 40 to 46 of Title II, C.R.S.;

   ☐ (d). A supervised lender, as defined in 5-1-301(46) C.R.S., that is licensed to make supervised loans pursuant to 5-2-302 C.R.S., that is either (I) a public entity, which is an entity that has issued voting securities that are listed on a national security exchange registered under the Federal "Securities Exchange Act of 1934" as amended, or (II) an entity in which all of the outstanding voting securities are held, directly or indirectly, by a public entity;

   ☐ (e). An entity in which all of the outstanding voting securities are held, directly or indirectly, by a public entity that also owns, directly or indirectly, all of the voting securities of a supervised lender, as defined in Section 5-1-301(46) C.R.S., that is licensed to make supervised loans pursuant to Section 5-2-302 C.R.S.;

   ☑☐ (f). A Federal Housing Administration approved mortgagee;

   ☐ (g). A federally chartered credit union doing business in Colorado or a state chartered credit union, as defined in Section 11-30-101 C.R.S.;

   ☐ (h). An agency or department of the federal government;

   ☐ (i). An entity created or sponsored by the federal or state government that originates, insures, guarantees, or purchases loans or a person acting on behalf of such an entity to enforce an evidence of debt or deed of trust securing an evidence of debt; or

   ☐ (j). Any entity listed in paragraphs (a) to (i) of this subsection (20) acting in the capacity of agent, nominee except as otherwise specified in subsection (10) of this section, or trustee for another person.

6. The Qualified Holder of the evidence of debt agrees that it is obligated to indemnify and defend any person liable for repayment of any portion of the original evidence of debt in the event that the original evidence of debt is presented for payment to the extent of any amount other than the amount of a deficiency remaining under the evidence of debt after deducting the bid amount at sale, and any person who sustains a loss due to any title defect that results from reliance upon a foreclosure sale at which the original evidence of debt was not presented, subject to the limitations set forth in 38-38-101 (2) (a)-(c), C.R.S.

Nationstar Mortgage LLC
QUALIFIED HOLDER/CURRENT HOLDER OF THE EVIDENCE OF DEBT

Name and Title of Agent or Officer of Qualified Holder

350 Highland Dr.
Lewisville, TX 75067
Address of Qualified Holder

Signature
The Castle Law Group, LLC
Attorneys for Nationstar Mortgage LLC

Grantor: Martin T. Wirth
Date of Deed of Trust:       January 18, 2002
Recording Date of Deed of Trust: January 29, 2002
Recording Information:       at Reception No. 560414
County: Park

Wirth / 13-03477

# COPY



560414 01/28/2002 09:54A
1 of 12 R $0.00 D $.00 DEBRA A GREEN PARK CO
1 of 12 R $0.00 D $.00 DEBRA A GREEN PARK CO

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
1800 Tapo Canyon
Simi Valley

Countrywide Home Loans

02  001  001

9784955/

——— [Space Above This Line For Recording Data] ———

1234
[Escrow/Closing #]

[Doc ID #]

## DEED OF TRUST

MIN 1000157-0000773291-6

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated JANUARY 18, 2002      , together with all Riders to this document.
(B) "Borrower" is
MARTIN T. WIRTH,

CTOC - 1253048

Borrower is the trustor under this Security Instrument.
(C) "Lender" is
COUNTRYWIDE HOME LOANS, INC.
Lender is a A CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada, Calabasas, CA 91302-1613
(D) "Trustee" is the Public Trustee of PARK                                         County,
Colorado.
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated JANUARY 18, 2002      . The Note states that Borrower owes Lender
ONE HUNDRED THIRTY EIGHT THOUSAND and 00/100
Dollars (U.S. $   138,000.00   ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than FEBRUARY 01, 2032      .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

COLORADO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Initials: AJU

Page 1 of 11

-6A(CO) (0005)    CHL (08/00)    VMP MORTGAGE FORMS - (800)521-7291                    Form 3006 1/01
CONV/VA





580414 01/28/2002 09:50A
2 of 12 R 60.00 D 0.00 DEBRA A GREEN PARK CO
2 of 12 R 60.00 D 0.00 DEBRA A GREEN PARK CO

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower, in consideration of the debt and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY                                          of PARK
[Type of Recording Jurisdiction]               [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number:                              which currently has the address of
36 IRIS DRIVE, BAILEY
                                               [Street/City]
Colorado 80421-2316 ("Property Address"):
[Zip Code]

Initials: _ATU_

-6A(CO) (0005)      CHL (08/00)      Page 2 of 11      Form 3006  1/01

503414 01/29/2002 09:15AM
3 of 12 R 60.00 D 0.00 DEBRA A GREEN PARK CO
3 of 12 R 60.00 D 0.00 DEBRA A GREEN PARK CO

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record and liens for taxes for the current year not yet due and payable.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly

-6A(CO) (0008)    CHL (08/00)    Page 3 of 11    Form 3006 1/01

880414 01/28/2002 09:54A
4 of 12 R 60.00 D 0.00 DEBRA A GREEN PARK CO
4 of 12 R 60.00 D 0.00 DEBRA A GREEN PARK CO

furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.



