**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. **13-CV-03309-REB-KMT**

MARTIN THOMAS WIRTH, Plaintiff,

v.

JOHN HICKENLOOPER, In his Official Capacity as Governor of Colorado,

STEPHEN A. GROOME, In his Official Capacity as 11th District Court Judge,

MICHELLE MILLER, In her Official Capacity as Public Trustee of Park County,

NATIONSTAR MORTGAGE, LLC,

LAWRENCE E. CASTLE, In his Corporate and Individual Capacities,

CYNTHIA LOWERY-GRABER, In her Corporate and Individual Capacities,

THE CASTLE LAW GROUP, LLC,

MARY HAGER, Individually,

FEDERAL NATIONAL MORTGAGE ASSOCIATION (FANNIE MAE),

Defendants.

---

**FOURTH AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF
REGARDING COLORADO STATUTORY VIOLATIONS OF: CONSTITUTIONAL
RESTRAINTS, RULES OF EVIDENCE, AND DUE PROCESS**

---

1

**PARTIES**

1. Plaintiff, MARTIN THOMAS WIRTH, is a citizen of the United States of America who resides at the following address:

    36 Iris Drive

    Bailey, Colorado 80421

2. Defendant, JOHN HICKENLOOPER, is a citizen of the United States of America and Governor of the State of Colorado located at the following address:

    136 State Capitol

    Denver, CO 80203-1792

3. Defendant, STEPHEN A. GROOME, is a citizen of the United States of America and Judge of the 11th District Court of Colorado located at the following address:

    300 4th Street

    Fairplay, CO 80440

4. Defendant, MICHELLE MILLER, is a citizen of the United States of America Public Trustee of Park County located at the following address:

    501 Main Street

    Fairplay, CO 80440

5. Defendant, NATIONSTAR MORTGAGE, LLC, is a Texas corporation located at the following address:

    350 Highland Drive

    Lewisville, TX 75067

6. Defendant, LAWRENCE E. CASTLE, is a citizen of the United States of America located at the following address:

    999 18th Street, Suite 2201

    Denver, CO 80202

7. Defendant, CYNTHIA LOWERY-GRABER, is a citizen of the United States of America located at the following address:

    999 18th Street, Suite 2201

    Denver, CO 80202

8. Defendant, THE CASTLE LAW GROUP, LLC, is a Colorado corporation located at the following address:

    999 18th Street, Suite 2201

    Denver, CO 80202

9. Defendant, MARY HAGER, is a citizen of the United States of America located at the following address:

    25577 Conifer Road, Suite 201

    Conifer, CO 80433

10. Defendant, FEDERAL NATIONAL MORTGAGE ASSOCIATION (or FANNIE MAE), is a government sponsored enterprise of the United States of America located at the following address:

    3900 Wisconsin Avenue, NW

    Washington, DC 20016-2892

11. [This paragraph number is reserved to add defendant if needed.]

12. [This paragraph number is reserved to add defendant if needed.]

13. [This paragraph number is reserved to add defendant if needed.]

14. [This paragraph number is reserved to add defendant if needed.]

15. [This paragraph number is reserved to add defendant if needed.]

**JURISDICTION**

16. Pursuant to 28 USC § 1331 the United States District Court has jurisdiction over civil matters arising under the Constitution and laws of the United States.

**AMENDMENT**

17. This pleading is amended pursuant to Fed.Rule.Civ.Proc.15(a)(1)(B) and 15(a)(2).

**NATURE OF THE ACTION**

18. Colorado's foreclosure statutes presume that non-existent indorsements or assignments exist based solely on an unsworn "certification" or "statement" by the foreclosing party's counsel. This presumption contradicts and negates Constitutional requirements of due process and fundamental rules of evidence. The statutes, infra, violate the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments of the US Constitution in so far as evidentiary and due process protections to home and real property owners have been abolished by the Colorado Statutes in their present form. The Colorado foreclosure statutes enable, encourage, and facilitate fraud as they violate Constitutional restraints while criminalizing homeowning defendants. While the Colorado Statutes are tailored to serve the private interests of foreclosing entities, they have no compelling government interest. In criminalizing homeowners, they significantly abridge fundamental rights and are a direct threat to human rights concerning both property and liberty.

**STATEMENT OF FACTS**

Contents

I.    Summary                                                                          5

II.   Statutory Provisions                                                            7

      A.    C.R.S. §38-38-101(6)(b) Deems Nonexistent Evidence of Indorsement or
      Assignment to Exist                                                             8

      B.    C.R.S. §38-38-101(1)(b)(II) and (c)(II) Allow Foreclosure by "Certification"
      or "Statement" in Lieu of Evidence                                              9

      C.    C.R.S. §38-39-102(3)(a)(I) Allows "Qualified Holders" to Release a Deed
      of Trust Without Producing the Original Evidence of Debt                        25

      D.    C.R.S. §38-38-504 Deems a Public Trustee's Deed to be Prima Facie
      Evidence of Statutory Compliance and Truth                                      26

      E.    C.R.S. §13-40-104(1)(f) Allows Eviction Based Solely on a Foreclosure
      Order that is Not a Final Judgment as a Matter of Law                           26

      F.    C.R.S. §38-38-101(2) and §38-39-102(3)(a)(I) Bar Adequate Remedies to
      Parties Damaged by Improper Foreclosures                                        27

III.  A History of Action in Times of Economic Distress                              28

**I. Summary**

19. Any presumption of evidence without proof contradicts and negates defenses and
    evidentiary requirements pursuant to Uniform Commercial Code CRS 4-3-203(c).
    and all fundamental rules of evidence in common law where liens and secured
    promissory notes must be expressly indorsed by the originator to assign the
    rights of a negotiable instrument to another party. In CRS 4-3-109(a) "A promise
    or order is payable to the bearer if it: (1) States that it is payable to bearer or to

the order of the bearer or otherwise indicates that the person in possession of the promise or order is entitled to payment;" Mortgages notes are promises to pay a specific bearer. No rational and informed homeowner would sign a blank sheet of paper granting a stake in their home to an anonymous and potentially dangerous entity. For most homeowners, the home itself is their most valuable asset.

20. The provisions described below were added by Colorado House Bill 06-1387 at the behest of banks and foreclosure attorneys in 2006 and refined to their present form by House Bill 09-1207. The purposes and resulting effects of these bills are:

   A) to eliminate the burden of proof showing that mortgage notes had been properly transferred by indorsement, lowering the threshold of proof compared to other negotiable instruments that must still show proper indorsements before anything may be seized in lieu of payment, or money may be drawn from an account using a check,

   B) to replace the standard business practice of transference through explicit indorsement of notes that cite the transferee by name,

   C) to improperly convert homeowning defendants into plaintiffs under a single matter at law while obliging them to prove the non-existence of non-indorsements, which is logically impossible, and

   D) to empower bank employees, mortgage companies, predatory lenders, and other fraudulent operators to abuse homeowners by enabling facile and wrongful deprivation of property using Colorado District Courts as instruments in wrong doing.

