**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**


Civil Action No. **13-CV-03309-REB-KMT**


MARTIN THOMAS WIRTH, Plaintiff,

v.

JOHN HICKENLOOPER, In his Official Capacity as Governor of Colorado,

NATIONSTAR MORTGAGE, LLC. (Nationstar),

JAY BRAY, Chief Executive of Nationstar in his Corporate and Individual Capacities,

FEDERAL NATIONAL MORTGAGE ASSOCIATION (FNMA),

TIMOTHY J. MAYOPOULOS, Chief Executive of FNMA in his Corporate and Individual Capacities,

STEPHEN A. GROOME, Judge - 11th District Court of Colorado

ARTHUR R. SMITH, Senior Judge - Retired from Mesa County Court

THE CASTLE LAW GROUP, LLC. (CLG),

CYNTHIA LOWERY-GRABER, CLG Attorney,

DEANNA WESTFALL, CLG Attorney,

BRITNEY BEALL-EDER, CLG Attorney,

CHRISTOPHER T. GROEN, CLG Attorney,

LAWRENCE E. CASTLE, Chief Executive of CLG in his Corporate and Individual Capacities,
Defendants.

## SUPPLEMENTAL COMPLAINT

### PARTIES

1. Plaintiff, MARTIN THOMAS WIRTH, is a citizen of the United States of America who resides at the following address:

   36 Iris Drive

   Bailey, Colorado 80421

2. Defendant, JOHN HICKENLOOPER, is a citizen of the United States of America and Governor of the State of Colorado located at the following address:

   136 State Capitol

   Denver, CO 80203-1792

3. Defendant, NATIONSTAR MORTGAGE, LLC, is a Texas corporation located at the following address:

   350 Highland Drive

   Lewisville, TX 75067

4. Defendant, JAY BRAY, Chief Executive Officer of Nationstar Mortgage, LLC located at the following address:

   350 Highland Drive

   Lewisville, TX 75067

5. Defendant, FEDERAL NATIONAL MORTGAGE ASSOCIATION (FNMA), is a government sponsored enterprise of the United States of America located at the following address:

      3900 Wisconsin Avenue, NW

      Washington, DC 20016-2892

6. Defendant, Timothy J. Mayopoulos, Chief Executive Officer of FNMA, located at the following address:

      3900 Wisconsin Avenue, NW

      Washington, DC 20016-2892

7. Defendant, STEPHEN A. GROOME, is a citizen of the United States of America and Judge of the 11th District Court of Colorado located at the following address:

      300 4th Street

        Fairplay, CO 80440

8. Defendant, ARTHUR R. SMITH, is a citizen of the United States of America and a designated judge of the Senior Judge Program in Colorado and may be located through information obtained at the following address:

      Colorado Supreme Court

      2 East 14th Avenue

      Denver, CO 80203

9. Defendant, MICHELLE MILLER, is a citizen of the United States of America Public Trustee of Park County located at the following address:

      501 Main Street

        Fairplay, CO 80440

10. Defendant, THE CASTLE LAW GROUP, LLC, is a Colorado corporation located at the following address:

      999 18th Street, Suite 2201

      Denver, CO 80202

11. Defendant, CYNTHIA LOWERY-GRABER, is a citizen of the United States of America located at the following address:

> 999 18th Street, Suite 2201
>
> Denver, CO 80202

12. Defendant, DEANNA WESTFALL, is a citizen of the United States of America located at the following address:

> 999 18th Street, Suite 2201
> Denver, CO 80202

13. Defendant, BRITNEY BEALL-EDER, is a citizen of the United States of America located at the following address:

> 999 18th Street, Suite 2201
>
> Denver, CO 80202

14. Defendant, CHRISTOPHER T. GROEN, is a citizen of the United States of America located at the following address:

> 999 18th Street, Suite 2201
> Denver, CO 80202

15. Defendant, LAWRENCE E. CASTLE, is a citizen of the United States of America located at the following address:

> 999 18th Street, Suite 2201
>
> Denver, CO 80202

16.

Pursuant to Federal Rule of Civil Procedure 15(d), Plaintiff Martin Thomas Wirth ("Plaintiff" or "Wirth") files this First Supplemental Complaint, which alleges the occurrence of jurisdictional facts occurring after the original Complaint was filed and

pleads claims under  28 USC § 1331, 1348, 1349, 1361 et seq., against the Defendants that could not have been pleaded before those jurisdictional facts occurred. Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1. The Court has subject matter jurisdiction over Plaintiff's claims under 28 USC § 1331, 1348, 1349, 1361.

2. The Court has personal jurisdiction over all of the Defendants.

3. Venue is proper in the District of Colorado because the Plaintiff's property is located in Colorado and the events which give rise to this action occurred within this district and the Plaintiff resides within this district.

## NATURE OF THE ACTION

4. Colorado's foreclosure statutes presume that non-existent indorsements or assignments exist based solely on an unsworn "certification" or "statement" by the foreclosing party's attorney. This presumption contradicts and negates Constitutional requirements of due process, equal protection, and fundamental rules of evidence. The statutes [#56-1, ¶¶19-59] violate the Due Process and Equal Protection Clauses of the Fourth and Fourteenth Amendments of the US Constitution in so far as evidentiary and due process protections to home and real property owners have been abolished by the Colorado Statutes in their present form.

5. The Colorado foreclosure statutes incite a variety of frauds and other forms of malfeasance. Incontrovertible, uncontested, and duplicated proof of such crimes resides in the Exhibits that may be found in two cases in Colorado, the one before this Court and the one in the Park County, Colorado Court [14C030068].

