**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. **13-CV-03309-REB-KMT**


MARTIN T. WIRTH, Plaintiff,

v.

JOHN HICKENLOOPER, In his Official Capacity as Governor of Colorado,

STEPHEN A. GROOME, Judge - 11th District Court of Colorado,

ARTHUR R. SMITH, Senior Judge - Retired from Mesa County Court,

MICHELLE MILLER, In her Official Capacity as Public Trustee of Park County,

NATIONSTAR MORTGAGE, LLC. (Nationstar),

JAY BRAY, Chief Executive of Nationstar in his Corporate and Individual Capacities,

FEDERAL NATIONAL MORTGAGE ASSOCIATION (FNMA),

TIMOTHY J. MAYOPOULOS, Chief Executive of FNMA in his Corporate and Individual Capacities,

THE CASTLE LAW GROUP, LLC. (CLG),

CYNTHIA LOWERY-GRABER, CLG Attorney,

DEANNA WESTFALL, CLG Attorney,

BRITNEY BEALL-EDER, CLG Attorney,

CHRISTOPHER T. GROEN, CLG Attorney,

LAWRENCE E. CASTLE, Chief Executive of CLG in his Corporate and Individual Capacities,

FRED WEGENER, Individually and in his Official Capacities,

MARY HAGER, Individually,

Defendants.


1

## FIFTH AMENDED COMPLAINT

## PARTIES

1. Plaintiff, MARTIN T. WIRTH, is a citizen of the United States of America who resides at the following address:

    36 Iris Drive

    Bailey, Colorado 80421

2. Defendant, JOHN HICKENLOOPER, is a citizen of the United States of America and Governor of the State of Colorado located at the following address:

    136 State Capitol

    Denver, CO 80203-1792

3. Defendant, STEPHEN A. GROOME, is a citizen of the United States of America and Judge of the 11th District Court of Colorado located at the following address:

    300 4th Street

    Fairplay, CO 80440

4. Defendant, ARTHUR R. SMITH, is a citizen of the United States of America and Senior Judge of Colorado located at the following address:

    300 4th Street

    Fairplay, CO 80440

5. Defendant, MICHELLE MILLER, is a citizen of the United States of America Public Trustee of Park County located at the following address:

    501 Main Street

Fairplay, CO 80440

6. Defendant, NATIONSTAR MORTGAGE, LLC, is a Texas corporation located at the following address:

   350 Highland Drive

   Lewisville, TX 75067

7. Defendant, JAY BRAY, is an individual located at the following address:

   350 Highland Drive

   Lewisville, TX 75067

8. Defendant, FEDERAL NATIONAL MORTGAGE ASSOCIATION (or FANNIE MAE), is a government sponsored enterprise of the United States of America located at the following address:

   3900 Wisconsin Avenue, NW

   Washington, DC 20016-2892

9. Defendant, TIMOTHY J. MAYOPOULOS, is an individual located at the following address:

   3900 Wisconsin Avenue, NW

   Washington, DC 20016-2892

10. Defendant, THE CASTLE LAW GROUP, LLC, is a Colorado corporation located at the following address:

    999 18th Street, Suite 2201

    Denver, CO 80202

11. Defendant, CYNTHIA LOWERY-GRABER, is a citizen of the United States of America located at the following address:

    999 18th Street, Suite 2201

    Denver, CO 80202

12. Defendant, DEANNA WESTFALL, is a citizen of the United States of America

3

located at the following address:

     999 18th Street, Suite 2201

     Denver, CO 80202

13. Defendant, BRITNEY BEALL-EDER, is a citizen of the United States of America located at the following address:

     999 18th Street, Suite 2201

     Denver, CO 80202

14. Defendant, CHRISTOPHER T. GROEN, is a citizen of the United States of America located at the following address:

     999 18th Street, Suite 2201

     Denver, CO 80202

15. Defendant, LAWRENCE E. CASTLE, is a citizen of the United States of America located at the following address:

     999 18th Street, Suite 2201

     Denver, CO 80202

16. Defendant, FRED WEGENER, is a citizen of the United States of America located at the following address:

     1180 County Road 16

     Fairplay, CO 80440

17. Defendant, MARY HAGER, is a citizen of the United States of America located at the following address:

     25577 Conifer Road, Suite 201

     Conifer, CO 80433

**JURISDICTION**

1. The Court has subject matter jurisdiction over Plaintiff's claims under 28 USC § 1331, 1348, 1349, 1361.

2. The Court has personal jurisdiction over all of the Defendants.

3. Venue is proper in the District of Colorado because the Plaintiff's property is located in Colorado and the events which give rise to this action occurred within this district and the Plaintiff resides within this district.

**AMENDMENT**

4. This is amended pursuant to Fed.Rule.Civ.Proc.15(a)(1)(B) and 15(a)(2) and in accordance with the Court's order.

**NATURE OF THE ACTION**

5. The foreclosure statutes of Colorado force presumptions of guilt against defendant homeowners by usurping the Constitutional requirements of Due Process and Equal Protection under the 4th and 14th Amendments. The Unconstitutional statutes foist a logically impossible burden on homeowning defendants to prove that non-existent indorsements do not exist.  The Colorado foreclosure statutes incite a wide variety of crimes including bribery, official misconduct, racketeering, and fraud as they violate Constitutional restraints while criminalizing homeowning defendants, wrongfully depriving them of homes and places of business.

# STATEMENT OF FACTS

## *I. The Unlawful Rule 120 Hearing*

6. The Plaintiff, Wirth, was a defendant in the Rule 120 action [Colorado case 2013CV030104] brought by Nationstar Mortgage, LLC (Nationstar) on December 3, 2013 in the 11th District Court of the State of Colorado. The hearing was presided by Judge Stephen A. Groom (Defendant 3, Groome).

7. All judges employed by the State of Colorado are invested in the privatized funds of the Colorado Public Employees Retirement Association (CoPERA). Nationstar has been called a "mortgage servicer" for FNMA by opposing counsel, which means that Nationstar is a front company for FNMA. CoPERA is largely invested in mortgage-backed securities, specifically FNMA which is allowed to exceed the 12% limit for investments.[1]

8. Judges are required by Colorado Revised Statute (CRS) § 13-1-122 to disclose any interest in court proceedings and to obtain consent of both adversaries in limine. By refusing to comply with CRS § 13-1-122, hearing, and issuing an order, Groome violated CRS §18-8-404, First Degree Official Misconduct.