568414 01/29/2002 08:54A
5 of 12 R 60.00 D 0.00 DEBRA R GREEN PARK CO
5 of 12 R 60.00 D 0.00 DEBRA R GREEN PARK CO

[redacted]

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but

Initials: ATU

588414 01/29/2002 09:54A
7 of 12 R 58.00 D 0.00 DEBRA A GREEN PARK CO
7 of 12 R 58.00 D 0.00 DEBRA A GREEN PARK CO

[redacted]

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Initials: ATLL

960414 01/29/2002 08:54A
8 of 12 R 60.00 D 0.00 DEBRA A GREEN PARK CO
8 of 12 R 60.00 D 0.00 DEBRA A GREEN PARK CO

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender



550414 01/29/2002 09:540
5 of 12 R 60.00 D 0.00 DEBRA A GREEN PARK CO
5 of 12 R 60.00 D 0.00 DEBRA A GREEN PARK CO

all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the

560414 01/28/2002 09:04A
16 of 12 R 60.00 D 0.00 DEBRA A GREEN PARK CO
16 of 12 R 60.00 D 0.00 DEBRA A GREEN PARK CO

notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Lender shall mail a copy of the notice to Borrower as provided in Section 15. Trustee shall record a copy of the notice in the county in which the Property is located. Trustee shall publish a notice of sale for the time and in the manner provided by Applicable Law and shall mail copies of the notice of sale in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's certificate describing the Property and the time the purchaser will be entitled to Trustee's deed. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall request that Trustee release this Security Instrument and shall produce for Trustee, duly canceled, all notes evidencing debts secured by this Security Instrument. Trustee shall release this Security Instrument without further inquiry or liability. Borrower shall pay any recordation costs and the statutory Trustee's fees.

24. Waiver of Homestead. Borrower waives all right of homestead exemption in the Property.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____       _____ (Seal)
                                        MARVIN T. NINTH                -Borrower

_____       _____ (Seal)
                                                                       -Borrower

                                       _____ (Seal)
                                                                       -Borrower

                                       _____ (Seal)
                                                                       -Borrower

-6A(CO) (0000)      CHL (09/00)         Page 10 of 11              Form 3006 1/01



569414 01/23/2002 09:54A
11 of 12 R 80.00 D 0.00 DEBRA A GREEN PARK CO
11 of 11 R 00.00 D 0.00 DEBRA A GREEN PARK CO

STATE OF COLORADO, _Jefferson_                                    County ss:

The foregoing instrument was acknowledged before me this 18 day of _Jan_ 2002

by _Martin T. Worth_

Witness my hand and official seal.

My Commission Expires:                          _____
                                                 Notary Public

My Commission Expires July 7, 2005



560014 01/29/2002 09:54Q
12 of 12 R 60.00 D 0.00 DEBRA A GREEN PARK CO
12 of 12 R 60.00 D 0.00 DEBRA A GREEN PARK CO

COUNTRYWIDE HOME LOANS, INC.
BRANCH 0291
1193 BERGEN PARKWAY UNIT 0
EVERGREEN, CO 80439-
(303)670-1059
Br Fax No.: (303)670-1024

DATE:       01/18/2002
CASE #:

BORROWER: MARTIN T. WIRTH
PROPERTY ADDRESS: 36 IRIS DRIVE
                  BAILEY, CO. 80421-2316

## LEGAL DESCRIPTION EXHIBIT A

LOT 53,
FRIENDSHIP RANCH UNIT 2,

AND

A PART OF THE SOUTH 1/2 OF SECTION 8, TOWNSHIP 7 SOUTH, RANGE 72 WEST OF THE 6TH P.M., DESCRIBED
AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY BOUNDARY OF FRIENDSHIP RANCH UNIT 2 THENCE THE
SOUTH 1/4 CORNER OF SAID SECTION 8 BEARS SOUTH 0 DEGREES 25 MINUTES EAST, 510 FEET;
THENCE SOUTH 53 DEGREES 17 MINUTES EAST, ALONG SAID BOUNDARY, 476 FEET TO THE MOST
SOUTHERLY CORNER OF SAID LOT 54 IN SAID SUBDIVISION;
THENCE SOUTH 78 DEGREES 31 MINUTES WEST, 532.44 FEET;
THENCE NORTH 80 DEGREES 25 MINUTES WEST, 383.91 FEET TO A POINT ON THE SOUTH BOUNDARY OF
SAID SUBDIVISION;
THENCE NORTH 89 DEGREES 29 MINUTES 30 SECONDS EAST, ALONG SAID BOUNDARY, 143.16 FEET TO THE
POINT OF BEGINNING,