21. The statute allows Colorado foreclosures to proceed based on undocumented claims of a right to enforce a lien against real property. While a foreclosure under the statute is not based on a deprivation of property prior to judgment, it has the same effect. It converts Colorado District Courts into automatons granting extra-

judicial powers to attorneys taking real property while such extra-judicial powers do not exist for enforcement of liens or promissory notes using other forms of property as security.

## II. Statutory Provisions

### A.  C.R.S. §38-38-101(6)(b) Deems Nonexistent Evidence of Indorsement or Assignment to Exist

22. The primary point of entry into the statutory labyrinth is C.R.S. §38-38-101(6), which defines "indorsement or assignment" for the rest of the statute. It was adopted as part of an omnibus revision to Colorado foreclosure law in HB 06-1387, and refined to its present form by HB 09-1207. A reading of the plain language of this section supports an inference that the Constitutional underpinnings of the Rule 120 review process were not considered by the Colorado Legislature when it enacted them.

> §38-38-101(6) provides:
>
> (6) Indorsement or assignment. (a) Proper indorsement or assignment of an evidence of debt shall include the original indorsement or assignment or a certified copy of an indorsement or assignment recorded in the county where the property being foreclosed is located.
>
> (b) Notwithstanding the provisions of paragraph (a) of this subsection (6), the original evidence of debt or *a copy thereof without proper indorsement or assignment shall be deemed to be properly indorsed* or assigned if a qualified holder presents the original evidence of debt or a copy thereof to the officer together with a statement in the certification of the qualified holder or in the statement of the attorney for the qualified holder pursuant to subparagraph (II) of paragraph (b) of subsection (1) of this section that the party on whose behalf the foreclosure was commenced is the holder of the evidence of debt.

C.R.S. §38-38-101(6) (*emphasis added*).

23. Subsection (b) allows an unsworn "certification" by one who claims to be a

"qualified holder" (C.R.S. §38-38-100.3(20)) , or an unsworn "statement" by an attorney for one who claims to be a qualified holder, to serve as a complete and determinative substitute for any evidence whatsoever of an indorsement or assignment defined in subsection (a), and allows an Order Authorizing Sale to be based solely on the certification or statement, together with an uncertified copy of the purported evidence of debt.

**B.  C. R. S. §38-38-101(1)(b)(II) and (c)(II) Allow Foreclosure by "Certification" or "Statement" in Lieu of Evidence**

24. In two of the alternatives to initiating a Rule 120 foreclosure in Colorado, a foreclosing party may choose to file either: (1) the original Note and Deed of Trust [§38-38-101(1)(b) and (c)], or copies of same that have been recorded [§38-38-101(1)(c) and (6)(a)], or, in the alternative, (2) a certification that it is a qualified holder of the evidence of debt, or a statement by an attorney that its client is a qualified holder of the evidence of debt, with copies (not required to be certified) of the Note and Deed of Trust [§38-38-101(1)(b)(II) and (c)(II)]. The former is referred to herein as a "full-doc" foreclosure, the latter as a "no-doc" foreclosure. If only §38-38-101(6)(b) is stricken as unconstitutional, for reasons specified above, the remaining "no-doc" foreclosure provisions would remain intact, subvert Mitchell's documentary proof requirements, violate the Court's concern with "bare conclusory claims of ownership or lien. . .," (id.), and fail to adequately reduce the risk of erroneous deprivation required by the Court in Mathews, supra, and Doehr, supra.

*1. Fully Documented Foreclosure*

25. Under C.R.S. §§38-38-100.3 and 38-38-101, a "Holder of evidence of debt may elect to foreclose" with:

1. "The original evidence of debt, including any modifications to the original

9

evidence of debt, together with the original indorsement or assignment thereof, if any, to the holder of the evidence of debt . . .," (C.R.S. §38-38-101(1)(b)), or ". . . a certified copy of the indorsement or assignment recorded in the county where the property being foreclosed is located. . .". C.R.S. §38-38-101(1)(b) and (6)(a) (incorporated by reference in 38-38-101(1)(b)); and

2. "The original recorded deed of trust securing the evidence of debt . . ." (C.R.S. §38-38-101(1)(c)) or a ". . . certified copy of the recorded deed of trust . . .". C.R.S. §38-38-101(1)(c)(I).

CRS. §38-38-101(1) & (6)

### 2. Non or Partially Documented Foreclosure

26. If a foreclosing party initiates a foreclosure under the alternative "certification" or "statement" provisions of §§38-38-101(1)(b)(II) and (c)(II) – which allow a foreclosure to be initiated with a certification or a statement of the attorney for a party who ". . . claims to be a qualified holder . . .", and also allow (as an alternative to an " . . . original endorsement or assignment . . . to the holder of the evidence of debt . . .") ". . . other proper indorsement or assignment in accordance with subsection (6) . . .". 38-38-101(1)(b) (emphasis added) – the Rule 120 Court does not require evidence that supports the certification or statement, as a fundamental part of its judicial control, regardless whether the foreclosure is opposed.

**Real Party in Interest is the Threshold Question**

27. To assure that due process of law is provided to Colorado homeowners who face impairment or termination of real property rights, the Colorado Supreme Court has consistently aligned its public trustee foreclosure proceedings with due process requirements of the Fourteenth Amendment as interpreted by the United States Supreme Court. E.g., Plymouth Capital Co., Inc. v. District Court, 955 P.2d 1014, 1015-1017 (Colo. 1998) [discussing intent of Rule 120 to accord with Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) and Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969)]; Goodwin v. District Court, 779 P.2d 837, 842 (Colo. 1989) [citing North Georgia Finishing, Inc. v. Di–Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Mitchell, supra; Sniadach, supra; ruling that Rule 120 Court's resolution of issue of default adversely to homeowner, without considering evidence challenging "real party in interest," is "tantamount to the taking of property in a summary fashion without any hearing at all—a deprivation clearly violative of due process of law;".]; Moreland v. Marwich, Ltd., 665 P.2d 613, 616-618 (Colo. 1983) [analyzing Rule 120's ". . . due process protections against summary foreclosure actions consistent with those protections against deprivations of property without a prior judicial hearing that have received recognition in a line of modern decisions of the United States Supreme Court. . . .".]; Valley Development at Vail, Inc. v. Warder, 557 P.2d 1180, 1181-1182 (Colo. 1976) [Rule 120 proceedings must provide debtor an ". . . opportunity to be heard at a meaningful time or in a meaningful manner . . ." to comport with ". . . constitutional requirements of due process. . .".]; Princeville Corp. v. Brooks, 533 P.2d 916, 918 (Colo. 1975) [Rule 120 proceedings must ". . . conform to due

process (citations omitted) . . . [and] comport with the modern trend to restrict Ex parte taking of property without a hearing. . .".]. The Colorado Supreme Court has not addressed the Constitutionality of the statutory provisions and procedures before the Court in this case.