## BACKGROUND

6. The Plaintiff was deprived of Due Process and Equal Protection according to the 4th and 14th Amendments. Colorado Rule of Civil Procedure 17(a) requires that those bringing actions to Colorado Courts be the Real Party in Interest. This is the same as Federal Rule of Civil Procedure 17(a) as it pertains to United States Courts. The burden of proving itself to be the Real Party in Interest was lifted from Nationstar and substituted with a logically impossible burden put on the Plaintiff to prove a negative, to wit: Nationstar was not a Real Party in Interest evidenced by the fact that the purported Mortgage Note had not been indorsed to Nationstar Mortgage, LLC. or any lender other than CountryWide Home Loans, Inc.

7. Certain Colorado Revised Statutes (CRS) under Title 38 enable an Unconstitutionally low threshold of proof. A fraud may qualify as a State Actor through CRS §38-38-100.3(20) & (10). CRS §38-38-101(6)(b) and other sections then empower these State Actors to automatic judgment awards in Rule 120 procedures. However, any civil action fraudulently executed by misrepresenting ownership interest in land still violates CRS §18-5-302(2) [¶10 infra].

## STATEMENT OF FACTS

8. Despite notice of ligitation in the US Court, an illegal Demand for Possession,

[Exhibit #56-5], in the name of the Defendant, FNMA, was signed on January 7, 2014 by Cynthia Lowery-Graber #34145 with the complicit approval of Deanna Westfall #23449, Britney Beall-Eder #34935, and Christopher T. Groen #39976.

9.  Despite notice of ligitation in the US Court, a Confirmation Deed, [Exhibit #56-3], was granted to Nationstar on January 8, 2014, the day after the illegal Demand for Possession [¶8, supra] was dated in the name of FNMA. This Confirmation Deed is contested.

10. FNMA and Nationstar are entirely separate legal entities. The Demand for Possession issued by CLG [¶8, supra] in the name of FNMA was fraudulent under CRS §18-5-302(2) which states that:

> Any person who knowingly makes a false representation as to the existence of an ownership interest in land which he has as a seller or which his principal has, and which is relied upon, commits a class 6 felony.

11. Another Demand for Possession, dated March 18, 2014 was served on the Plaintiff. A Special Warranty Deed [Exhibit #59-1] was issued on the same date, March 18, 2014, and was notarized in the state of Texas purportedly conveying the Plaintiff's property from Nationstar to FNMA for consideration of $133,818.99. CLG had already posted a written notice on January 7, 2014 [¶8, supra] stating that FNMA had an ownership interest in the Plaintiff's property. Therefore, the second Demand for Possession taken together with Exhibit #59-1 only proves that Nationstar through CLG committed a felony as described above in ¶10 or that they sold interest in the property twice to FNMA in violation of CRS §18-5-302(1) which states that:

> Any person who, after once selling, bartering, or disposing of any land, or executing any bond or agreement for sale of any land, again sells, barters, or disposes of the same tract of land or any part thereof, or executes any bond or agreement to sell or barter or dispose of the same land or any part thereof, to any other person, with intent to defraud, commits selling land twice. Selling land twice is a class 5 felony.

12. The illegal Demand for Possession issued by CLG Defendants on Jan. 7, 2014 [¶8, supra] comprised at least one count in violation 18 USC §1018 which states:

> Whoever, being a public officer or other person authorized by any law of the United States to make or give a certificate or other writing, knowingly makes and delivers as true such a certificate or writing, containing any statement which he knows to be false, in a case where the punishment thereof is not elsewhere expressly provided by law, shall be fined under this title or imprisoned not more than one year, or both.

13. CLG represented both FNMA and Nationstar concurrently. FNMA instructed its agents in CLG to post the illegal Demand for Possession [¶8, supra] before Nationstar had been granted the Confirmation Deed [Exhibit #56-3]. This violated CRS §18-5-302(2) [¶8, supra] because the Plaintiff was the legal owner of the property even under the contested version of events offered by Nationstar and FNMA. The Demand for Possession [Exhibit #56-5] was relied upon in the case before this Court as evidence showing that Nationstar was not the Real Party in Interest.

14. Neither Nationstar nor its agents in CLG contested the propriety of the unlawful

FNMA Demand for Possession [Exhibit #56-5]. Demand for Possession [Exhibit #56-5] issued on January 7, 2014 self-evidently contradicts the Special Warranty Deed [Exhibit 59-1] issued in the State of Texas on March 18, 2014. The Defendants used at least one specific interstate wire transaction comprising at least one count in violation of 18 USC §1343 concerning Wire Fraud. This shows the complicity of Nationstar and CLG as active and knowing participants in felony violation of CRS §18-5-302(2), which is a violation of CRS §18-2-201(1) that states,

> A person commits conspiracy to commit a crime if, with the intent to promote or facilitate its commission, he agrees with another person or persons that they, or one or more of them, will engage in conduct which constitutes a crime or an attempt to commit a crime, or he agrees to aid the other person or persons in the planning or commission of a crime or of an attempt to commit such crime.

15. In People v. Hood, 878 P.2d 89 (Colo. App. 1994), the Colorado Court of Appeals ruled that pursuant to CRS §18-2-201 "the essence of the crime of conspiracy is the illegal agreement to commit a crime plus at least one overt act in furtherance of that agreement."

16. The transaction involved in these unlawful activities is real property valued at over $10,000. Therefore, they also violated sections of 18 USC §§1956,1957 concerning racketeering activities.