## *II. Felonious Demands for Possession, Misrepresentations, and Conspiracy*

9. Despite notice of ligitation in the US Court, a felonious Demand for Possession, [Exhibit #56-5], in the name of the Defendant, FNMA, was signed on January 7, 2014 by Cynthia Lowery-Graber #34145 with the complicit approval of Deanna Westfall #23449, Britney Beall-Eder #34935, and Christopher T. Groen #39976.

10. A Confirmation Deed, [Exhibit #56-3], was granted to Nationstar on January 8,

---

[1]   See 2012 Comprehensive Annual Financial Report (CoPERA) p.73

2014, the day after the felonious Demand for Possession was issued in the name of FNMA. This Confirmation Deed is contested. Because the Confirmation Deed had not yet been issued, the Demand for Possession misrepresented ownership interest in the property violating CRS §18-5-302(2), a class 6 felony.

11. FNMA and Nationstar are entirely separate legal entities. The Demand for Possession issued by CLG in the name of FNMA comprises another instance of fraud under CRS §18-5-302(2) Misrepresenting Ownership Interest in Property, a class 6 felony.

12. Another Demand for Possession, dated March 18, 2014 was served on the Plaintiff. A Special Warranty Deed [Exhibit #59-1] was issued on the same date, March 18, 2014, and was notarized in the state of Texas purportedly conveying the Plaintiff's property from Nationstar to FNMA for consideration of $133,818.99. CLG had already posted a written notice on January 7, 2014 stating that FNMA had an ownership interest in the Plaintiff's property. Therefore, the second Demand for Possession taken together with Exhibit #59-1 only proves that Nationstar through CLG committed a felony as described above in ¶11 or that they sold interest in the property twice to FNMA in violation of CRS §18-5-302(1) Selling Land Twice, a class 5 felony.

13. The illegal Demand for Possession [¶10,11 above] issued by CLG Defendants on Jan. 7, 2014 comprised at least one count in violation 18 USC §1018 Issuing a False Certificate.

14. The CLG represented both FNMA and Nationstar concurrently. FNMA instructed its agents in the CLG to post the illegal Demand for Possession before Nationstar had been granted the Confirmation Deed [Exhibit #56-3]. This violated CRS §18-5-302(2) because the Plaintiff was still the legal owner of the property even under

7

the contested version of events offered by Nationstar and FNMA. The Demand for Possession [Exhibit #56-5] was relied upon in the case before this Court as evidence showing that Nationstar was not the Real Party in Interest.

15. Neither Nationstar nor its agents in CLG contested the unlawful FNMA Demand for Possession [Exhibit #56-5] issued on January 7, 2014, which self-evidently contradicts the Special Warranty Deed [Exhibit 59-1] issued in the State of Texas on March 18, 2014. The Defendants used at least one specific interstate wire transaction comprising at least one count in violation of 18 USC §1343. This shows the complicity of Nationstar and Castle Law Group as active and knowing participants in felony violation of CRS §18-5-302(2), which is a violation of  CRS §18-2-201(1) Conspiracy.

16. In People v. Hood, 878 P.2d 89 (Colo. App. 1994), the Colorado Court of Appeals ruled that pursuant to CRS §18-2-201 "the essence of the crime of conspiracy is the illegal agreement to commit a crime plus at least one overt act in furtherance of that agreement."

17. The transaction involved in these unlawful activities is real property valued at over $10,000. Therefore, the Defendants (6-15) also violated sections of 18 USC §§1956,1957.

### III. Unlawful Eviction Proceedings

18. FNMA brought a unlawful forcible entry and detainer proceeding (FED) against the Plaintiff, Wirth, for residing on his property [Colorado Case No. 14C030068].

19. In his answer, the Plaintiff, Wirth, notified the Park County Court that the property was in contention under the jurisdiction of this United States Court. In the hearing on April 17, 2014 the County Court ordered that both parties prepare briefs to

show whether or not the County Court had the authority override the jurisdiction and authority of the United States Court, which would violate the long upheld United States Supreme Court Doctrine of Prior Exclusive Jurisdiction. The County Court also denied Wirth's request for a jury trial.

20. In his answer to the FED, Wirth also brought the malfeasance of the Defendants [¶¶9-17, supra] to the notice of the Park County Court and cited the Doctrine of Clean Hands, a doctrine long upheld by the United States Supreme Court.

21. The County Court sent the Plaintiff, Wirth, a request to reschedule the May 27th, 2014 hearing that had been scheduled at the end of the hearing of April 17th, 2014. The new hearing was scheduled for May 29th, 2014. During the conference of May 22nd, 2014, the Plaintiff, Wirth, was informed that a "senior" judge would be hearing the case.

22. No explanation was offered as to why the regular County Court judge was removed from the case. The Plaintiff, Wirth, was not given an opportunity to ask why the Park County Court judge would recuse himself nor given the opportunity to consent pursuant to CRS §13-1-122. No complaint against the presiding Park County Court Judge had come to the attention of the Plaintiff. The Park County Court Judge had never represented the Plaintiff, nor was it mentioned whether the judge had represented FNMA, or Nationstar. It is likely that an ex parte communication occurred without the knowledge of the Plaintiff, Wirth, sometime after the parties to the FED filed briefs and prior to the conference of May 22nd, 2014.

23. Senior Judge Arthur R. Smith was a Mesa County Court judge, now retired. According to Google maps, the travel distance from Grand Junction to Fairplay is at least 205-miles resulting in approximately 3-hours and 27-minutes each way.

A survey of driving distance for 123 seated County Court judges to drive from their County seats to Fairplay shows that 104 or 85% of them have a shorter drive than one coming from Grand Junction. If County Court judges were chosen at random to hear cases in Fairplay, their average driving distance between their County seats and Fairplay would be 128.2-miles.

24. By knowingly disregarding  CRS §13-1-122 and summarily ruling against Wirth, Smith violated CRS §18-8-404, First Degree Official Misconduct and CRS §18-8-403, Official Oppression, both class 2 misdemeanors.

25. Police routinely murder citizens and are rarely held accountable. The Plaintiff's home was thereby under threat of armed assault. In committing Official Oppression, Smith, gave the Plaintiff only 48-hours to move his personal effects including a library and a machine shop.