EXCEPT THE WEST OR WESTERLY 60 FEET THEREOF CONVEYED BY DEED RECORDED IN BOOK 217 AT PAGE
370.

COUNTY OF PARK,
STATE OF COLORADO

FHLMC/FNMA
Legal Description Exhibit A
3C4041XX (11/01)





DISTRICT COURT, PARK COUNTY, COLORADO
Court Address:  300 4th St., P.O. Box 190
               Fairplay,  CO 80440

DATE FILED: July 26, 2013 6:01 PM
FILING ID: F5A1F87CA1BF8
CASE NUMBER: 2013CV30104

IN THE MATTER OF THE MOTION OF NATIONSTAR
MORTGAGE LLC FOR AN ORDER AUTHORIZING
THE PUBLIC TRUSTEE TO SELL CERTAIN REAL
ESTATE UNDER A POWER OF SALE CONTAINED
WITHIN A DEED OF TRUST

▲ COURT USE ONLY ▲

Case Number:

Division:

ORDER AUTHORIZING SALE

     THE REVIEW AND HEARING IN THIS MATTER having been completed by the Court on August 19, 2013:

     WHEREAS, Martin T. Wirth, Grantor(s) by Deed of Trust dated January 18, 2002, recorded January 29, 2002 at Reception No. 560414 in the records of the County of Park, Colorado, to secure to Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Home Loans, Inc. the payment of a Promissory Note of even date therewith for the principal sum of $138,000.00 as provided in said Deed of Trust, conveyed to the Park County Public Trustee, on the terms set forth in said Note and Deed of Trust, the following described real property ("Property") situate in said County to-wit:

**SEE EXHIBIT A ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE**

**WHICH HAS THE ADDRESS OF 36 Iris Drive Bailey, CO 80421-2316**

     THE COURT FINDS that there is reasonable probability that: a default exists as alleged in the Motion in order to invoke the power of sale in said Deed of Trust; that the provisions of C.R.C.P. Rule 120 and the Servicemembers Civil Relief Act, as amended, have been complied with; that the venue in this action is proper; and that the order authorizing sale should be granted.

     IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that a sale of the Property by the Public Trustee in the above said County in the State of Colorado, under a power of sale, pursuant to statute and the provisions of that certain Deed of Trust described above, be and the same hereby is authorized by this Court.

     It is further ordered that a return of such sale shall be made to this Court for its approval.

DONE this  Nineteenth  day of August,  2013

BY THE COURT:

_____

Judge/Magistrate

Wirth / 13-03477

# EXHIBIT A

LOT 53,
FRIENDSHIP RANCH UNIT 2,

AND

A PART OF THE SOUTH 1/2 OF SECTION 8, TOWNSHIP 7 SOUTH, RANGE 72 WEST OF THE 6TH P.M., DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY BOUNDARY OF FRIENDSHIP RANCH UNIT 2 THENCE THE SOUTH 1/4 CORNER OF SAID SECTION 8 BEARS SOUTH 6 DEGREES 25 MINUTES EAST, 510 FEET;
THENCE SOUTH 53 DEGREES 17 MINUTES EAST, ALONG SAID BOUNDARY, 476 FEET TO THE MOST SOUTHERLY CORNER OF SAID LOT 54 IN SAID SUBDIVISION;
THENCE SOUTH 78 DEGREES 31 MINUTES WEST, 532.44 FEET;
THENCE NORTH 60 DEGREES 25 MINUTES WEST, 388.91 FEET TO A POINT ON THE SOUTH BOUNDARY OF SAID SUBDIVISION;
THENCE NORTH 89 DEGREES 29 MINUTES 30 SECONDS EAST, ALONG SAID BOUNDARY, 143.16 FEET TO THE POINT OF BEGINNING,

EXCEPT THE WEST OR WESTERLY 60 FEET THEREOF CONVEYED BY DEED RECORDED IN BOOK 217 AT PAGE 378.

COUNTY OF PARK,
STATE OF COLORADO