28.  Referring to ¶ 22-26 above, C.R.S. §38-38-101(6)(b) bypasses the required documentary evidence foundations on which Mitchell, supra, and the Colorado Supreme Court relied in upholding a Louisiana statute, in that unsworn "certifications" and "statements:"

> 1. are nothing more than ". . . bare conclusory claims of ownership or lien . . .,"
>
> 2. do not constitute ". . . specific facts shown by verified petition or affidavit. . .,"
>
> 3. diminish the ". . . requisite showing [that] must be made to a judge . . ." to a mere unsworn certification or statement,
>
> 4. effectively place the homeowner ". . . at the unsupervised mercy of the creditor and court functionaries (I.E., public trustees who serve as mere functionaries in accepting and recording certifications and statements, without requiring authentication of any underlying evidence referenced in the certification or statement). . .,"
>
> 5. require a Rule 120 Court that strictly applies the statute to authorize and approve an unopposed foreclosure sale based on an unsworn certification or statement that "shall be deemed"  pursuant to C.R.S. §38-38-101(6)(b) to constitute a missing indorsement or assignment, thereby rendering ". . . judicial control of the process from beginning to end. . . " superfluous, and increasing ". . . the risk that the ex parte procedure will lead to a wrongful taking. . . .,"

6. eliminate the requirement of ". . . [d]ocumentary proof [that] is particularly suited for questions of the existence of a vendor's lien and the issue of default. . . .," and

7. do not require the foreclosing party to ". . . prove[ ] the grounds upon which the writ was issued.'" See Mitchell, supra. Moreover, by relieving the party seeking to terminate an owner's interest in property of the duty to produce any evidence that it is the proper party to terminate such interest, subsection (b) creates grave risk of erroneous deprivation of property, which risk led the Doehr Court to find the state statute at issue unconstitutional.

29. C.R.S. §38-38-101 "creates an additional burden upon a debtor to establish evidence of the creditor's identity which the creditor, itself, is not required to locate" – Plaintiff respectfully submits that this is best addressed by the fundamental rule that every action must be prosecuted in the name of the real party in interest pursuant to Colo.Rule.Civ.Proc. 17(a). Applied to a Rule 120 proceeding, Colorado precedent is clear that a Rule 120 Court's resolution of the issue of default adversely to a homeowner, without considering evidence challenging "real party in interest," is ". . . tantamount to the taking of property in a summary fashion without any hearing at all—a deprivation clearly violative of due process of law." Goodwin v. District Court, 779 P.2d 837, 841-842 (Colo. 1989).

Colorado Rule of Civil Procedure 17(a) requires that every action "be prosecuted in the name of the real party in interest." The real party in interest is that party who, by virtue of substantive law, has the right to invoke the aid of the court in order to vindicate the legal interest in question. . . . Implicit in Rule 120 is the requirement that <u>the party seeking an order of sale have a valid interest in the property allegedly subject to</u>

the power of sale. Unless the "real party in interest" defense is considered

at a Rule 120 hearing, any order for sale might well result in the sale of

property in favor of a party who has no legitimate claim to the property at

all. Once a debtor in a Rule 120 proceeding raises the "real party in

interest" defense, therefore, the burden should devolve upon the party

seeking the order of sale to show that he or she is indeed the real party in

interest.

Goodwin v. District Court, 779 P.2d 837, 842-843 (Colo. 1989) [Order Authorizing Sale

vacated; remanded for determination whether purported assignment of promissory note

and deed of trust were invalid due to interlineations, and whether person seeking to

foreclose was, if assignment was invalid, real party in interest in Rule 120 proceeding] .

30.  In Goodwin, the existence of "interlineations" on assignments of the loan

documents raised evidentiary issues as to whether the assignments were valid,

and, therefore, whether the foreclosing party was the party entitled to invoke the

power of sale provisions in the deed of trust. Foreclosures filed in recent years by

parties whose names appear nowhere on any loan documents, and who provide

no evidence of any valid assignments, raise evidentiary questions more

fundamental than those raised by mere "interlineations."

31.  A "certification" by one who claims to be a "qualified holder of evidence of debt,"

or a "statement" by an attorney for such party, is no substitute for evidence that

the certifying party is, in fact, the holder of the evidence of debt, with the right to

invoke the power of sale contained in the deed of trust. Under Goodwin, supra, if

the homeowner challenges the petitioner's right to invoke the power of sale, the

burden shifts to the foreclosing party to prove – with actual evidence – that it is

the holder of the evidence of debt, with a right to invoke the power of sale

contained in the deed of trust. Though Goodwin predates recent practices in the

securitization of mortgages, the fundamental rules of procedure and evidence still apply. If the name of the beneficiary on the deed of trust, and/or the name of the obligee on the note, do not match the names on the "certification" or "statement," there is an evidentiary gap that must be filled with evidence of indorsements or assignments of interests to the party attempting to foreclose.

32.  If a Rule 120 Court refuses to consider a valid challenge based on a "real party in interest" defense, the homeowner may file an independent action under Rule 105 for a complete adjudication of the foreclosing party's claims of rights and interests. This independent action is no substitute for due process in the Rule 120 proceeding, to wit:

> While we recognize that the Goodwins could have filed an independent action to enjoin the public sale, C.R.C.P. 120(d), *the availability of a collateral remedy should not serve to divest the Goodwins of their opportunity to defend against the deprivation of their real property interest by showing that the parties seeking the order of sale were without authority to exercise the power of sale* on which any order of sale necessarily would be predicated.

Goodwin, supra at 842 (*emphasis added*).

33.  Due process of law clearly requires that a Rule 120 Court require the foreclosing party to be the real party in interest, as a threshold question. This inquiry must be evidence-based, and is related to the questions of whether the foreclosing party has the right to enforce a valid, recorded security interest, as discussed above.

34. The significance of C.R.S. §38-38-101(6)(b) to the foreclosure process as a whole is made clear by the definition of "holder of an evidence of debt" in §38-38-100.3(10), which – on its face – renders all evidence-based definitions of "holder of an evidence of debt" meaningless if the foreclosing party relies on §38-38-

101(6)(b) as a basis for the foreclosure. Specifically, §38-38-100.3(10) provides:

(10) "Holder of an evidence of debt" means the person in actual possession of or otherwise entitled to enforce an evidence of debt; except that "holder of an evidence of debt" does not include a person acting as a nominee solely for the purpose of holding the evidence of debt or deed of trust as an electronic registry without any authority to enforce the evidence of debt or deed of trust. For the purposes of articles 37 to 40 of this title, the following persons are presumed to be the holder of an evidence of debt:

(a) The person who is the obligee of and who is in possession of an original evidence of debt;

(b) The person in possession of an original evidence of debt together with the proper indorsement or assignment thereof to such person in accordance with C.R.S § 38-38-101 (6);

(c) The person in possession of a negotiable instrument evidencing a debt, which has been duly negotiated to such person or to bearer or indorsed in blank; or

(d) The person in possession of an evidence of debt with authority, which may be granted by the original evidence of debt or deed of trust, to enforce the evidence of debt as agent, nominee, or trustee or in a similar capacity for the obligee of the evidence of debt.