**Table1. Summary of Violations**

December 3, 2013 to March 18, 2014

| Date | Location | Violation | Offense Description |
|---|---|---|---|
| December 3, 2013 | Park County, Colorado | CRS §18-5-302(2) | Misrepresenting ownership interest in land |
| January 7, 2014 | Park County, Colorado | CRS §18-5-302(2) | Misrepresenting ownership interest in land |
| January 7, 2014 | Park County, Colorado | USC 18-§1018 | Making and delivering a false certificate |
| March 18, 2014 | Denton County, Texas | CRS §18-5-302(1) | Selling land twice |
| March 18, 2014 | Denton County, Texas & Denver, Colorado & Park County, Colorado | USC §18-1343 | Wire fraud |

| December 3, 2013 to present date | Denton County, Texas & Denver, Colorado & Park County, Colorado | CRS §18-2-201(1) | Conspiracy |
|---|---|---|---|
| December 3, 2013 to present date | Denton County, Texas & Denver, Colorado & Park County, Colorado | USC 18 §1956 USC 18 §1957 | Transactions in property derived from unlawful activity |

### THE DOCTRINE OF PRIOR EXCLUSIVE JURISDICTION

17. Along with the Constitutional Question, the property in contention is now under the jurisdiction of this Court. Opening another case to take the Plaintiff's property is a clear and egregious violation of a long-established Doctrine of the United States Supreme Court. The Doctrine of Prior Exclusive Jurisdiction holds that, "when one court is exercising in rem jurisdiction over a res, a second court will not assume in rem jurisdiction over the same res." Marshall v. Marshall, 547 U.S. 293, 311 (2006)

18. In Penn General Casualty Co. v. Pennsylvania ex rel. Schnader, 294 U.S. 189, 195-196 (1935) the Supreme Court of the United States ruled that "To avoid unseemly and disastrous conflicts in the administration of our dual judicial

system, see Peck v. Jenness, 7 How. 612, 625; Taylor v. Carryl, 20 How. 583, 595; Freeman v. Howe, 24 How. 450, 459; Buck v. Colbath, supra, 341; Farmers' Loan & Trust Co. v. Lake Street Elevated R. Co., supra, 61, and to protect the judicial processes of the court first assuming jurisdiction, Wabash R. Co. v. Adelbert College, supra, 54; Palmer v. Texas, 212 U.S. 118, 129, 130, the principle, applicable to both federal and state courts, is established that the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other."

### THE DOCTRINE OF CLEAN HANDS

19. Those who seek relief in a court of Equity must come with clean hands in all matters "immediately and necessarily related to the equity that the Plaintiff [FNMA, et al] seeks in the litigation" per General Development Corp v. Binstein, 743 F.Supp. at 1134; see also Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 245, 54 S.Ct. 146, 147, 78 L.Ed. 293 (1933).

20. There is a long history of precedent that supported dismissal of the FED case brought by FNMA based on the malfeasance stated above in ¶¶8-15. In Deweese v. Reinhard, 165 U.S. 386, 390 (1897), the United States Supreme Court stated that "Upon his own showing, the plaintiff's conduct demands condemnation, rather than commendation."

21. The United States Supreme Court then ruled that "A court of equity acts only when and as conscience commands; and if the conduct of the plaintiff be offensive to the dictates of natural justice, then whatever may be the rights he possesses, and whatever use he may make of them in a court of law, he will be held remediless in a court of equity."

22. In Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 245, 54 S.Ct. 146, 147, 78 L.Ed. 293 (1933) the plaintiff in that case contended that "the maxim does not apply unless the wrongful conduct is directly connected with and material to the matter in litigation, and that, where more than one cause is joined in a bill and plaintiff is shown to have come with unclean hands in respect of only one of them, the others will not be dismissed."

23. United States Supreme Court disagreed stating "'that whenever a party who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him in limine; the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy.' Pomeroy, Equity Jurisprudence (4th Ed.) § 397"

## UNLAWFUL EVICTION PROCEEDINGS

24. Despite notice of the Complaint and Jurisdiction of this Court, FNMA brought a unlawful forcible entry and detainer proceeding (FED) against the Plaintiff, Wirth, for occupying his own property, home, and place of business [Colorado Case No. 14C030068].

25. In his answer, the Plaintiff, Wirth, notified the Park County Court that the property was in contention under the jurisdiction of this United States Court. In the hearing on April 17, 2014 the County Court ordered that both parties prepare briefs to show whether or not the County Court had the authority override the jurisdiction and authority of the United States Court. The County Court also denied Wirth's request for a jury trial [¶26, infra].

26. In his answer to the FED, Wirth also brought the malfeasance of the Defendants [¶¶8-16, supra] to the notice of the Park County Court. The Plaintiff, Wirth, asked the County Court to:

"1. Find that the exhibits show probable cause that CRS §18-5-302(2) and/or CRS §18-5-302(1) have been violated together with CRS §18-2-201(1) and issue warrants for the arrest of the following individuals:

> Deanna Westfall #23449
>
> Britney Beall-Eder #34935
>
> Christopher T. Groen #39976
>
> Cynthia Lowery-Graber #34145
>
> Jay Bray, Chief Executive Officer of Nationstar Mortgage, LLC located at the following address:
>
> 350 Highland Drive
>
> Lewisville, TX 75067
>
> Timothy J. Mayopoulos, Chief Executive Officer of FNMA, located at the following address:
>
> 3900 Wisconsin Avenue, NW
>
> Washington, DC 20016-2892

2. Void the sale of the Defendant's [Wirth's] property,

3. Dismiss this Complaint [FED] with prejudice, or

4. Grant the Defendant a jury trial."

27. The County Court sent the Plaintiff, Wirth, a request on May 21st, 2014 to reschedule the May 27th, 2014 hearing that had been scheduled at the end of the hearing of April 17th, 2014. The new hearing was scheduled for May 29th, 2014. During the conference of May 22nd, 2014, the Plaintiff, Wirth, was informed that a senior judge would be hearing the case.