26. The Plaintiff strained his back lifting heavy machinery used in his business. While he was recovering, Mary Hagar and the Park County Sherriff's Department invaded the Plaintiff's home and stole or destroyed his remaining personal effects including family photos, reference books, a custom-made desk, art, and two vehicles.

# FIRST CLAIM FOR RELIEF AND SUPPORTING FACTUAL ALLEGATIONS

27. In Colorado Case No. 13CV30104, all actions were brought against Wirth in the name of Nationstar Mortgage, LLC. Through its agents in the Castle Law Group, FNMA posted a Demand for Possession papers on the property on January 7, 2014. The Demand for Possession was posted and dated before the Park County Public Trustee issued the contested Confirmation Deed in the name of Nationstar.

28. As entirely separate legal entities, Nationstar and FNMA cannot both claim ownership interest in the Plaintiff's property at the same time. These dubious claims could have been settled easily had the mortgage note been indorsed. As such, Wirth had no way of defending his case without knowing the Real Party in Interest. The Colorado Statutes are designed to deprive homeowning defendants their rights under the Due Process and Equal Protection clauses of the 14th Amendment.

29. During the Rule 120 hearing, the Lowery-Graber also brought forth a purported note. Wirth observed that the note appeared to be an agreement with a mortgage lender named Countrywide and that it had not been transferred by indorsement to NationStar or any other entity. Wirth questioned NationStar employee Rachel Hook who confessed that there was no indorsement to NationStar or any other entity.

30. The Lowery-Graber argued that the note was "indorsed in the blank", which is tantamount to asserting that a high value instrument such as a Mortgage Note should be treated like a check written to "cash" instead of a specific party. This misconstruance of Uniform Commercial Code is refuted in Table 1 below. Wirth

argued that he should be allowed an affirmative defense and that the party attempting to deprive him of his home and property had the burden of proof and must present a note that has been expressly indorsed from the transferer to the transferee.

31. Table 1 below compares the non-judicial and Unconstitutional foreclosure proceedings created by the Colorado Statutes to a judicial process and to the procedures used under Uniform Commercial Code in transactions involving high value instruments.

**Table 1**

Comparison of How Specific Statutes Would Destroy
Judicial Procedure and Uniform Commercial Code as Applied to
High Value Negotiable Instruments and Transactions

| UNCONSTITUTIONAL STATUTE THAT INCITES FRAUD | WHAT HAPPENS IN THE RULE 120 HEARING | JUDICIAL REQUIREMENT ELIMINATED | UCC REQUIREMENT ELIMINATED |
|---|---|---|---|
| CRS §38-38-101(6)(b)<br><br>CRS §38-38-100.3(20) | Anyone holding a mortgage note or a purported copy may commence action[1] to take your home. | Action[1] must be commenced by real party in interest.[2, 3] | Check indorsed by payer to payee is only payable to the specified payee.[4] |
| CRS §§38-38-101(1)(b)(II) and (c)(II)<br><br>CRS §38-38-100.3(20) | Presumed guilt: Lawyer is empowered to force judgement against homeowner.[5] | Lawyer must prove case. Each claim must be supported by evidence.[6] Judge or jury decides case based on proof.[7] | Check is only payable to identified payee.[8] Teller may refuse to pay holders that cannot prove themselves to be the payee.[9] |
| CRS §38-39-102(3)(a)(I)<br><br>CRS §38-38-100.3(20) | Presumed guilt: A "qualified holder" may release a Deed of Trust and proceed to claim and sell your home.[10] | Plaintiff must file a complaint with the court.[11, 12] Each claim must be supported by evidence.[6] Judge or jury decides case based on proof.[7] | Check must exist, be valid, and be presented for any funds to be transferred.[4, 7, 8, 9] |
| CRS  §38-38-504 | Public Trustee's Deed is allowed to be used as evidence even if the names do not match.[13] | The court must restrict evidence to its proper scope.[14, 15] | Check is only payable to identified payee.[8] Teller may refuse to pay holders that cannot prove themselves to be the payee.[9] |

See Glossary and References below.

## GLOSSARY AND REFERENCES FOR TABLE 1

1  Action in this context means a civil case or lawsuit commenced on a legal motion, pleading, or complaint.
2  Federal Rules of Civil Procedure (FRCP) Rule 17(a) applies.
3  Colorado Rules of Civil Procedure (CRCP) Rule 17(a) applies.
4  Uniform Commercial Code (UCC) § 3-109(b) applies.
5  CRS §38-38-101
6  Original evidence must be provided. Negotiable instruments must be indorsed to the party claiming ownership [Goodwin v. District Court, 779 P.2d 837, 842-843 (Colo. 1989)]. All other claims must be supported by an affidavit and testimony of a person capable of being a witness. False testimony or falsified documents are perjury, which is punishable by law. CRS §§38-38-101(1)(b)(II) and (c)(II) empower lawyers to make false assertions and hide behind the Doctrine of Absolute Immunity to dodge accountability. [http://digitalcommons.pepperdine.edu/cgi/viewcontent.cgi?article=1285&context=plr]
7  Forcing any defendant to prove innocence is a logical impossibility. This is logically equal to demanding proof that something does not exist. This is not the same as demanding proof that a statement is false, which can be proven.
8  UCC § 3-110(a) applies.
9  UCC § 3-110(c) applies.
10     CRS §38-39-102(3)(a)(I)
11     FRCP Rule 3.
12     CRCP Rule 3.

32. The primary point of entry into the statutory labyrinth is CRS §38-38-101(6), which defines "indorsement or assignment" for the rest of the statute. It was adopted as part of an omnibus revision to Colorado foreclosure law in HB 06-1387, and refined to its present form by HB 09-1207. A reading of the plain language of this section supports an inference that the Constitutional underpinnings of the Rule 120 review process were not considered by the Colorado Legislature when it enacted them.