C.R.S. §38-38-100.3(10)

35. C.R.S. §38-38-100.3(8) defines "evidence of debt" as "a writing that evidences a promise to pay or a right to the payment of a monetary obligation, such as a promissory note, bond, negotiable instrument, a loan, credit, or similar agreement, or a monetary judgment entered by a court of competent jurisdiction." Standing alone, the evidence of debt is presumably the original evidence of debt, since there is no reference to a "copy" constituting evidence of debt.

36. Subsection (d) acknowledges the possibility that an agent, nominee, or person in a similar relationship with a named obligee may have the authority to enforce an obligation for the named obligee, but mere acknowledgment of this possibility does not prove the existence of such a relationship. If the foreclosing party claims to be acting as an agent for another, it must also prove the existence of the agency relationship with competent evidence. Hancock v. Minneapolis-Moline, Inc., 482 P.2d 426, 428 (Colo.App. 1971) [citing 3 Am.Jur.2d Agency § 348; burden of proof is on the party who claims to be an agent with authority to file suit to prove the existence of the agency relationship under Colo.Rule.Civ.P. 17].

37. A foreclosing party that meets the requirements of the fully documented foreclosure, and produces original recorded documents that show evidence of title and valid indorsements or assignments to that party, would presumably comply with Mitchell's requirement of documentary proof. Because this evidence can be reviewed by a judge in the Rule 120 procedure, fully documented foreclosures reduce the risk of wrongful deprivation consistent with Mathews, supra, and Doehr, supra. It would also presumably comply with Colorado common law by producing evidence that it currently holds legal title to the note [Platte Valley Savings & Loan v Crall, 821 P.2d 305, 307 (Colo. App. 1991); American Surety Co. v. Scott, 63 F.2d 961, 964 (10th Cir. 1933) and citations therein (under Colorado law, the one who holds the legal title is the real party in

interest)]; or that it has a full and complete assignment of the note, valid at the time its claim arose and at the time the case was filed [Alpine Associates, Inc. v. KP & R,, Inc., 802 P. 2d 1119, 1121 (Colo. App. 1990)]. If the foreclosing party claims to be acting as an agent for another, the Rule 120 Court should also have before it proof of the existence of the agency relationship with competent evidence.

Hancock v. Minneapolis-Moline, Inc., 482 P.2d 426, 428 (Colo.App. 1971) [citing 3 Am.Jur.2d Agency § 348; burden of proof is on the party who claims to be an agent with authority to file suit to prove the existence of the agency relationship].

38.  In contrast, an non or partially documented foreclosure based on a mere "certification" or "statement" under §38-38-101(6)(b) – incorporated by reference in the definition of "holder of an evidence of debt" under the definition in §38-38-100.3(b) – allows a party who has no indorsement or assignment, yet is presumptuously deemed to have one upon claiming to be a "qualified holder," to attain the status of "holder of an evidence of debt" under §38-38-100.3(b) by the "certification" or "statement" alone, thereby rendering the remaining evidence-based definitions of "holder of an evidence of debt" superfluous and meaningless, subverting Mitchell's due process documentary proof requirements, and violating the Court's concern with "bare conclusory claims of ownership or lien." Id. Because this scheme does not adequately guard against the risk of wrongful or erroneous deprivation, §38-38-101(6)(b) cannot survive the strict Constitutional scrutiny under Mitchell, supra, and Doehr, supra, and is therefore Constitutionally defective on its face.

39.  If §38-38-101(6)(b) is determined to be unconstitutional, for reasons specified above, a Rule 120 Court will not be bound by a statutory provision that a party "shall be deemed" to have a non-existent endorsement or assignment.

> Independently of the status of §38-38-101(6)(b), a Rule 120 Court should still require evidence to support claims made in a "certification" or "statement" foreclosure under §§38-38-101(1)(b)(II) and (c)(II). The core components of judicial control over the process from beginning to end, and documentary proof of a party's right to foreclose, must accord with fundamental requirements of due process of law.

Mitchell, supra; Doehr, supra.

40. No Confirmation Deed [Plaintiff's Exhibit B] would exist but for the Orders authorizing and approving the sale pursuant to C.R.S. §38-38-105. If those Orders are the product of a Constitutionally defective statutory presumption, the statute that endows the deed with the status of prima facie evidence of truth of its recitals is also Constitutionally defective, in that it statutorily creates a "domino" deprivation of property without due process of law. The Rule 120 Order is not a final judgment, and is entered without prejudice to the homeowner filing an independent action for injunctive or other relief to challenge the validity of the foreclosure. A homeowner who files such an action will be faced with a defense that someone else now owns the subject home, and a claim under §38-38-504 that all recitals contained in the voidable trustee's deed are true. This effectively converts a homeowning defendant into a plaintiff and shifts the burden of proof onto the homeowning defendant before the case is concluded as a matter of law.

41. The statute directly conflicts with more than a century of Colorado precedent under which it is clear that the homeowner is the owner of the property, the foreclosing party held only a "lien" on the property (if the validity of the lien is proven with competent evidence), and ownership of the property cannot be determined until the conclusion of a homeowner's independent challenge to a foreclosure.

42. In an action to quiet title under C.R.C.P. Rule 105, ". . . the pertinent date fixing the rights of the parties is the date upon which the complaint is filed . . ." Fastenau v. Engel, 270 P.2d 1019, 1022 (Colo. 1954). Even if the complaint is filed after a Public Trustee's Deed has been issued, the Public Trustee's Deed may be voided if the homeowner prevails in vacating the non-adjudicated Order Authorizing Sale on which the Public Trustee's Deed is based.

43. Colorado is a "lien theory" state, which means that the homeowner holds title to the property, even while it is encumbered by a deed of trust, and the beneficiary of the deed of trust holds only a lien in the property, to wit:

> Mortgages, trust deeds, or other instruments intended to secure the payment of an obligation affecting title to or an interest in real property shall not be deemed a conveyance, regardless of its terms, so as to enable the owner of the obligation secured to recover possession of real property without foreclosure and sale, but the same shall be deemed a lien.

C.R.S. §38-35-117.

> A deed of trust in real property given as security for a debt is a mortgage. Morris v. Cheney, 81 Colo. 393, 395, 255 P. 987, 988 (1927). A mortgage is not a conveyance of a real property interest, because Colorado subscribes to a lien theory of mortgages. § 38-35-117, 10 C.R.S. (2001). Although *a deed of trust does not create an ownership interest in real property*, it does constitute a legal or equitable interest in real property for the purposes of the section 39-11-128(1)(a) notice requirement.

Columbus Investments v. Lewis, 48 P.3d 1222, 1225 (Colo. 2002) (*emphasis added*).