28. No explanation was offered as to why the regular County Court judge was removed from the case. The Plaintiff, Wirth, was not given an opportunity to ask why the Park County Court judge would recuse himself nor given the opportunity to consent pursuant to CRS §13-1-122. No complaint against the presiding Park County Court Judge had come to the attention of the Plaintiff. The Park County Court Judge had never represented the Plaintiff, nor was it mentioned whether the judge had represented FNMA, or Nationstar. It is likely that an ex parte communication occurred without the knowledge of the Plaintiff, Wirth, sometime after the parties to the FED filed briefs and prior to the conference of May 22nd, 2014. However, this Supplemental Complaint must not be construed as questioning the integrity of the regular Park County Court judge.

29. The Hon. Arthur R. Smith was a Mesa County Court judge, now retired. According to Google maps, the travel distance from Grand Junction to Fairplay is at least 205-miles resulting in approximately 3-hours and 27-minutes driving time each way. A survey of driving distance for 123 seated County Court judges to drive from their County seats to Fairplay shows that 104 or 85% of them have a shorter drive than one coming from Grand Junction. If County Court judges were chosen at random to hear cases in Fairplay, their average driving distance between their County seats and Fairplay would be 128.2-miles.

### Judges Interested by Investments in and Payments from
### Mortgage-Backed Securities

30. All Senior judges, including Hon. Arthur R. Smith, are: 1. assigned to cases by the Chief Justice of the Colorado Supreme Court pursuant to Article VI, Section 5(3) of the Colorado Constitution, 2. retired and may return to temporary judicial duties pursuant to CRS §24-51-1105, and 3. invested in and receiving payments from the privatized funds managed by Colorado Public Employees Retirement Association (CoPERA).

31. The *Comprehensive Annual Financial Report* published by Colorado PERA in the fiscal year ending December 31, 2012 stated on page 73 under the heading of *Concentration of Credit Risk*, "C.R.S § 24-51-206(3) requires that no investment of the fund in common or preferred stock, or both, of any single corporation shall be of an amount which exceeds 5 percent of the then book value of the fund, nor shall the fund acquire more than 12 percent of the outstanding stock or bonds of any single corporation. The 12 percent requirement does not apply to governmental securities (U.S. Treasuries, sovereigns, etc.), GSE securities (agencies including **FNMA**, FHLMC, etc.), mortgage-backed securities (agency or non-agency), commercial mortgage-backed securities (CMBS)..." [Exhibit J link: Colorado PERA Comprehensive Annual Financial Report 2012][emphasis added]

32. The *Annual Report for Colorado PERA's 401(k) and DC Plans* for the fiscal year ending December 31, 2010 shows CoPERA investments in PIMCO Low Duration Fund Institutional Class on page 9. The Portfolio Composition-Top Holdings shows itemized investments in FNMA 4.5% TBA of 22%, FNMA 5% TBA of

6.85%, FNMA 1.125% of 3.80%, FNMA 5.5% of 1.45%. [Exhibit K link: Annual Report for Colorado PERA's 401(k) and DC Plans]

33. Therefore, all retired and senior judges in Colorado have an interest in FNMA and are a party who is interested in any case involving FNMA because they are being paid by FNMA via their pensions.  CRS §13-1-122 describes "When a judge shall not act unless by consent" expressly stating that:

> A judge shall not act as such in any of the following cases: In an action or proceeding to which he is a party, or in which he is interested; when he is related to either party by consanguinity or affinity in the third degree; or when he has been attorney or counsel for either party in the action or proceeding, unless by consent of all parties to the action.

34. Because the Plaintiff, Wirth, was not informed of the Hon. Arthur R. Smith's interest in the case and deprived of the legally required opportunity to consent to a judge who was evidently a party aligned with his adversary, FNMA, he was deprived of Due Process and Equal Protection yet again. By hearing the FED case after depriving the Plaintiff, Wirth, of his right to consent, the Hon. Arthur R. Smith violated CRS §18-8-404. First degree official misconduct, which states:

> (1) A public servant commits first degree official misconduct if, with intent to obtain a benefit for the public servant or another or maliciously to cause harm to another, he or she knowingly:
>
> (a) Commits an act relating to his office but constituting an unauthorized exercise of his official function; or ...(c) **Violates any statute or lawfully adopted rule or regulation relating to his office**.

(2) First degree official misconduct is a class 2 misdemeanor.

[emphasis added]

35. In his official capacity as a substitute judge in the Park County Court, the Hon. Arthur R. Smith: 1. ignored the self-evident felonies committed by FNMA and Nationstar that had been admitted into the County Court records, 2. usurped two long-standing Doctrines of the United States Supreme Court [¶¶17-18, ¶¶19-23, supra], and 3. ordered the eviction of the Plaintiff, Wirth, from his property and home. This order violated CRS §18-8-403. Official Oppression, which states:

(1) A public servant, while acting or purporting to act in an official capacity or taking advantage of such actual or purported capacity, commits official oppression if, with actual knowledge that his conduct is illegal, he:

(a) Subjects another to arrest, detention, search, seizure, mistreatment, dispossession, assessment, or lien; or...

(2) Official oppression is a class 2 misdemeanor.

**Seventh Claim for Relief and Supporting Factual Allegations**

36. The malfeasance stated above does not originate in a legal vacuum. As some laws[1] may discourage criminal conduct others[2] may incite it. Investing a judge in either party to a case is likely to result in an unfavorable outcome to the adversarial party regardless of what the law says. The Statement of Facts [¶¶30-35] states one specific incidence where payment from FNMA usurps the weight of both criminal statutes and Supreme Court Doctrine. While having one judge invested in an adversary is bad, investing every judge in a State would be much worse and this is, of course, the situation in Colorado. Since all judges in Colorado are invested in or receiving payments from FNMA as part of their pension, no party adverse to FNMA can find a fair and impartial judge in the entire State.