14

### Real Party in Interest is the Threshold Question

33. CRS §38-38-101(6)(b) bypasses the required documentary evidence foundations on which Mitchell and the Colorado Supreme Court relied in upholding a Louisiana statute, in that unsworn "certifications" and "statements:"

1. are nothing more than ". . . bare conclusory claims of ownership or lien . . .,"

2. do not constitute ". . . specific facts shown by verified petition or affidavit. . .,"

3. diminish the ". . . requisite showing [that] must be made to a judge . . ." to a mere unsworn certification or statement,

4. effectively place the homeowner ". . . at the unsupervised mercy of the creditor and court functionaries (I.E., public trustees who serve as mere functionaries in accepting and recording certifications and statements, without requiring authentication of any underlying evidence referenced in the certification or statement). . .,"

5. require a Rule 120 Court that strictly applies the statute to authorize and approve an unopposed foreclosure sale based on an unsworn certification or statement that "shall be deemed"  pursuant to C.R.S. §38-38-101(6)(b) to constitute a missing indorsement or assignment, thereby rendering ". . . judicial control of the process from beginning to end. . . " superfluous, and increasing ". . . the risk that the ex parte procedure will lead to a wrongful taking. . . .,"

6. eliminate the requirement of ". . . [d]ocumentary proof [that] is particularly suited for questions of the existence of a vendor's lien and the issue of default. . . .," and

7. do not require the foreclosing party to ". . . prove[ ] the grounds upon

15

which the writ was issued.'" See Mitchell, supra. Moreover, by relieving the party seeking to terminate an owner's interest in property of the duty to produce any evidence that it is the proper party to terminate such interest, subsection (b) creates grave risk of erroneous deprivation of property, which risk led the Doehr Court to find the state statute at issue unconstitutional.

34. C.R.S. §38-38-101 "creates an additional burden upon a debtor to establish evidence of the creditor's identity which the creditor, itself, is not required to locate" – Plaintiff respectfully submits that this is best addressed by the fundamental rule that every action must be prosecuted in the name of the real party in interest pursuant to Colo.Rule.Civ.Proc. 17(a). Applied to a Rule 120 proceeding, Colorado precedent is clear that a Rule 120 Court's resolution of the issue of default adversely to a homeowner, without considering evidence challenging "real party in interest," is ". . . tantamount to the taking of property in a summary fashion without any hearing at all—a deprivation clearly violative of due process of law." Goodwin v. District Court, 779 P.2d 837, 841-842 (Colo. 1989).

35. Due process of law clearly requires that a Rule 120 Court require the foreclosing party to be the real party in interest, as a threshold question. This inquiry must be evidence-based, and is related to the questions of whether the foreclosing party has the right to enforce a valid, recorded security interest, as discussed above.

36. If CRS §38-38-101(6)(b) is determined to be Unconstitutional, for reasons specified above, a Rule 120 Court will not be bound by a statutory provision that a party "shall be deemed" to have a non-existent endorsement or assignment. Independently of the status of §38-38-101(6)(b), a Rule 120 Court should still require evidence to support claims made in a "certification" or "statement"

16

foreclosure under CRS §§38-38-101(1)(b)(II) and (c)(II). The core components of judicial control over the process from beginning to end, and documentary proof of a party's right to foreclose, must accord with fundamental requirements of due process of law under the 14th Amendment.

37. The Constitutional deficiencies of CRS §38-38-101(6)(b), and CRS §§38-38-101(1)(b)(II) and (c)(II) violate the rights of defendant homeowners by forcing the defendant to prove that nonexistent evidence does not exist, a logically impossible burden.

### *Constitutional Deficiencies Incite Missing Payment Frauds*

38. An indorsement transferring interest in a Mortgage Note from one party to another is a demarcation that designates when payment to the current party is stopped and payment to the next party begins. Without the demarcation of expressed and dated indorsements, homeowning defendants have no way of defending against overlapping demands for payment. The homeowning defendant only has access to the Mortgage Note at trial, assuming it exists and is present. Evidence presented regarding accounts without an Affidavit is computer-generated hearsay. This fraud is not shown in Table 1 because the same deficiency may not exist in the other procedural pathways.

39. Therefore,  CRS §38-38-101(6)(b), CRS  §§38-38-101(1)(b)(II) and (c)(II) should be repealed and the judgment in Colorado Case No. 13CV30104 should be vacated.

# SECOND CLAIM FOR RELIEF AND SUPPORTING FACTUAL ALLEGATIONS

40. Another "domino" in the deprivation of property without due process of law occurs

after a foreclosure based on only the "certification" and "statement" provisions of CRS §38-38-101, when a "qualified holder" is allowed by CRS §38-39-102(3)(a)(I) to release the homeowner's deed of trust without producing the original evidence of debt – just as it was allowed to foreclose without the original evidence of debt.

41. The risk of deprivation in this instance is not only to the homeowner (whose deed may be released before an independent challenge of the foreclosure is completed), but also to the true holder of the evidence of debt, the beneficiary to the deed of trust, to any subsequent purchaser who relies on the release of the deed of trust, and other parties who may be affected by this cloud on title.

42. C.R.S. §38-38-100.3(20) defines special classes of plaintiffs in foreclosure proceedings vaguely calling them "Qualified holder"s. These classes of plaintiffs are granted special powers that are not available to other kinds of plaintiffs in civil cases. The powers granted to them eliminate the burden of proof according to the Constitutionally deficient C.R.S. §38-39-102(3)(a)(I). By enabling a release of the deed of trust prior to judgment, defendant homeowners are converted into plaintiffs in a single matter at law and deprived of Equal Protection under the 14th Amendment.

43. In ordering any Public Trustee to release a Deed of Trust without any hearing on the matter, the private entities (under CRS §38-38-100.3(20)) are engaging in "state action within the meaning of the 14th Amendment".

Nixon v. Condon - 286 U.S. 73 (1932)

44. As such, these statutes must be subjected to strict scrutiny. While there may be private concerns involved, there is no legitimate government purpose in facilitating the removal of people from their homes. On the contrary, there is a public interest in enabling everyone to be decently housed. There is no legitimate

18

governmental purpose in delegating to private banks, lenders, or mortgage servicers whether regulated or not, any powers that should be solely exercised by the State courts under the Constitutional restraints of the 5th and 14th Amendments.

45. The effect of CRS §38-39-102(3)(a)(1) is to deprive defendant homeowners of their property without a hearing and to convert them from defendants into plaintiffs under a single matter at law. A procedure, whether by rules or statute, that converts a defendant into a plaintiff under a single matter of law shifts the burden of proof to the other side. Once the burden of proof has been swapped, homeowning defendants must then prove that non-existent evidence does not exist, a logically impossible burden on any defendant that turns what may appear to be Due Process to a casual observer into a legal sham where conclusions are drawn prior to the presentation of evidence.