44. Colorado homeowners not only face the risk of total loss of real property in a foreclosure under the statutory provisions discussed herein, by a party that is not

required to produce evidence of its right to enforce a valid security interest in the property, but also face the risks of erroneous partial impairments of property rights that concerned the Court in Doehr. As soon as a foreclosing party who "claims to be" the holder of the evidence of debt files the Notice of Election and Demand with the Office of the Public Trustee to commence the foreclosure, the following occurs: (1) in accordance with C.R.S. §38-38-102, the Public Trustee promptly records the Notice of Election and demand in the office of the Clerk and Recorder where the property is located, thereby creating a cloud on title; (2) in accordance with C.R.S. §38-38-103(5)(a), the Public Trustee commences advertisement of the Notice of Election and Demand, which Notice includes the names of the foreclosing party who claims to be the holder of the evidence of debt, the names of the original grantors of the deed of trust, the legal description of the property being foreclosed and the date of the sale, thereby creating a stigma for the property and the owner, diminishing the market value of the property, and negatively impacting the homeowner's credit rating with credit reporting agencies. Distressed properties, whether bank-owned, pre-foreclosure or short sales not in foreclosure, sell at a significant discount compared to non-distressed properties.

45. Here, as in Doehr, supra, State procedures for enforcing a lien on real property, through the foreclosure procedures that are before this Court for review, are clearly "subject to the strictures of due process." Id. at 501 U. S., at 12, 111 S. Ct., at 2113.

46. The risks of erroneous deprivation of protected property interests through Colorado's Rule 120 foreclosure process are substantial. The Doehr Court found the risks to be substantial where enforcement of the lien was contingent on the outcome of a personal injury suit, and distinguished those from circumstances

involving enforcement of a lien on a debt, as in Mitchell, supra. Doehr, supra at
501 U. S., at 12-14, 111 S. Ct., at 2113-2114. The factors upheld in Mitchell, supra,
and expressly relied upon in the drafting of Rule 120 amendments, therefore
control in assessing the risks of erroneous deprivations of protected property
interests in Colorado foreclosures.

47.  As shown in the detailed review of statutory foreclosure procedures, infra, the
"certification" and "statement" provisions of Colorado's foreclosure statute bypass
the fundamental documentary evidence foundations on which Mitchell, supra,
and the Colorado Supreme Court, relied in upholding a Louisiana statute, in that
unsworn "certifications" and "statements:" (1) are nothing more than ". . . bare
conclusory claims of ownership or lien . . .," (2) do not constitute ". . . specific
facts shown by verified petition or affidavit. . .," (3) diminish the ". . . requisite
showing [that] must be made to a judge . . ." to a mere unsworn certification or
statement, (4) effectively place the homeowner ". . . at the unsupervised mercy of
the creditor and court functionaries such as Public Trustees who serve as mere
functionaries in accepting and recording certifications and statements, without
requiring authentication of any underlying evidence referenced in the certification
or statement. . .," (5) require a Rule 120 Court that strictly applies the statute to
authorize and approve an unopposed foreclosure sale based on an unsworn
certification or statement that "shall be deemed" pursuant to CRS §38-38-101(6)
(b) to constitute a missing endorsement or assignment, thereby rendering ". . .
judicial control of the process from beginning to end. . . " superfluous, and
increasing ". . . the risk that the ex parte procedure will lead to a wrongful taking. .
. .," (6) eliminate the requirement of ". . . [d]ocumentary proof [that] is particularly
suited for questions of the existence of a vendor's lien and the issue of
default. . . .," and (7) do not require the foreclosing party to ". . . prove[ ] the

grounds upon which the writ was issued.'"

Mitchell, supra at 416 U.S., at 616-618, 94 S. Ct., at 1904-1905.

48. The interests of the foreclosing party are protected in Colorado foreclosure statutes, and will not be impaired if the due process defects specified below are remedied by this Court. The foreclosing party may still enforce a valid lien on real property under the expedited public trustee foreclosure process that has been in effect in Colorado for more than a century – they will simply have to produce evidence to support their claims of right, as they were required to do until legislative enactment of the problematic "certification" and "statement" provisions in 2006. Due process requires, inter alia, "documentary proof" rather than "bare conclusory claims of ownership or lien" (Mitchell, supra at 416 U.S., at 616-618, 94 S. Ct., at 1904-1905); Colorado law required the same for more than a century before the enactment of the "certification" and "statement" provisions in 2006. If foreclosing parties choose not to pursue foreclosures under Rule 120, they may pursue a judicial foreclosure under C.R.C.P. Rule 105, so their right to enforce valid liens on real property will not be impaired.

49. Additionally, the State's interest in providing foreclosure processes will not be impaired by the Constitutional due process remedies requested herein. From Doehr:

> The State's substantive interest in protecting any rights of the plaintiff cannot be any more weighty than those rights themselves. Here the plaintiff's interest is de minimis. *Moreover, the State cannot seriously plead additional financial or administrative burdens involving predeprivation hearings when it already claims to provide an immediate post-deprivation hearing.*

Doehr, supra at 501 U. S., at 16, 111 S. Ct., at 2115 (*emphasis added*).

50. The State already provides for a Rule 120 "pre-deprivation" hearing under C.R.S. §38-38-105. Rule 120(d) expressly allows an independent "post-deprivation" action to challenge the Rule 120 order. Accordingly, ". . . the State cannot seriously plead additional financial or administrative burdens . . ." (id.) as a bar to restoration of due process protections to Rule 120 proceedings. The proceeding already exists (though in Constitutionally defective form), and will simply provide pre-deprivation due process protections to obviate the need for more expensive, and time consuming, post-deprivation proceedings. Furthermore, Colorado due process precedent already acknowledges the need for the relief sought herein:

> While we recognize that the Goodwins could have filed an independent action to enjoin the public sale, C.R.C.P. 120(d), the availability of a collateral remedy should not serve to divest the Goodwins of their opportunity to defend against the deprivation of their real property interest by showing that the parties seeking the order of sale were without authority to exercise the power of sale on which any order of sale necessarily would be predicated.

Goodwin v. District Court, 779 P.2d 837, 842 (Colo. 1989).

51. Finally, notably absent from the history of Rule 120, and from Mitchell, Matthews, and Doehr, is the approval of any process analogous to a mere "certification" by a foreclosing party, or a "statement" by that party's attorney, to substitute for evidence at any point in a Rule 120 proceeding. For such provisions, we must turn to the current version of C.R.S. §38-38-101, the statute of concern to this Court, and one of the statutes of concern to the plaintiff and other homeowners in the state.

**C. C.R.S. §38-39-102(3)(a)(I) Allows "Qualified Holders" to Release a Deed of Trust Without Producing the Original Evidence of Debt**

52. Another "domino" in the deprivation of property without due process of law occurs after a foreclosure based on only the "certification" and "statement" provisions of §38-38-101, when a "qualified holder" is allowed by C.R.S. §38-39-102(3)(a)(I) to release the homeowner's deed of trust without producing the original evidence of debt – just as it was allowed to foreclose without the original evidence of debt. The statute provides, in pertinent part:

> (3)(a)(I) Subject to the provisions of subparagraph (II) of this paragraph (a), with respect to either subsection (1) or (2) of this section, a holder of the original evidence of debt that is a qualified holder, as defined in section C.R.S. §38-38-100.3(20), may request the release of a deed of trust without producing or exhibiting the original evidence of debt. . .

C.R.S. §38-39-102(3)(a)(I).