37. The Title 38 Colorado Statutes enable State judges to dodge responsibility for illegally presiding over contentious cases and also provides an easy cover so long as they are willing to rubberstamp Unconstitutional, unlawful, and fraudulent foreclosures and evictions. Table 2 illustrates the effect those statutes have on what would otherwise be an uncorrupted body of law.

38. A judiciary at peace with the law shall not break the law. FNMA pays retired judges via their pension fund but uses front companies to hide an interest that is well-known to the Colorado judiciary. This would not be the case if the pensions of Colorado judges were publicly funded. There would also be no need for any front company to unlawfully hide the interest of FNMA from the court.

---

1   For example: CRS § 18-8-302, Bribery

2   Such as those listed in Table 2 infra.

**Table 2**

Comparison of How Specific Statutes Would Destroy

Judicial Procedure and Uniform Commercial Code as Applied to

High Value Negotiable Instruments and Transactions

| UNCONSTITUTIONAL STATUTE THAT INCITES FRAUD | WHAT HAPPENS IN THE RULE 120 HEARING | JUDICIAL REQUIREMENT ELIMINATED | UCC REQUIREMENT ELIMINATED |
|---|---|---|---|
| CRS §38-38-101(6)(b) CRS §38-38-100.3(20) | Anyone holding a mortgage note or a purported copy may commence action[1] to take your home. | Action[1] must be commenced by real party in interest.[2, 3] | Check indorsed by payer to payee is only payable to the specified payee.[4] |
| CRS §§38-38-101(1)(b)(II) and (c)(II) CRS §38-38-100.3(20) | Presumed guilt: Lawyer is empowered to force judgement against homeowner.[5] | Lawyer must prove case. Each claim must be supported by evidence.[6] Judge or jury decides case based on proof.[7] | Check is only payable to identified payee.[8] Teller may refuse to pay holders that cannot prove themselves to be the payee.[9] |

| CRS §38-39-102(3)(a)(I) CRS §38-38-100.3(20) | Presumed guilt: A "qualified holder" may release a Deed of Trust and proceed to claim and sell your home.[10] | Plaintiff must file a complaint with the court.[11, 12] Each claim must be supported by evidence.[6] Judge or jury decides case based on proof.[7] | Check must exist, be valid, and be presented for any funds to be transferred.[4, 7, 8, 9] |
| --- | --- | --- | --- |
| CRS §38-38-504 | Public Trustee's Deed is allowed to be used as evidence even if the names do not match.[13] | The court must restrict evidence to its proper scope.[14, 15] | Check is only payable to identified payee.[8] Teller may refuse to pay holders that cannot prove themselves to be the payee.[9] |

See Glossary and References below.

## GLOSSARY AND REFERENCES

1   Action in this context means a civil case or lawsuit commenced on a legal motion, pleading, or complaint.

2   Federal Rules of Civil Procedure (FRCP) Rule 17(a) applies.

3   Colorado Rules of Civil Procedure (CRCP) Rule 17(a) applies.

4   Uniform Commercial Code (UCC) § 3-109(b) applies.

5   Colorado Revised Statute (CRS) §38-38-101. Holder of evidence of debt may elect to foreclose (1)...the holder or attorney for the holder shall file the following with the public trustee of the county where the property is located:
   5.1           (b)(II) ... a statement signed by the attorney for such holder, citing the paragraph of section 38-38-100.3 (20) under which the holder claims to be

a qualified holder...

    5.2        (c)(II) Copies of the recorded deed of trust and any recorded modifications of the deed of trust or recorded partial releases of the deed of trust and a certification signed and properly acknowledged by a holder of an evidence of debt acting for itself or as an agent, nominee, or trustee under subsection (2) of this section or a signed statement by the attorney for such holder, citing the paragraph of section 38-38-100.3 (20) under which the holder claims to be a qualified holder and certifying or stating that the copies of the recorded deed of trust and any recorded modifications of the deed of trust or recorded partial releases of the deed of trust are true and correct...

6  Original evidence must be provided. Negotiable instruments must be indorsed to the party claiming ownership [Goodwin v. District Court, 779 P.2d 837, 842-843 (Colo. 1989)]. All other claims must be supported by an affidavit and testimony of a person capable of being a witness. False testimony or falsified documents are perjury, which is punishable by law. CRS §§38-38-101(1)(b)(II) and (c)(II) empower lawyers to make false assertions and hide behind the Doctrine of Absolute Immunity to dodge accountability.
[http://digitalcommons.pepperdine.edu/cgi/viewcontent.cgi?article=1285&context=plr]

7  Forcing any defendant to prove innocence is a logical impossibility that has been documented since Aristotle and Socrates taught philosophy in ancient Greece. The fallacy is *argumentum ad ignoratiam* also known as arguing from ignorance. This fallacy assumes that a claim is true because it has not been proven false. For example:

    7.1        A corporation claims that you owe it money.

    7.2        You have never signed any agreement with this corporation.

    7.3        It offers no proof to support its claim,

    7.4        It demands that you prove that you never signed an agreement to pay or else you be found guilty of not paying.

8  UCC § 3-110(a) applies.

9  UCC § 3-110(c) applies.

10      CRS §38-39-102(3)(a)(I) ....a holder of the original evidence of debt that is a qualified holder, as defined in section 38-38-100.3 (20), may request the release of a deed of trust without producing or exhibiting the original evidence of debt.

11      FRCP Rule 3.

12      CRCP Rule 3.

13        CRS §38-38-504 Any deed executed by an officer or other official under this article shall be prima facie evidence of compliance with all statutory requirements for the sale and execution of the deed and evidence of the truth of the recitals contained in the deed.