46. CRS §38-38-100.3(20) establishes a nexus of state and private corporate power to the detriment of property owners in Colorado. The apparent purpose of this statute is to circumvent the judicial process by removing the power to deprive US citizens of real property from the judiciary branch of government and handing it to the private entities listed therein. This statute encourages and further facilitates the Constitutionally prohibited deprivations described in the First Claim.

47. The Tenth Circuit Court of Appeals in Case No. 11-1232 has already ruled that the absence of expressed indorsements must be considered the same as an absence of evidence in foreclosure actions and bankruptcy.

48. Therefore, CRS §38-39-102(3)(a)(I) and CRS §38-38-100.3(20) should be repealed and the judgment in Colorado Case No. 13CV30104 should be vacated.

# THIRD CLAIM FOR RELIEF AND SUPPORTING FACTUAL ALLEGATIONS

49. The Colorado Legislature not only created a framework that allows a foreclosing party to ". . . obtain an order authorizing sale . . ." (§38-38-105) with only "bare conclusory claims of ownership or lien" (Mitchell, supra). It went further in elevating bare "certifications" or "statements" to the status of "truth," and a presumption of statutory compliance, upon issuance of the foreclosure deed authorized by a Colorado District Court order, to wit:

50. Any deed executed by an officer or other official under this article *shall be prima facie evidence of compliance* with all statutory requirements for the sale and execution of the deed and *evidence of the truth of the recitals contained in the deed*.

51. The result of this Constitutional deficiency is to enable fraud by allowing the Deed of Trust to be used against the homeowner even if the creditor listed thereon is not the creditor attempting to take the property.

52. Therefore, CRS §38-38-504 should be repealed.

# FOURTH CLAIM FOR RELIEF AND SUPPORTING FACTUAL ALLEGATIONS

53. CRS. §13-40-104(1)(f) creates a "domino" deprivation of property without due process of law, by allowing a homeowner to be evicted from a home – based solely on the issuance of the public trustee's deed – even where the validity of the deed may be at issue in an independent action that challenges the validity of the Order that produced the public trustee's deed.

54. Any homeowner with a mortgage in Colorado may be unduly criminalized after their having their Constitutional rights violated per the above Claims.

55. Therefore, CRS §13-40-104(1)(f) should be repealed.

# FIFTH CLAIM FOR RELIEF AND SUPPORTING FACTUAL ALLEGATIONS

56. CRS §38-38-101(2) and §38-39-102(3)(a)(I) bar adequate remedies to homeowners damaged by improper foreclosures as described in the Claims above.

57. CRS §38-38-101(2) certainly puts an upper limit on the amount that may be recovered from a fraudulent foreclosure action, to wit, "The indemnity granted by this subsection (2) shall be limited to actual economic loss suffered together with any court costs and reasonable attorney fees and costs incurred in defending a claim brought as a direct and proximate cause of the failure to produce the original evidence of debt, but such indemnity shall not include, and no claimant shall be entitled to, any special, incidental, consequential, reliance, expectation, or punitive damages of any kind. A qualified holder acting as agent, nominee, or trustee shall be liable for the indemnity pursuant to this subsection (2)."

58. CRS §38-38-101(2) maintains the fiction that the homeowner "defending a claim brought as a direct and proximate cause of the failure to produce the original evidence of debt" has somehow remained a defendant in the matter at law. This illustrates the logical inconsistency necessary to sustain what may only be characterized as a legally contradictory and impossible set of requirements for that defendant.

59. CRS §38-39-102(3)(a)(I) reiterates C.R.S. §38-38-101(2) indemnifying the Public Trustee.

60. A core component of the Louisiana statutes upheld by the Mitchell Court was that:

> The debtor may immediately seek dissolution of the writ, which must be ordered unless the creditor proves the grounds for issuance (existence of

the debt, lien, and delinquency), failing which the court may order return of the property and assess damages, including attorney's fees, in the debtor's favor.

Mitchell, 416 U.S. 606, 94 S. Ct. 1899.

61. The Court considered the potential for an award of damages and attorneys' fees to the debtor to contribute – along with the requirement of competent documentary evidence – to minimizing the risk that a writ would be wrongfully issued. Id. at 416 U.S. 609-610, 617, 94 S. Ct. 1901, 1905. Attorneys' fees were allowed independently or as an element of damages (id. at 416 U.S. 622, 94 S. Ct. 1907). Damages were ". . . not restricted to pecuniary loss. They may encompass injury to social standing or reputation as well as humiliation and mortification." Id. at 416 U.S. 607, n. 8, 94 S. Ct. 1899, n. 8.

62. The Doehr Court, through four concurring justices, went further, in discussing the inadequacy of a bond to remedy damages a homeowner would suffer due to a wrongful attachment on real property.

"The necessity for at least a prompt postattachment hearing is self-evident because the right to be compensated at the end of the case, if the plaintiff loses, for all provable injuries caused by the attachment is inadequate to redress the harm inflicted, harm that could have been avoided had an early hearing been held. An individual with an immediate need or opportunity to sell a property can neither do so, nor otherwise satisfy that need or recreate the opportunity. The same applies to a parent in need of a home equity loan for a child's education, an entrepreneur seeking to start a business on the strength of an otherwise strong credit rating, or simply a homeowner who might face the disruption of having a mortgage placed in technical default. The extent of these harms, moreover, grows

with the length of the suit. . ."

63. Many state attachment statutes require that the amount of a bond be anywhere from the equivalent to twice the amount the plaintiff seeks. See, e.g., Utah Rule of Civ.Proc. 64C(b). These amounts bear no relation to the harm the defendants might suffer even assuming that money damages can make up for being removed from their homes by the threat or actual use of armed force. Reliance on a bond does not sufficiently account for the harms that flow from the abuses in the First, Second, and Third Claims to excuse a State from reducing that risk.

Doehr, 501 U.S. 22-23, 111 S. Ct. 2118-2119.

64. Appropriate damages, and attorneys' fees, are clearly core components of remedies for due process violations. Colorado's statutes fall dismally short of these standards, by allowing only actual economic loss, no attorneys' fees, and by expressly excluding non-economic damages.