53. The risk of deprivation in this instance is not only to the homeowner (whose deed may be released before an independent challenge of the foreclosure is completed), but also to the true holder of the evidence of debt, the beneficiary to the deed of trust, to any subsequent purchaser who relies on the release of the deed of trust, and other parties who may be affected by this cloud on title.

54. C.R.S. §38-38-100.3(20) defines special classes of plaintiffs in foreclosure proceedings vaguely calling them "Qualified holder"s. These classes of plaintiffs are granted special powers that are not available to other kinds of plaintiffs in civil cases. The powers granted to them eliminate the burden of proof according to the Constitutionally deficient C.R.S. §38-39-102(3)(a)(I). By enabling a release of the deed of trust prior to judgment, defendant homeowners are converted into plaintiffs in a single matter at law.

**D.  C.R.S.  §38-38-504 Deems a Public Trustee's Deed to be Prima Facie Evidence of Statutory Compliance and Truth**

55. The Colorado Legislature not only created a framework that allows a foreclosing party to ". . . obtain an order authorizing sale . . ." (§38-38-105) with only "bare conclusory claims of ownership or lien" (Mitchell, supra). It went further in elevating bare "certifications" or "statements" to the status of "truth," and a presumption of statutory compliance, upon issuance of the foreclosure deed authorized by a Colorado District Court order, to wit:

> Any deed executed by an officer or other official under this article *shall be prima facie evidence of compliance* with all statutory requirements for the sale and execution of the deed and *evidence of the truth of the recitals contained in the deed.*

C.R.S. §38-38-504 (*emphasis added*).

**E.  C.R.S. §13-40-104(1)(f) Allows Eviction Based Solely on a Foreclosure Order that is Not a Final Judgment as a Matter of Law**

56. Similarly, C.R.S. §13-40-104(1)(f) creates a "domino" deprivation of property without due process of law, by allowing a homeowner to be evicted from a home – based solely on the issuance of the public trustee's deed – even where the validity of the deed may be at issue in an independent action that challenges the validity of the Order that produced the public trustee's deed. The Statute provides, in pertinent part:

> (1) Any person is guilty of an unlawful detention of real property in the following cases:
>
> . . .
>
> (f) When the property has been duly sold under any power of sale, contained in any mortgage or trust deed that was executed by such

person, or any person under whom such person claims by title subsequent to date of the recording of such mortgage or trust deed, and the title under such sale has been duly perfected and the purchaser at such sale, or his or her assigns, has duly demanded the possession thereof;

C.R.S. §13-40-104(1)(f).

### F. C.R.S. §38-38-101(2) and §38-39-102(3)(a)(I) Bar Adequate Remedies to Parties Damaged by Constitutionally Defective Foreclosures

57. In the event of an improper foreclosure, C.R.S. §38-38-101(2) provides for a remedy allowing compensation for wrongful deprivation of property:

. . .

limited to actual economic loss suffered together with any court costs and reasonable attorney fees and costs incurred in defending a claim brought as a direct and proximate cause of the failure to produce the original evidence of debt, but such indemnity shall not include, and *no claimant shall be entitled to, any special, incidental, consequential, reliance, expectation, or punitive damages of any kind*. A qualified holder acting as agent, nominee, or trustee shall be liable for the indemnity pursuant to this subsection (2).

C.R.S. §38-38-101(2) (*emphasis added*).

. . .

The indemnity granted by this paragraph (a) is limited to actual economic loss suffered and any court costs and reasonable attorney fees and costs incurred in defending a claim brought as a direct and proximate result of the failure to produce the original evidence of debt, but the indemnity does not include and no claimant is entitled to any special, incidental,

consequential, reliance, expectation, or punitive damages.

C.R.S. §13-40-104(1)(f).

### III. A History of Action in Times of Economic Distress

58. In Home Building & Loan Association v Blaisdell, 290 U.S. 398 (1934) the Supreme Court upheld a state-legislated foreclosure moratorium during the "Great Depression," to protect the interests of real property owners during a time of . . .

> . . . economic emergency which threaten[s] the loss of homes and lands which furnish those in possession . . . necessary shelter . . . [from] . . . corporations, such as insurance companies, banks, and investment and mortgage companies . . .

Id. at 444-446, passim [foreclosure moratorium did not violate Contracts Clause].

59. The significance of Blaisdell is not that it upheld a moratorium on foreclosures, but that it did so on ". . . mortgages of unquestionable validity . . ." (id. 445) by parties who were ". . . not seeking homes . . . [but only] . . . the reasonable protection of their investment security. . ." (id. 444-446, passim). In stark contrast, foreclosing parties these days aggressively seek Colorado homes, under a Colorado statute that allows them do so based on a mere "certification" or "statement" that they have a right to do so, with no evidence that they even hold a valid security interest, or are the real party in interest to enforce it. The Blaisdell Court's "mortgages of unquestionable validity" may have been replaced by "certifications" and "statements" parading as evidence, but this Court's Article III jurisdiction to effect Constitutional remedies requested herein remains intact.

**FIRST CLAIM FOR RELIEF AND SUPPORTING FACTUAL ALLEGATIONS**

**"Real Party in Interest" is the Threshold Question**

60. In Colorado Case No. 13CV30104, all actions were brought against Wirth in the name of Nationstar Mortgage, LLC. See Exhibit A. After the above described ruling against Wirth in the Rule 120 hearing on December 3, 2013, the Public Trustee's foreclosure sale No. 2013-0051 was originally scheduled for December 18, 2013. On January 8, 2014, a Confirmation Deed assigned to Nationstar Mortgage, LLC (as both grantor and grantee) was recorded by the Public Trustee on January 8, 2014.

61. On January 6, 2014, Mary Hager or one of her representatives posted a notice [Exhibit C] on Wirth's home stating that Fannie Mae (Federal National Mortgage Association or FNMA) was the "legal owner(s) of the property located at 36 Iris Drive Bailey CO 80421."

62. Representatives of FNMA also posted Demand for Possession papers [Exhibit D] on the property on or about January 30, 2014. The Demand for Possession is stamped and signed by Cynthia Lowery-Graber (Atty # 34145) and signed as Attorneys for the Plaintiff. The plaintiff cited in this paper was not Nationstar, but FNMA. If there would be any doubt as to whether the paper delivered as shown in Exhibit D has cited FNMA by mistake, Cynthia Lowery-Graber also caused another Demand for Possession [Exhibit G] to be delivered to the Plaintiff's home on March 31, 2014 citing FNMA as the new owner of the Plaintiff's property.

63. Nationstar Mortgage, LLC is not the same entity as FNMA. If Nationstar was not the real party in interest then Nationstar was obligated to reveal the real party in interest and to prove that they were acting as an executor, administrator, guardian, conservator, trustee of an express trust, or such on behalf of FNMA in Colorado Case No. 13CV30104 pursuant to Colorado Rules of Civil Procedure

(CRCP) 17(a).