14        FRCP Rule 105

15        CRCP Rule 402

**Missing Payment Fraud**

39. An indorsement transferring interest in a Mortgage Note from one party to another is a demarcation that designates when payment to the current party is stopped and payment to the next party begins. Without the demarcation of expressed and dated indorsements, homeowning defendants have no way of defending against overlapping demands for payment. The homeowning defendant only has access to the Mortgage Note at trial, assuming it exists and is present. Evidence presented regarding accounts without an Affidavit is computer-generated hearsay. This fraud is not shown in Table 2 because the same deficiency may not exist in the other procedural pathways.[#56-1 ¶¶67-68, 2nd Claim for Relief]

**Conclusion to the Seventh Claim**

40. Whereas:

1. The Unconstitutional Colorado Statutes: (a) incite malfeasance and racketeering in the mortage lending business, incite malfeasance and complicity in the legal profession, and incite misconduct, oppression, and unlawful partiality in the Colorado judiciary, (b) deprive homeowning defendants their right to Due Process and Equal Protection [#56-1 ¶¶19-57], and (c) deprive homeowning defendants their right to a fair and impartial hearing.

2. Using private investments to fund pensions for judges destroys judicial integrity by inciting misconduct and unlawful partiality in all cases involving those investments and the corporate enties that manage and benefit from them.

3. Front companies or "servicers" have routinely violated the law by failing to disclose the Real Party in Interest, and have served no other purpose than to obfuscate the Real Party in Interest. The goal of this being to facilitate malfeasance and racketeering activites.

4. The Defendants, Mayopoulos, Bray, FNMA, and Nationstar came to the State courts with Unclean Hands.

41. The court therefore is respectfully requested to provide the following relief:

1. Repeal the Unconstitutional Colorado Statutes listed in Table 2.

2. Order the State of Colorado to publicly fund the pensions of judges and to vacate cases where judges failed to explicitly and clearly disclose any pecuniary interest they had in the case through their privatized pension funds.

3. Prohibit front companies, also known as "servicers"  from bringing claims to courts and order that the Real Party in Interest must come forward in all cases.

4. Void the sale of the Plaintiff's property and order that Wirth be granted quiet title to his property and home.

**Eighth Claim for Relief and Supporting Factual Allegations**

42. During the unlawful FED hearing of May 29th, 2014, opposing counsel offered two defenses for the felonies [¶8-16, Table 1, supra] committed by the Defendants, FNMA and Nationstar: (1) The felonious Demand for Possession [¶8, supra] was "premature", and (2) Nationstar was a "servicer" for FNMA. This defense proves that Nationstar is guilty of misrepresenting ownership interest in real property and that the misrepresentation was relied upon in the Rule 120 hearing of December 2nd, 2014 presided over by the Hon. Stephen A. Groome [CRS §18-5-302(2), ¶8 supra].

43. The shell-game tactic of misrepresenting ownership interest is well known to Defendants Jay Bray and Timothy J. Mayopoulos, Chief Executives of Nationstar and FNMA respectively. Misrepresentation of ownership interest [CRS §18-5-302(2), ¶8 supra] is used to cover criminal conduct that penetrates the entire Colorado Judiciary system and potentially corrupts each and every judge in the State by investing them in FNMA and then hiding this fact from homeowning defendants in court in violation of CRS §13-1-122.

44. The Hon. Stephen A. Groome failed to mention interest in FNMA via his investments through CoPERA [¶¶31-32, supra, #56-1 ¶¶60-65] and how that related to the plaintiff, Nationstar, prior to the Rule 120 hearing on December 3, 2013. He deprived the Plaintiff, Wirth, of his right to consent or refuse pursuant to CRS §13-1-122 [¶33, supra]. By thereafter presiding over the Rule 120 hearing in violation of CRS §13-1-122, the Hon. Stephen A. Groome committed an act of official misconduct in violation of CRS §18-8-404 [¶34, supra]. By summarily ruling against the Plaintiff, Wirth, the Hon. Stephan A. Groome committed an act

of official oppression in violation of  CRS §18-8-403 [¶35, supra].

45. Seeing how both Colorado judges, the Hon. Arthur R. Smith and the Hon. Stephan A. Groome each committed the same misfeasances under the Colorado statutes ( CRS §13-1-122,  CRS §18-8-404,  CRS §18-8-403) to deprive the Plaintiff, Wirth, of his rights based on the Unconstitutional statutes listed in Table 2, they, together with the State Actors (CRS §38-38-100.3(10)&(20)) Nationstar, FNMA, Bray, and Mayopoulos also violated 18 USC §242 which states:

> **Whoever, under color of any law, statute**, ordinance, regulation, or custom, **willfully subjects any person in any State**, Territory, Commonwealth, Possession, or District **to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States**, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death. [Emphasis added]

46. The criminal offenses seen and stated in [¶¶33-35, 41-44, supra] were motivated by the financial interests of Colorado judges in combination with Nationstar and FNMA. The executives of FNMA and Nationstar knowingly use their corporations to bribe judicial officials via their privatized pensions. Taken together with the twice-repeated refusals to disclose interests pursuant to CRS §13-1-122, payments from FNMA to Colorado judges are bribes that violate CRS §18-8-302 which states:

> (1) A person commits the crime of bribery, if:

> (a) He offers, confers, or agrees to confer any pecuniary benefit upon a public servant with the intent to influence the public servant's vote, opinion, judgment, exercise of discretion, or other action in his official capacity; or

> (b) While a public servant, he solicits, accepts, or agrees to accept any pecuniary benefit upon an agreement or understanding that his vote, opinion, judgment, exercise of discretion, or other action as a public servant will thereby be influenced.