65. Therefore, CRS §38-38-101(2) and §38-39-102(3)(a)(I) should be repealed.

## SIXTH CLAIM FOR RELIEF AND SUPPORTING FACTUAL ALLEGATIONS

66. All Senior judges, including Hon. Arthur R. Smith, are: 1. assigned to cases by the Chief Justice of the Colorado Supreme Court pursuant to Article VI, Section 5(3) of the Colorado Constitution, 2. retired and may return to temporary judicial duties pursuant to CRS §24-51-1105, and 3. invested in and receiving payments from the privatized funds Colorado Public Employees Retirement Association (CoPERA).

67. The *Comprehensive Annual Financial Report of Colorado PERA* published in the fiscal year ending December 31, 2012 stated on page 73 regarding Concentration of Credit Risk, "C.R.S § 24-51-206(3) requires that no investment of the fund in common or preferred stock, or both, of any single corporation shall

be of an amount which exceeds 5 percent of the then book value of the fund, nor shall the fund acquire more than 12 percent of the outstanding stock or bonds of any single corporation. The 12 percent requirement does not apply to governmental securities (U.S. Treasuries, sovereigns, etc.), GSE securities (agencies including **FNMA**, FHLMC, etc.), mortgage-backed securities (agency or non-agency), commercial mortgage-backed securities (CMBS)..."

68. The *Annual Report for Colorado PERA's 401(k) and DC Plans* for the fiscal year ending December 31, 2010 shows CoPERA investments in PIMCO Low Duration Fund Institutional Class on page 9. The Portfolio Composition-Top Holdings shows itemized investments in FNMA 4.5% TBA of 22%, FNMA 5% TBA of 6.85%, FNMA 1.125% of 3.80%, FNMA 5.5% of 1.45%.

69. Therefore, all retired and senior judges in Colorado have an interest in FNMA and are a party who is interested in any case involving FNMA because they are receiving money from FNMA via their pension payments.  CRS §13-1-122 describes "When a judge shall not act unless by consent" expressly stating that:

> A judge shall not act as such in any of the following cases: In an action or proceeding to which he is a party, or in which he is interested; when he is related to either party by consanguinity or affinity in the third degree; or when he has been attorney or counsel for either party in the action or proceeding, unless by consent of all parties to the action.

70. Because the Plaintiff, Wirth, was not informed of the Judge Arthur R. Smith's interest in the case and deprived of the legally required opportunity to consent to a judge who was evidently a party aligned with his adversary, FNMA, he was deprived of Due Process and Equal Protection yet again. By hearing the FED case after depriving the Plaintiff, Wirth, of his right to consent, Smith violated

CRS §18-8-404. First degree official misconduct, which states:

> (1) A public servant commits first degree official misconduct if, with intent to obtain a benefit for the public servant or another or maliciously to cause harm to another, he or she knowingly:
> (a) Commits an act relating to his office but constituting an unauthorized exercise of his official function; or ...(c) **Violates any statute or lawfully adopted rule or regulation relating to his office**.
> (2) First degree official misconduct is a class 2 misdemeanor.

[emphasis added]

71. In his official capacity as a substitute judge in the Park County Court, Smith: 1. ignored the self-evident felonies committed by FNMA and Nationstar that had been admitted into the County Court records, 2. usurped two long-standing Doctrines of the United States Supreme Court[2], and 3. ordered the eviction of the Plaintiff, Wirth, from his property and home. This order violated CRS §18-8-403. Official Oppression, which states:

> (1) A public servant, while acting or purporting to act in an official capacity or taking advantage of such actual or purported capacity, commits official oppression if, with actual knowledge that his conduct is illegal, he:
> (a) Subjects another to arrest, detention, search, seizure, mistreatment, dispossession, assessment, or lien; or...
>
> (2) Official oppression is a class 2 misdemeanor.

72. Therefore, the Court should find Arthur R. Smith criminally liable for violating CRS §13-1-122,  CRS §18-8-404, and  CRS §18-8-403.

---

2   The Doctrines of Clean Hands and Prior Exclusive Jurisdiction were both violated and usurped.

# SEVENTH CLAIM FOR RELIEF AND SUPPORTING FACTUAL ALLEGATIONS

73. During the unlawful FED hearing of May 29th, 2014, opposing counsel offered two defenses for the evident felonies committed by the Defendants, FNMA and Nationstar: (1) The felonious Demand for Possession dated January 7, 2014 was "premature", and (2) Nationstar was a "servicer" for FNMA. This defense proves that Nationstar is guilty of misrepresenting ownership interest in real property and that the misrepresentation was relied upon in the Rule 120 hearing of December 3rd, 2014 presided over by the Judge Stephen A. Groome.

74. Refering to Nationstar as a "servicer" for FNMA only proves there is a deliberate scheme to obfuscate the Real Party in Interest. By hearing the case without informing Wirth of his interest in mortgage-backed securities and asking for consent, Groome violate  CRS §13-1-122 and thereby violated  CRS §18-8-404 knowingly committing an act of official misconduct. The Public Trustee's subsequent "sale" of Wirth's home comprises an act of Official Oppression in violation of CRS §18-8-403.

75. Therefore, the Court should find Stephan A. Groome criminally liable for violating CRS §13-1-122,  CRS §18-8-404 and CRS §18-8-403.

# EIGHTH CLAIM FOR RELIEF AND SUPPORTING FACTUAL ALLEGATIONS

76. All Colorado judges are invested in the private funds of CoPERA that include mortgage-backed securities such as those offered by FNMA. Having one judge invested in an adversary in a specific case is a single act of unlawful conduct unless the hearing is by consent of both adversaries. Having all the judges in an entire State is much worse because homeowning defendants cannot find an

impartial judge in the entire State judiciary.

77. Therefore, the State of Colorado should be ordered to publicly fund the pensions of all judges employed by the State and prohibited from privatizing any part of State judges' pension funds.

## NINTH CLAIM FOR RELIEF AND SUPPORTING FACTUAL ALLEGATIONS

78. The shell-game tactic of misrepresenting ownership interest is well known to Defendants Jay Bray and Timothy J. Mayopoulos, Chief Executives of Nationstar and FNMA respectively. Misrepresentation of ownership interest is used to cover criminal conduct that penetrates the entire Colorado Judiciary system and potentially corrupts each and every judge in the State by investing them in FNMA and then hiding this fact from homeowning defendants in court in violation of CRS §13-1-122, CRS §18-8-404 and CRS §18-8-403.