64. Even as of the writing of this amended complaint, Wirth cannot be sure of the real party in interest. Nationstar and CLG defendants effectively hid this information from the Colorado District Court and Wirth by exploiting the Constitutional deficiencies as described in ¶26-50, supra. For justice to be served in any case the real party in interest must be known as is plainly stated in ¶37 referring to Colo.Rule.Civ.P 17.

65. Therefore, CRS  §§38-38-101(1)(b)(II) and (c)(II) should be repealed and the judgment in Colorado Case No. 13CV30104 should be vacated.

**SECOND CLAIM FOR RELIEF AND SUPPORTING FACTUAL ALLEGATIONS**

**Colorado Statutes are Patently Unconstitutional, Enabling Presumptions to be Substituted in Lieu of Evidence**

66. Castle Law Group (CLG) commenced foreclosure proceedings on behalf of NationStar, LLC on July 26, 2013 against Wirth's home at 36 Iris Drive, Bailey, Colorado 80421 (Colorado Case No. 13CV30104). Wirth contested the foreclosure at a Rule 120 hearing held on December 3, 2013 during which a CLG attorney, Cynthia Lowery-Graber, produced computer print outs as purported evidence that Wirth owed NationStar, LLC money. Wirth objected to the introduction of these items on the grounds that: 1. the items were not included in any discovery prior to the hearing thus depriving Wirth of any opportunity to question their authenticity, 2. computer print outs may be created on a printer by anyone to say anything and do not constitute proper evidence. Computer print outs not accompanied by an affidavit or an oath are no better than hearsay, which should never be admissible as evidence. Being that the computer print outs were not accompanied by an affidavit or sworn source, admitting them deprived Wirth of every opportunity to identify and question their source.  Defendant Stephan A. Groome allowed the computer print outs in his capacity as Colorado 11th District Court Judge.

67. During the Rule 120 hearing, the CLG attorney also brought forth a purported note. See Exhibit E. Wirth observed that the note appeared to be an agreement with a mortgage lender named Countrywide and that it had not been transferred by indorsement to NationStar, LLC or any other entity. Wirth questioned NationStar employee Rachel Hook who confessed that there was no indorsement to NationStar, LLC or any other entity.

68. The CLG attorney argued that the note was "indorsed in the blank", which is

jargon used to obfuscate the fact that there are no indorsements. Wirth argued that he should be allowed an affirmative defense and that the party attempting to deprive him of his home and property had the burden of proof and must present a note that has been expressly indorsed from the transferer to the transferee. The Constitutionally deficient Colorado Statutes were then applied by Judge Groome to violate Wirth's right to an affirmative defense as described in ¶22-51, supra.

69. The Constitutional deficiencies of CRS §38-38-101(6)(b) violate the rights of defendant homeowners by forcing the defendant to prove that nonexistent evidence does not exist, logically impossible burden.

70. The Tenth Circuit Court of Appeals in Case No. 11-1232 (Exhibit F) has already ruled that the absence of expressed indorsements must be considered the same as an absence of evidence in foreclosure actions and bankruptcy.

71. Therefore, CRS §38-38-101(6)(b) should be repealed and the judgment in Colorado Case No. 13CV30104 should be vacated.

**THIRD CLAIM FOR RELIEF AND SUPPORTING FACTUAL ALLEGATIONS**

**C.R.S. §38-39-102(3)(a)(I) Allows a Deed of Trust to be Released Without Producing the Original Evidence of Debt**

72. As described in ¶52-54 supra, C.R.S. §38-39-102(3)(a)(1) allows a deed of trust to be released without showing original evidence of debt. If Constitutionally deficient statutes cited in the First and Second Claims were to be repealed this statute would enable the Constitutional rights of defendant homeowners to be further violated through another statutory route. C.R.S. §38-39-102(3)(a)(1) grants state judicial powers to private entities classified under C.R.S. §38-38-100.3(20). The state power granted is to enable these private entities to order a Public Trustee to release any Deed of Trust without producing original evidence of debt.

73. In ordering any Public Trustee to release a Deed of Trust without any hearing on the matter, the private entities (under CRS §38-38-100.3(20)) are engaging in "state action within the meaning of the 14th Amendment".

Nixon v. Condon - 286 U.S. 73 (1932)

74. As such, these statutes must be subjected to strict scrutiny. While there may be private concerns involved, there is no legitimate government purpose in facilitating the removal of people from their homes. On the contrary, there is a public interest in enabling everyone to be decently housed. There is no legitimate governmental purpose in delegating to private banks, lenders, or mortgage servicers whether regulated or not, any powers that should be solely exercised by the state courts under the Constitutional restraints of the 5th and 14th Amendments.

75. The effect of CRS §38-39-102(3)(a)(1) is to deprive defendant homeowners of their property without a hearing and to convert them from defendants into

plaintiffs under a single matter at law. A procedure, whether by rules or statute, that converts a defendant into a plaintiff under a single matter of law shifts the burden of proof to the other side. Once the burden of proof has been swapped, homeowning defendants must then prove that non-existent evidence does not exist, a logically impossible burden on any defendant that turns what may appear to be Due Process to a casual observer into a legal sham where conclusions are drawn prior to the presentation of evidence.

76. CRS §38-38-100.3(20) establishes a nexus of state and private corporate power to the detriment of property owners in Colorado. The apparent purpose of this statute is to circumvent the judicial process by removing the power to deprive US citizens of real property from the judiciary branch of government and handing it to the private entities listed therein. This statute encourages and further facilitates the Constitutionally prohibited deprivations described in the First and Second Claims.

77. As such, these statutes are Constitutionally deficient under both the Equal Protection and Due Process Clauses of the 5th and 14th Amendments.

78. Therefore, CRS §38-39-102(3)(a)(1) and CRS §38-38-100.3(20) should be repealed.

## FOURTH CLAIM FOR RELIEF AND SUPPORTING FACTUAL ALLEGATIONS

### Defendant Homeowners are Criminalized

79. Under the statutes as described in ¶56, supra, any homeowner with a mortgage in Colorado may be unduly criminalized after their having their Constitutional rights violated per the First, Second, and Third Claims. C.R.S. §13-40-104(1) states, "Any person is guilty of an unlawful detention of real property in the following cases:"(f) "When the property has been duly sold under any power of sale, contained in any mortgage or trust deed that was executed by such person, or any person under whom such person claims by title subsequent to date of the recording of such mortgage or trust deed, and the title under such sale has been duly perfected and the purchaser at such sale, or his or her assigns, has duly demanded the possession thereof;"

80. A homeowner may pursue (as a plaintiff) independent action in the same Colorado District Courts that have already ruled against the homeowner as cited in the First, Second, and Third Claims above. This is tantamount to asking a court to admit wrong doing and to provide conflicting rulings in a separate procedure concerning the same matter at law. A ruling in such an action is extremely unlikely to be in favor of protecting the homeowner's interest.

81. A Confirmation Deed was filed by the Park County Public Trustee on January 8, 2014 naming Nationstar Mortgage, LLC as the grantee. Taken together with the First and Second Claims, this statute is a direct threat to the liberty of Wirth and other aggrieved homeowners to both remain in their homes and to be free from armed invasions and prison.