> (2) It is no defense to a prosecution under this section that the person sought to be influenced was not qualified to act in the desired way, whether because he had not yet assumed office, lacked jurisdiction, or for any other reason.

> (3) Bribery is a class 3 felony.

47. In the present Complaint, Timothy J. Mayopoulos is self-evidently guilty of at least two counts of violating CRS §18-8-302, Bribery. His co-conspirator, Jay Bray, operates Nationstar in a conspiracy to hide the judicial interest and bribery from homeowning defendants in Rule 120 proceedings in violation of CRS §18-2-201(1), Conspiracy [¶14, supra].

48. The unlawful activities of the executive Defendants, Mayopoulos and Bray, of FNMA and Nationstar done through their respective corporations are "specified unlawful activity" under 18 USC §1956(c)(7)(iv) which includes "**bribery of a public official**, or the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official;"

49. Plaintiff's property was unlawfully sold [¶11, supra] from Nationstar to FNMA for consideration of $133,818.99 to also violate 18 USC §1957(a-c) which states:

> (a) Whoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b).

> (b)

>> (1) Except as provided in paragraph (2), the punishment for an offense under this section is a fine under title 18, United States Code, or imprisonment for not more than ten years or both. If the offense involves a pre-retail medical product (as defined in section 670) the punishment for the offense shall be the same as the

punishment for an offense under section 670 unless the punishment under this subsection is greater.

(2) The court may impose an alternate fine to that imposable under paragraph (1) of not more than twice the amount of the criminally derived property involved in the transaction.

(c) In a prosecution for an offense under this section, the Government is not required to prove the defendant knew that the offense from which the criminally derived property was derived was specified unlawful activity.

50. The Defendants of CLG, Cynthia Lowery-Graber, Deanna Westfall, Britney Beall-Eder, Christopher T. Groen, and Lawrence E. Castle, knowingly coordinated, aided, and abetted the commission of felonies and misdemeanors as agents of Mayopoulos and Bray through their respective incorporations [¶¶8-14, 42-49].

**Racketeering**

51. 18 USC § 1961 - Definitions:

(1) "racketeering activity" means (A) any act or threat involving murder, kidnapping, gambling, arson, **robbery, bribery**, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, **United States Code: Section 201** (relating to bribery)...[emphasis added]

52. 18 USC § 201 - *Bribery of public officials and witnesses* states that

(b) Whoever--

(1) directly or indirectly, corruptly gives, offers or promises anything of value to any public official or person who has been selected to be a public official, or offers or promises any public official or any person who has been selected to be a public official to give anything of value to any other person or entity, with intent—

(A) to influence any official act; or

(B) to influence such public official or person who has been selected to be a public official to commit or aid in committing, or collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States; or

(C) to induce such public official or such person who has been selected to be a public official to do or omit to do any act in violation of the lawful duty of such official or person;

53. Mayopoulos has corruptly influenced the entire Colorado judiciary through its privatized pension fund and caused at least two Colorado judges to violate CRS §13-1-122,  CRS §18-8-404,  CRS §18-8-403 through systematic bribery in violation of 18 USC § 201 and 18 USC §1956(c)(7)(iv), violations of which are racketeering activity under 18 USC § 1961(1), in addition to engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 USC §1957(a-c).

54. By holding a significant portion of Colorado judges' pension funds hostage with

FNMA investments and hiding those interests with a front company, Defendants Bray and Mayopoulos together have conspired to prevent Colorado judges from discharging their duties under the law in violation of 18 USC § 372 which states:

> If two or more persons in any State, Territory, Possession, or District **conspire to prevent**, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or **from discharging any duties** thereof, or to induce by like means any officer of the United States to leave the place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or **to injure his property** so as to molest, interrupt, hinder, or **impede him in the discharge of his official duties**, each of such persons shall be fined under this title or imprisoned not more than six years, or both. [emphasis added]

**Conclusion to the Eighth Claim**

55. Whereas:

1. The courts must never allow crime (such as violations of CRS §18-5-302(2), CRS §18-5-302(1), 18 USC §1343, 18 USC §1018, CRS §18-2-201(1),  CRS §18-8-302, 18 USC § 201, 18 USC § 372, CRS §13-1-122, CRS §18-8-404, CRS §18-8-404, 18 USC §1956(c)(7)(iv), 18 USC § 1957(a-c) and 18 USC § 242) to be accepted as a standard business practice, the courts are obligated to avoid crime and shield themselves from corrupting influences.

2. The Defendants, Hon. Groome [#56-1 ¶¶60-65, 1st Claim, ¶¶67-70, 2nd Claim] and Hon. Smith, have violated judicial rules and committed unlawful acts of misconduct and oppression for the benefit of Nationstar and FNMA, Mayopoulos and Bray in violation of CRS §13-1-122, CRS §18-8-404, CRS §18-8-404, and 18 USC § 242.

3. The Defendants of the Castle Law Group: Lowery-Graber, Beall-Eder, Westfall, and Groen have willfully and knowingly aided and encouraged the commission of felonies by Mayopoulos and Bray in violation of CRS §18-5-302(2), CRS §18-5-302(1), 18 USC §1343, 18 USC §1018, CRS §18-2-201(1), CRS §18-8-302, 18 USC § 201, 18 USC §1956(c)(7)(iv), 18 USC § 1957(a-c), and 18 USC § 372.

4. The Defendant Castle has provided a corporate shield and an enviroment for the promotion of fraud, robbery, and corruption in violation of CRS §18-5-302(2), CRS §18-5-302(1), 18 USC §1343, 18 USC §1018, CRS §18-2-201(1), CRS §18-8-302, 18 USC § 201, 18 USC §1956(c)(7)(iv), 18 USC § 1957(a-c), and 18 USC § 372.