79. Seeing how both Colorado judges, Groome and Smith, each committed the same misfeasances under the Colorado statutes ( CRS §13-1-122,  CRS §18-8-404, CRS §18-8-403) to deprive the Plaintiff, Wirth, of his rights based on the Unconstitutional statutes, they, together with the State Actors (under CRS §38-38-100.3(10)&(20)) Nationstar, FNMA, Bray, and Mayopoulos also violated 18 USC §242, Deprivation of Rights Under the Color of Law.

80. These criminal offenses were motivated by the financial interests of the Colorado judges in combination with Nationstar and FNMA. The executives of FNMA and Nationstar knowingly use their corporations to bribe judicial officials via their privatized pensions. Taken together with the twice-repeated refusals to disclose interests pursuant to CRS §13-1-122, payments from FNMA to Colorado judges are bribes that violate CRS §18-8-302.

81. In the present Complaint, Timothy J. Mayopoulos is self-evidently guilty of at least two counts of violating CRS §18-8-302, Bribery. His co-conspirator, Jay Bray, operates Nationstar in a conspiracy to hide the judicial interest and bribery from homeowning defendants in Rule 120 proceedings in violation of CRS §18-2-201(1), Conspiracy.

82. The unlawful activities of the executive Defendants, Mayopoulos and Bray, of FNMA and Nationstar done through their respective corporations are "specified unlawful activity" under 18 USC §1956(c)(7)(iv) which includes "**bribery of a public official**, or the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official;"

83. Plaintiff's property was unlawfully sold from Nationstar to FNMA for consideration of $133,818.99 to also violate 18 USC §1957(a-c).

84. The Defendants of the Castle Law Group, Cynthia Lowery-Graber, Deanna Westfall, Britney Beall-Eder, Christopher T. Groen, and Lawrence E. Castle, knowingly coordinated, aided, and abetted the commission of felonies and misdemeanors as agents of Mayopoulos and Bray through their respective incorporations.

### *Racketeering*

85. 18 USC § 1961 - Definitions:

(1) "racketeering activity" means (A) any act or threat involving murder, kidnapping, gambling, arson, **robbery, bribery**, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than

one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 **(relating to bribery)**...[emphasis added]

86. Mayopoulos has corruptly influenced the entire Colorado judiciary through its private pension fund and caused at least two Colorado judges to violate CRS §13-1-122,  CRS §18-8-404,  CRS §18-8-403 through systematic bribery in violation of 18 USC § 201 and 18 USC §1956(c)(7)(iv), violations of which are racketeering activity under 18 USC § 1961(1), in addition to engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 USC §1957(a-c).

87. By holding a significant portion of Colorado judges' pension funds hostage with FNMA investments and hiding those interests with a front company, Defendants Bray and Mayopoulos together have conspired to prevent Colorado judges from discharging their duties under the law in violation of 18 USC § 372.

88. Whereas:

1. The courts must never allow crime (such as violations of CRS §18-5-302(2), CRS §18-5-302(1), 18 USC §1343, 18 USC §1018, CRS §18-2-201(1),  CRS §18-8-302, 18 USC § 201, 18 USC § 372, CRS §13-1-122, CRS §18-8-404, CRS §18-8-404, 18 USC §1956(c)(7)(iv), 18 USC § 1957(a-c) and 18 USC § 242) to be accepted as a standard business practice, the courts are obligated to avoid crime and shield themselves from corrupting influences.

2. The Defendants, Groome and Smith, have violated judicial rules and committed unlawful acts of misconduct and oppression for the benefit of Nationstar and FNMA, Mayopoulos and Bray in violation of CRS §13-1-122, CRS §18-8-404, CRS §18-8-404, and 18 USC § 242.

3. The Defendants of the Castle Law Group: Lowery-Graber, Beall-Eder, Westfall, and Groen have willfully and knowingly aided and encouraged the commission of felonies by Mayopoulos and Bray in violation of CRS §18-5-302(2), CRS §18-5-302(1), 18 USC §1343, 18 USC §1018, CRS §18-2-201(1),  CRS §18-8-302, 18 USC § 201, 18 USC §1956(c)(7)(iv), 18 USC § 1957(a-c), and 18 USC § 372.

4. The Defendant Castle has provided a corporate shield and an enviroment for the promotion of fraud, robbery, and corruption in violation of CRS §18-5-302(2), CRS §18-5-302(1), 18 USC §1343, 18 USC §1018, CRS §18-2-201(1),  CRS §18-8-302, 18 USC § 201, 18 USC §1956(c)(7)(iv), 18 USC § 1957(a-c), and 18 USC § 372.

5. The Defendants and co-conspirators, Mayopoulos and Bray, have committed acts of systematic bribery and corruption of the Colorado judiciary to advance their racketeering enterprises in violation of 18 USC § 201, 18 USC § 1957(a-c), and 18 USC § 372. They have come to court in all cases of Equity with Unclean Hands.

89. Therefore, the Court should:

1. Hold the Defendants of the Castle Law Group, Lowery-Graber, Beall-Eder, Westfall, and Groen, criminally liable for willfully and knowingly aiding and abetting the racketeering activities of Mayopoulos and Bray in violation of CRS §18-5-302(2), CRS §18-5-302(1), 18 USC §1343, 18 USC §1018, CRS §18-2-201(1),  CRS §18-8-302, 18 USC § 201, 18 USC §1956(c)(7)(iv), 18 USC § 1957(a-c), and 18 USC § 372 .

2. Hold the Defendant, Castle, criminally liable for running a criminal enterprise in furtherance of the racketeering activities of Mayopoulos and Bray in

violation of CRS §18-5-302(2), CRS §18-5-302(1), 18 USC §1343, 18 USC §1018, CRS §18-2-201(1),  CRS §18-8-302, 18 USC § 201, 18 USC §1956(c)(7)(iv), 18 USC § 1957(a-c), and 18 USC § 372.

3.  Hold the Defendants Timothy J. Mayopoulos and Jay Bray criminally liable for systematic bribery and racketeering activities in violation of CRS §18-5-302(2), CRS §18-5-302(1), 18 USC §1343, 18 USC §1018, CRS §18-2-201(1),  CRS §18-8-302, 18 USC § 201, 18 USC §1956(c)(7)(iv), 18 USC § 1957(a-c), and 18 USC § 372.