82. Therefore, the Court should enjoin any further actions against Colorado homeowners until the Constitutional questions have been resolved and repeal C.R.S. §13-40-104(1)(f).

### FIFTH CLAIM FOR RELIEF AND SUPPORTING FACTUAL ALLEGATIONS

### Damages are Unconstitutionally Limited

83. C.R.S. §38-38-101(2) and §38-39-102(3)(a)(I), described in ¶57 supra, bar adequate remedies to homeowners damaged by improper foreclosures as described in the First, Second, Third, and Fourth Claims.

84. C.R.S. §38-38-101(2) certainly puts an upper limit on the amount that may be recovered from a fraudulent foreclosure action, to wit, "The indemnity granted by this subsection (2) shall be limited to actual economic loss suffered together with any court costs and reasonable attorney fees and costs incurred in defending a claim brought as a direct and proximate cause of the failure to produce the original evidence of debt, but such indemnity shall not include, and no claimant shall be entitled to, any special, incidental, consequential, reliance, expectation, or punitive damages of any kind. A qualified holder acting as agent, nominee, or trustee shall be liable for the indemnity pursuant to this subsection (2)."

85. C.R.S. §38-38-101(2) maintains the fiction that the homeowner "defending a claim brought as a direct and proximate cause of the failure to produce the original evidence of debt" has somehow remained a defendant in the matter at law. This illustrates the logical inconsistency necessary to sustain what may only be characterized as a legally contradictory and impossible set of requirements for that defendant.

86. C.R.S. §38-39-102(3)(a)(I) reiterates C.R.S. §38-38-101(2), supra, indemnifying the Public Trustee.

87. A core component of the Louisiana statutes upheld by the Mitchell, supra Court was that:

The debtor may immediately seek dissolution of the writ, which must be ordered unless the creditor proves the grounds for issuance (existence of the debt, lien,

and delinquency), failing which the court may order return of the property and assess damages, including attorney's fees, in the debtor's favor.

Mitchell, supra at 416 U.S. 606, 94 S. Ct. 1899.

88. The Court considered the potential for an award of damages and attorneys' fees to the debtor to contribute – along with the requirement of competent documentary evidence – to minimizing the risk that a writ would be wrongfully issued. Id. at 416 U.S. 609-610, 617, 94 S. Ct. 1901, 1905. Attorneys' fees were allowed independently or as an element of damages (id. at 416 U.S. 622, 94 S. Ct. 1907). Damages were ". . . not restricted to pecuniary loss. They may encompass injury to social standing or reputation as well as humiliation and mortification." Id. at 416 U.S. 607, n. 8, 94 S. Ct. 1899, n. 8.

89. The Doehr Court, through four concurring justices, went further, in discussing the inadequacy of a bond to remedy damages a homeowner would suffer due to a wrongful attachment on real property.

"The necessity for at least a prompt postattachment hearing is self-evident because the right to be compensated at the end of the case, if the plaintiff loses, for all provable injuries caused by the attachment is inadequate to redress the harm inflicted, harm that could have been avoided had an early hearing been held. An individual with an immediate need or opportunity to sell a property can neither do so, nor otherwise satisfy that need or recreate the opportunity. The same applies to a parent in need of a home equity loan for a child's education, an entrepreneur seeking to start a business on the strength of an otherwise strong credit rating, or simply a homeowner who might face the disruption of having a mortgage placed in technical default. The extent of these harms, moreover, grows with the length of the suit. . ."

90. Many state attachment statutes require that the amount of a bond be anywhere from the equivalent to twice the amount the plaintiff seeks. See, e.g., Utah Rule of Civ.Proc. 64C(b). These amounts bear no relation to the harm the defendants might suffer even assuming that money damages can make up for being removed from their homes by threat or actual use of armed force. Reliance on a bond does not sufficiently account for the harms that flow from the abuses in the First, Second, and Third Claims to excuse a State from reducing that risk.

Doehr, supra at 501 U.S. 22-23, 111 S. Ct. 2118-2119.

91.  Appropriate damages, and attorneys' fees, are clearly core components of remedies for due process violations. Colorado's statutes fall dismally short of these standards, by allowing only actual economic loss, no attorneys' fees, and by expressly excluding non-economic damages.

92. Therefore, C.R.S. §38-38-101(2) and §38-39-102(3)(a)(I) should be repealed.

**SIXTH CLAIM FOR RELIEF AND SUPPORTING FACTUAL ALLEGATIONS**

93. As described in the First, Second, and Third Claims, when the Constitutional deficiencies Colorado foreclosure statutes exploited, the foregoing presumptions are elevated to the status to truth by C.R.S. §38-38-504 described in ¶55 supra: "Any deed executed by an officer or other official under this article *shall be prima facie evidence of compliance* with all statutory requirements for the sale and execution of the deed and *evidence of the truth of the recitals contained in the deed*."

C.R.S. §38-38-504 (*emphasis added*).

94. In that homeowners defending their property are criminalized per the Fourth Claim, C.R.S. §38-38-504 proves that the Constitutional deficiencies cited in the First, Second, and Third Claims require strict scrutiny in Due Process analysis and will also fail strict scrutiny analysis.

95. Therefore, C.R.S. §38-38-504 should be repealed.

## REQUEST FOR RELIEF

Wherefore, the plaintiff respectfully requests:

96. Repeal CRS §§38-38-101(1)(b)(II) and (c)(II) for enabling wrongful deprivations of real property in violation of the fundamental rules of evidence and due process, as described in the First and Second Claims.

97. Repeal C.R.S. §38-39-102(3)(a)(I) for enabling wrongful deprivations as described in the Third Claim.

98. Repeal  C.R.S.  §38-38-504 for enabling a presumption of evidence against home owners defending their real property interests regardless of the existence of actual evidence as described in the Sixth Claim.

99. Repeal C.R.S.  §38-38-101(2) and §38-39-102(3)(a)(I) for Unconstitutionally limiting damages to real property owners as described in Fifth Claim.

100. Repeal C.R.S. §13-40-104(1)(f) for criminalizing homeowners as described in the Fourth Claim.

101. Enjoin any criminalization from being applied to homeowners under C.R.S. §13-40-104(1)(f) while also enjoining any and all police or other forceful actions from being taken against anyone defined under C.R.S. §13-40-104(1)(f) as described in the Fourth Claim.

102. Enjoin any further Rule 120 proceedings done under CRS §§38-38-101(1) (b)(II) and (c)(II), and C.R.S. §38-39-102(3)(a)(I) as described in the First, Second, and Third Claims.

103. Vacate the judgment of the 11th District Court of Colorado case number 2013CV030104 and instruct Colorado to vacate judgments made under CRS §§38-38-101(1)(b)(II) and (c)(II), C.R.S. §38-39-102(3)(a)(I).

Respectfully amended this 24th day of March 2014.


s/Martin Thomas Wirth

**Martin Thomas Wirth**

Plaintiff pro se

36 Iris Drive

Bailey, Colorado 80421

303-816-1054

martin.wirth@specialtywrench.com