5. The Defendants and co-conspirators, Mayopoulos and Bray, have committed acts of systematic bribery and corruption of the Colorado judiciary to advance their racketeering enterprises in violation of 18 USC § 201, 18 USC § 1957(a-c), and 18 USC § 372. They have come to court in all cases of Equity with Unclean Hands.

6. A Criminal Complaint has been filed with the US District Attorney regarding 1-5 above.

56. Therefore, the Court is respectfully requested to:

1. Eliminate corrupting influences from the judiciary and hold its peers in the Colorado Judiciary accountable for allowing pecuniary interests to influence their decisions.

2. Hold the Defendants of the Castle Law Group, Lowery-Graber, Beall-Eder, Westfall, and Groen, criminally liable for willfully and knowingly aiding and abetting the racketeering activities of Mayopoulos and Bray in violation of CRS §18-5-302(2), CRS §18-5-302(1), 18 USC §1343, 18 USC §1018, CRS §18-2-201(1),  CRS §18-8-302, 18 USC § 201, 18 USC §1956(c)(7)(iv), 18 USC § 1957(a-c), and 18 USC § 372 .

3. Hold the Defendant, Castle, criminally liable for running a criminal enterprise in furtherance of the racketeering activities of Mayopoulos and Bray in violation of CRS §18-5-302(2), CRS §18-5-302(1), 18 USC §1343, 18 USC §1018, CRS §18-2-201(1),  CRS §18-8-302, 18 USC § 201, 18 USC §1956(c)(7)(iv), 18 USC § 1957(a-c), and 18 USC § 372 .

4. Hold the Defendants Timothy J. Mayopoulos and Jay Bray criminally liable for racketeering activities in violation of CRS §18-5-302(2), CRS §18-5-302(1), 18 USC §1343, 18 USC §1018, CRS §18-2-201(1),  CRS §18-8-302, 18 USC § 201, 18 USC §1956(c)(7)(iv), 18 USC § 1957(a-c), and 18 USC § 372.

5. Void the sale of the Plaintiff's property and order that Wirth be granted quiet title to his property and home.

6. Order the United States District Attorney to charge the Defendants with the specified crimes of racketeering stated in this Supplemental Complaint.

**REQUEST FOR RELIEF**

57. Per the Seventh Claim, the Plaintiff respectfully requests the Court to:

    1. Repeal the following Unconstitutional Colorado Statutes:

        (a) CRS §38-38-100.3(20)

        (b) CRS §38-38-100.3(10)

        (c) CRS §38-38-101(6)(b)

        (d) CRS §§38-38-101(1)(b)(II) and (c)(II)

        (e) CRS §38-39-102(3)(a)(I)

        (f) CRS §38-38-504

    2. Order the State of Colorado to publicly fund the pensions of judges.

    3. Order the State of Colorado to void all sales of property wrongfully taken when any State District Court judges have not explicitly and clearly disclosed any pecuniary interest they may have had in the case through their investments in FNMA or other mortgage-backed securities.

    4. Bar front or "servicer" companies from bringing claims to courts. The Real Party in Interest must come forward in all cases involving real property.

    5. Void the sale of the Plaintiff's property and order that Wirth be granted quiet title to his property and home.

58. Per the Eighth Claim, the Plaintiff respectfully requests the Court to:

    1. Void the sale of the Plaintiff's property and order that Wirth be granted quiet title to his property and home.

    2. Hold the Defendants of the Castle Law Group, Cynthia Lowery-Graber,

Deanna Westfall, Britney Beall-Eder, and Christopher T. Groen, criminally liable for willfully and knowingly aiding and abetting the racketeering activities of Mayopoulos and Bray in violation of CRS §18-5-302(2), CRS §18-5-302(1), 18 USC §1343, 18 USC §1018, CRS §18-2-201(1),  CRS §18-8-302, 18 USC § 201, 18 USC §1956(c)(7)(iv), 18 USC § 1957(a-c), and 18 USC § 372.

3. Hold the Defendant, Lawrence E. Castle, criminally liable for running a criminal enterprise in furtherance of the racketeering activities of Mayopoulos and Bray in violation of CRS §18-5-302(2), CRS §18-5-302(1), 18 USC §1343, 18 USC §1018, CRS §18-2-201(1),  CRS §18-8-302, 18 USC § 201, 18 USC § 1957(a-c), and 18 USC § 372.

4. Hold the Defendants Mayopoulos and Bray criminally liable for willfully and knowningly ordering crimes to be committed and engaging in racketeering in violation of CRS §18-5-302(2), CRS §18-5-302(1), 18 USC §1343, 18 USC §1018, CRS §18-2-201(1),  CRS §18-8-302, 18 USC § 201, 18 USC §1956(c)(7)(iv), 18 USC § 1957(a-c), and 18 USC § 372.

5. Hold the Defendants Nationstar, FNMA liable for being criminal organizations knowingly engaged in and providing a cover for racketeering activities in violation of CRS §18-5-302(2), CRS §18-5-302(1), 18 USC §1343, 18 USC §1018, CRS §18-2-201(1),  CRS §18-8-302, 18 USC § 201, 18 USC §1956(c)(7)(iv), 18 USC § 1957(a-c), and 18 USC § 372.

6. Order the United States District Attorney to charge the Defendants with the specified crimes of racketeering as stated in this Supplemental Complaint.

Respectfully requested this 23rd day of June 2014.


s/Martin Thomas Wirth

**Martin Thomas Wirth**

Plaintiff pro se

36 Iris Drive

Bailey, Colorado 80421

303-816-1054

martin.wirth@specialtywrench.com