4.  Hold the Defendants' incorporations FNMA and Nationstar criminally liable as instruments in systematic bribery and racketeering activities in violation of CRS §18-5-302(2), CRS §18-5-302(1), 18 USC §1343, 18 USC §1018, CRS §18-2-201(1),  CRS §18-8-302, 18 USC § 201, 18 USC §1956(c)(7)(iv), 18 USC § 1957(a-c), and 18 USC § 372.

5.  Void the sale of the Plaintiff's property and order that Wirth be granted quiet title to his property and home.

# TENTH CLAIM FOR RELIEF AND SUPPORTING FACTUAL ALLEGATIONS

90. The Park County Sheriff's Department under the leadership of Fred Wegener broke into Wirth's home and assisted Mary Hagar in raiding, stealing, and destroying what remained of Wirth's possessions while he was recovering from a strained back.

91. The Plaintiff strained his back while moving heavy equipment as an emergency was foisted on him by the unlawful actions of Smith. Hagar and her agents wantonly stole or destroyed Wirth's personal property while Wegener threatened

Wirth with violence against his person should he remain in his home. The property stolen or destroyed included a library of reference books, family photos, clothing, tools, a custom-built desk, a custom-built entertainment rack, and two motor vehicles.

92. Therefore, the Court should hold Fred Wegener criminally liable for depriving Wirth of his rights under the color of law pursuant to 18 USC §242 and Mary Hagar criminally liable for aggravated robbery under CRS §18-4-302.

**REQUEST FOR RELIEF**

Wherefore, the plaintiff respectfully requests:

1. Repeal CRS §38-38-101(6)(b), CRS  §§38-38-101(1)(b)(II) and (c)(II).

2. Repeal CRS §38-39-102(3)(a)(I) and CRS §38-38-100.3(20).

3. Repeal CRS §38-38-504.

4. Repeal CRS §13-40-104(1)(f).

5. Repeal CRS §38-38-101(2) and §38-39-102(3)(a)(I).

6. Find Arthur R. Smith criminally liable for violating CRS §13-1-122,  CRS §18-8-404, and  CRS §18-8-403.

7. Find Stephan A. Groome criminally liable for violating CRS §13-1-122,  CRS §18-8-404 and CRS §18-8-403.

8. Order the State of Colorado to publicly fund the pensions of all judges employed by the State and prohibit privatizing any part of State judges' pension funds.

9. Per the Ninth Claim the following are requested:

   1. Hold the Defendants of the Castle Law Group, Lowery-Graber, Beall-Eder, Westfall, and Groen, criminally liable for willfully and knowingly aiding and abetting the racketeering activities of Mayopoulos and Bray in violation of CRS §18-5-302(2), CRS §18-5-302(1), 18 USC §1343, 18 USC §1018, CRS §18-2-201(1),  CRS §18-8-302, 18 USC § 201, 18 USC §1956(c)(7)(iv), 18 USC § 1957(a-c), and 18 USC § 372.

   2. Hold the Defendant, Castle, criminally liable for running a criminal enterprise in furtherance of the racketeering activities of Mayopoulos and Bray in violation of CRS §18-5-302(2), CRS §18-5-302(1), 18 USC §1343, 18 USC §1018, CRS §18-2-201(1),  CRS §18-8-302, 18 USC § 201, 18 USC §1956(c)(7)(iv), 18 USC § 1957(a-c), and 18 USC § 372.

3. Hold the Defendants Timothy J. Mayopoulos and Jay Bray criminally liable for systematic bribery and racketeering activities in violation of CRS §18-5-302(2), CRS §18-5-302(1), 18 USC §1343, 18 USC §1018, CRS §18-2-201(1),  CRS §18-8-302, 18 USC § 201, 18 USC §1956(c)(7)(iv), 18 USC § 1957(a-c), and 18 USC § 372.

4. Hold the Defendants' incorporations FNMA and Nationstar criminally liable as instruments in systematic bribery and racketeering activities in violation of CRS §18-5-302(2), CRS §18-5-302(1), 18 USC §1343, 18 USC §1018, CRS §18-2-201(1),  CRS §18-8-302, 18 USC § 201, 18 USC §1956(c)(7)(iv), 18 USC § 1957(a-c), and 18 USC § 372.

5. Void the sale of the Plaintiff's property and order that Wirth be granted quiet title to his property and home.

10.    Per the Tenth Claim, the following are requested:

1. Hold Fred Wegener criminally liable for depriving the Plaintiff of his rights under the color of law in violati0n of 18 USC §242

2. Hold Mary Hagar criminally liable for aggravated robbery under CRS §18-4-302.

Respectfully amended this 29th day of August 2014.

s/Martin T. Wirth

**Martin T. Wirth,** Plaintiff pro se

36 Iris Drive

Bailey, Colorado 80421

303-816-1054

martin.wirth@specialtywrench.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 29th, 2014, I served a true and complete copy of the foregoing Amended Complaint pursuant To Fed.Rule.Civ.Proc. 15(d) upon each Defendants or counsel of record via CM/ECF or request service by the US Marshall, as listed below:

| Party | Counsel of Record | Service Method |
|---|---|---|
| John Hickenlooper Stephen A. Groome Arthur R. Smith | Kathryn A. Starnella <kathryn.starnella@state.co.us> | CM/ECF |
| Michelle Miller Fred Wegener | Lee Phillips <hcp@hphclaw.com> | CM/ECF |
| Nationstar Mortgage, LLC Jay Bray, CEO | Jamie G. Siler <jsiler@bmas.com> James P. Eckels <jeckels@bmas.com> | CM/ECF |
| Lawrence E. Castle The Castle Law Group, LLC | Christopher T. Groen <cgroen@cmsatty.com> | CM/ECF |
| Cynthia Lowery-Graber Deanna Westfall Britney Beall-Eder Christopher T. Groen | <cgroen@cmsatty.com> | CM/ECF |
| FNMA Timothy J. Mayopoulos, CEO | Jamie G. Siler <jsiler@bmas.com> James P. Eckels <jeckels@bmas.com> | CM/ECF |
| Mary Hagar | Pending Service | US Marshall requested |

s/ Martin T. Wirth