IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  1:13-cv-03309-REB-KMT

MARTIN THOMAS WIRTH,

     Plaintiff,

v.

JOHN HICKENLOOPER, et al.,

     Defendants.

---

**DEFENDANTS THE CASTLE LAW GROUP, CYNTHIA LOWERY-GRABER, DEANNA WESTFALL, BRITNEY BEALL-EDER, CHRISTOPHER T. GROEN AND LAWRENCE E. CASTLE'S MOTION TO DISMISS 5TH AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) and 12(b)(6)**

---

Defendants The Castle Law Group, LLC ("CLG"), Cynthia Lowery-Graber, Deanna Westfall, Britney Beall-Eder, Christopher T. Groen and Lawrence E. Castle, in his corporate and individual capacities (collectively "CLG Parties"), through their attorneys The Castle Law Group, LLC, by Phillip A. Vaglica, of counsel, and pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), submit their motion to dismiss the plaintiff's Fifth Amended Complaint [#76] ("Complaint")[1] in this action for reasons set forth below.

### I. OPERATIVE FACTS

1.    The plaintiff formerly owned real property ("Property") with a street address of 36 Iris Drive, Bailey, CO which was secured by a deed of trust.

---

[1] The most recent version of plaintiff's effort to plead his case contains ten (10) claims for relief. The first five (5) claims for relief all ask that certain Colorado state statutes be repealed and do not assert a plausible claim against the CLG Parties.  Claims 6, 7, 8, and 10 assert claims against defendants other than the CLG Parties.  The 9th claim asks the court to hold the CLG Parties "criminally liable" for "aiding and abetting" the commission of misdemeanors, felonies, and racketeering activities pursuant to 18 U.S.C. § 1961. This motion is addressed to that claim.

2.	The plaintiff defaulted in his payment obligations under the terms of a promissory note, and the Property was foreclosed and sold to Nationstar Mortgage LLC ("Nationstar") at a public trustee foreclosure sale on December 18, 2013.

3.	After the Property was sold, also on December 18, 2013, a Public Trustee's Certificate of Purchase was issued to Nationstar. **Exhibit A.**

4.	On December 31, 2013, the ability of any junior lien holder to exercise a right of redemption expired and title to the Property automatically vested in the holder of the Certificate of Purchase pursuant to C.R.S. § 38-38-501.  Subsequently, on January 8, 2014, a Confirmation Deed confirming the above was issued by the Park County (CO) Public Trustee to Nationstar. **Exhibit B.**

5.	On March 18, 2014 a Special Warranty Deed was executed by Nationstar which transferred its interest to the Federal National Mortgage Association ("Fannie Mae"), and that deed was recorded with the Park County Clerk on March 24, 2014. **Exhibit C.**

6.	Since the plaintiff refused to vacate the Property, Fannie Mae, through CLG, issued a formal written demand dated March 26, 2014 and filed on April 9, 2014 ("April Demand") to the plaintiff in order to secure possession of the Property which it had owned since the foreclosure sale.  **Exhibit D.**

7.	After having the above-described demand for possession served on the plaintiff on March 31, 2014, CLG, on behalf of Fannie Mae, brought an eviction action on April 9, 2014 ("Eviction Action") against the plaintiff by filing a Verified Complaint in

Unlawful Detainer as Case Number 2014C30068 in the County Court, Park County, Colorado.  **Exhibit E.**

8. As the attached docket for the Eviction Action reflects, the state court issued a judgment for possession followed by a writ of restitution on June 2, 2014. (**Exhibit F),** and CLG represented Fannie Mae until a substitution of counsel was filed on May 16, 2014.

## II.   STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 1949-51.

The court, however, need not accept conclusory allegations without supporting factual averments.  *Southern Disposal, Inc., v. Texas Waste,* 161 F.3d 1259, 1262 (10th Cir. 1998).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1940.  Additionally, a motion to dismiss under Rule 12(b)(1) may present a

challenge to the facts upon which a court's subject matter jurisdiction depends, and, under *Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir.1995), the court does not presume the truth of the factual allegations of the pleadings.  Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951.   In the instant case, the fundamental notice requirements of Rule 8(a)(2) simply are not present.

## III.  ARGUMENT

### A.  NO RIGHT OF ACTION EXISTS UNDER THE CITED CRIMINAL STATUTES

Pursuant to C.R.S. § 38-38-501(1), once the Certificate of Purchase was issued to Nationstar on December 18, 2013, title subsequently vested in the holder of the Certificate of Purchase eight (8) business days later.  Colorado law does not afford redemption rights to former borrowers, therefore, plaintiff's interest in the Property was extinguished on December 18, 2013, at the time of sale.  Nationstar, or any subsequent owner of the Property, had the right to evict plaintiff in accord with the Colorado Forcible Entry and Unlawful Detainer statute ("Eviction Action").  That is exactly what occurred: the Eviction Action was properly brought in state court, and the plaintiff was an active participant.  See Docket, **Exhibit E**.  The plaintiff seeks to identify as "felonious" and "illegal" an initial Demand for Possession which issued on January 21, 2014 (**Exhibit G**) ("January Demand") which reflected that Fannie Mae was the owner of the Property and was seeking possession.  The plaintiff's position has no merit and is an overt attempt to create an issue where there is none.

Fannie Mae was the investor on the particular loan and a Special Warranty Deed was issued to Fannie Mae with respect to the Property on March 18, 2014.  The April Demand reflected that Fannie Mae was the owner, the Eviction Action was brought in Fannie Mae's name, the Writ of Restitution was issued in Fannie Mae's name, and the plaintiff was evicted by Fannie Mae.  The January Demand had no legal significance to the Eviction Action and had no practical or legal effect to any right of the plaintiff especially in light of the fact that plaintiff's interests in the Property were extinguished on December 18, 2013.  Objectively, if any person or entity had standing to complain about the January Demand in Fannie Mae's name, it would have been Nationstar.

Plaintiff's assertion of the January Demand being basically illegal, fraudulent and immoral is rather misplaced since he, as a squatter, had no ownership interest in the Property at the time of the January Demand.  Plaintiff's position on this rather phantom issue is similar to the argument raised by borrowers in foreclosure cases who have asserted defenses based upon the argument that "the foreclosing lender isn't the entity from whom I borrowed the money."[2]

The plaintiff has cited numerous state criminal statutes as the basis for his request that the CLG Parties be found "criminally liable" for their alleged action.  These assertions have no merit.  In *Quintano v. Industrial Comm'n,* 495 P.2d 1137, 1139 (Colo. 1972), the court noted that a criminal statute does not imply a private right of

---

[2] "…not one of the plaintiffs in this action has suffered an injustice.  They promised to repay money, they pledged the properties as security for their promises, they failed to repay the money as promised, and they should lose the properties that they pledged as security."  *Welk, et al. v. GMAC Mortgage, LLC, et al.*, 850 F.Supp.2d 976,  2012 U.S. Dist. LEXIS 43618 (D. Minn. 2012), *aff'd* at 720 F.3d 736 (8th Cir. 2013).

5

action unless there is a clear legislative intent to create one. To infer a private right of action where the statute does not provide a "method for enforcing a violation" of the statute, would frustrate the purpose of the statute. *Allstate Ins. Co. v. Parfrey*, 830 P.2d 905, 911 (Colo. 1992). The *Quintano* court went as far as to observe that implying a private right of action from a criminal statute "is not a subject in which [courts] should attempt to infer such a legislative intent." *Quintano, supra* at 495 P.2d at 1138. The court concluded that such legislative intent "should be loud and clear, i.e. by authorizing the remedy." *Id.* None of the statutes sprinkled into the plaintiff's conclusory allegations of wrongdoing by the CLG Parties proves the required legislative intent.

## B.  PLAINTIFF'S RICO CLAIM IS UNINTELLIGIBLE

To state a claim under the Racketeer Influenced and Corrupt Organizations Act, ("RICO"), a plaintiff must specifically allege that a defendant violated 18 U.S.C. §1962 by engaging in the (1) conduct, (2) of an enterprise (3) through a pattern (4) of racketeering activity, and establish that the pattern included the commission of at least two predicate acts. See *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006); see also *Deck v. Engineered Laminates,* 349 F.3d 1253, 1256-57 (10th Cir. 2003). RICO "predicate acts" are those contained in 18 U.S.C. §1961(1). *Id*. at 1255.

Procedurally, a number of courts have required plaintiffs to plead RICO predicate acts of racketeering activity with particularity with respect to each named defendant. See, e.g. *Saine v. A.I.A., Inc.*, 582 F.Supp. 1299 (D. Colo. 1983). The extreme stigmatizing effect of a racketeering claim, coupled with the imprecise nature of some of RICO's concepts, have led a number of courts to require that underlying predicate acts

of e.g. fraud in a RICO claim, to be pleaded with the particularity required under Rule 9(b) because of the "threat of treble damages and injury to reputation." *Cayman Exploration Corp. v. United Gas Pipe Line,* 873 F.2d 1357, 1362 (10th Cir. 1989). Plaintiffs' RICO allegations – to the extent that there are any based in fraud – are pleaded without the degree of specificity required under Rule 9(b). *Burnett v. Amrein*, No. 07-1000, 2007 WL 2070296 at No. 2 (10th Cir. 2007). Additionally, several courts have required the principles of Rule 9 to be applied in a civil RICO action even to allegations not sounding in fraud. See, *Taylor v. Bear Stearns & Co.,* 572 F.Supp. 667 (N.D. Ga. 1983).

In seeking to apply the above standards, the Supreme Court, in *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955 (2007), explained that a pleading must show that the allegations of the complaint "possess enough heft...." to establish an entitlement to relief and, in doing so, must allege enough facts to raise the pleaded claims beyond the level of speculation. The articulated facts must instead, "nudge[] their claims across the line from conceivable to plausible[.]" *Id.* at 1974. The Tenth Circuit has applied this "plausibility" standard. See, *Pace v. Swerdlow*, 519 F.3d 1067, 1075 (10th Cir. 2008); *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Plaintiff's RICO Claim is quintessentially implausible.[3]

---

[3] If the plaintiff has attempted to plead a "RICO conspiracy claim," it is devoid of any degree of specificity to identify these defendants' alleged "agreement to a pattern of racketeering activity," and their further alleged agreement to specific statutorily prescribed conduct. As such, any purported RICO conspiracy claim is not sufficiently pleaded. *Lifeblood Biomedical, Inc., Opt-In-Trust v. Mann,* 423 F.Supp.2d 1155, 1178 (D. Colo. 2006).

7

1. **NO "PATTERN OF RACKETEERING" HAS BEEN SUFFICIENTLY PLEADED**

Substantively, one of the most complex aspects of a claim under RICO is proof of a "pattern of racketeering activity," as defined by 18 U.S.C. §1961(5).  *See generally*, *Torwest DBC, Inc. v. Dick,* 810 F.2d 925, 927-29 (10th Cir. 1987).  As reflected in 18 U.S.C. §1961(5), a pattern of racketeering activity <u>requires</u> at least two acts of racketeering activity.  The statute seeks to make criminal or civilly actionable crimes committed through a pattern of activity with "racketeering activity" defined as "any 'acts which [are] indictable' under federal law … and are referred to as "predicate acts" because they form the basis for liability under RICO."  *Dewey v. Lauer* 2009 U.S. Dist. LEXIS 96628 at *7 (D.Colo. Sept. 30, 2009) (citations omitted).

Under RICO, a pattern of racketeering activity must exhibit two characteristics: continuity plus relationship.  *H.J. Inc. v. Northwestern Bell*, 492 U.S. 229 (1989).   RICO requires that the predicate acts be related.  In order to be "related" for purposes of RICO, predicate acts must "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc., id.* at 239.  The Complaint fails to make it plausible that these defendants' acts were related in terms of "purposes, results, participants, victims or methods of commission" to some alleged scheme to defraud the plaintiff.

In *Dewey v. Lauer, supra*, 2009 U.S. Dist. LEXIS 96628 at *13, the court, citing *H. J. Inc.*, noted that the two required predicate acts must be a regular way of conducting the defendant's ongoing legitimate business or the RICO enterprise and also

8

must be related to the conduct of the enterprise and pose the threat of continuing activity extending over a substantial period of time.  If the acts of racketeering loosely referred to in the Complaint were the eviction of a squatter or trespasser by the owner of the property through a lawyer acting pursuant to a statutory scheme, the acts are not predicate acts under § 1961(1).  If they are somehow found to be predicate acts, they fail the "relationship plus continuity" requirement.  If the predicate acts are the lawyer and the law firm representing lenders in evictions, then while there have been multiple acts, they were not committed by "any person employed by or associated with any enterprise engaged in … interstate … commerce …." *United States v. Knight*, 659 F.3d 1285, 1287-88 (10th Cir. 2011).[4]

### 2. NO "ENTERPRISE" HAS BEEN SUFFICIENTLY PLEADED.

The Complaint leaves these defendants to guess as to what may constitute an "enterprise" under RICO.  Throughout the paragraphs of the Complaint, there are no pleaded facts of any kind to sufficiently allege the nature of the RICO enterprise and/or whether it meets the statutory definition of enterprise in 18 U.S.C. §1961(4).  Consequently, the alleged association must be assumed to be an "association-in-fact." enterprise.  See, e.g. *Kriston v. Peroulis,* 2010 U.S. Dist. LEXIS 30481at *23 (Mar. 29, 2010)*.*

It must be noted initially that in RICO pleading, the "enterprise" cannot be the pattern of racketeering activity; it must be an entity separate and apart from the pattern

---

[4] The Supreme Court has employed a "natural and common sense approach to RICO's pattern element". *H.J., supra*, 106 L.Ed.2d at 206.  Similarly, any purported application of RICO to the facts of this case violates a "common sense" reading of that statute.

of activity in which it engages.  The existence of an enterprise at all times remains a separate element which must be presented to satisfy a claim under RICO.  *United States v. Turkette*, 452 U.S. 576 (1981).  The existence of an "enterprise" is proved by evidence of "an ongoing organization, formal or informal, and <u>by evidence that the various associates function as a continuing unit</u>".  *Id*. at 583 (emphasis added).  As further established by *Boyle v. United States,* 129 S. Ct. 2237, 2243 (2009), an association-in-fact enterprise must have a structure with three features: purpose, relationships among those associated with the enterprise, and longevity.  In this case, the alleged association—whatever it is supposed to have been—has no "ascertainable structure which existed for the purpose of maintaining operations directed toward an economic goal that has an existence that can be defined apart from the commission of the predicate acts constituting the pattern of racketeering activity."  *United States v. Anderson*, 626 F.2d 1358, 1372 (8th Cir. 1980); see also *Myers v. Lee,* 2010 WL 37745632 (E.D. Va. Sept. 21, 2010) (dismissing RICO claim where complaint failed to allege "a RICO enterprise that operates or functions in a way distinct from the defendants themselves").

      Federal cases decided in the District of Colorado have expressly followed the "discreet economic association" requirement of *United States v. Anderson*.  See, *Saine v. A.I.A., Inc.*, *supra* at 582 F.Supp. 1299, 1305.  In *Saine*, Judge Kane dismissed a RICO claim holding that the enterprise allegation was defective because there was no proof that the association-in-fact "had any existence separate and apart from the alleged predicate acts."  *Id.* At 1306.  Similarly, Judge Kreiger, in *Kriston, supra,* at 2010

U.S. Dist. LEXIS 30481 at *22 found that there was no enterprise sufficiently alleged. The court reached that determination by concluding that the plaintiff failed to allege "… that the defendants were involved in an association-in-fact functioning as a continuing unit, with a common purpose, with relationships among the members or with any type of longevity." *Id.* These decisions are consistent with *Boyle* which confirmed that a RICO enterprise must have structure.

Finally, the provisions of RICO conferring federal jurisdiction provide that the <u>enterprise</u>, not the predicate acts or pattern, must be engaged in or affect interstate or foreign commerce. *United States v. Murphy*, 768, F.2d 1518, 1531 (7th Cir. 1985); see also, *Reynolds v. Condon*, 908 F.Supp. 1494, 1508 n.6 (N.D. Iowa (1995) (the enterprise rather than the individual defendants must affect interstate commerce). While the provision has been liberally construed, if there is no nexus whatsoever with interstate commerce, there can be no RICO claim.  See, e.g. *Owl Construction Co. v. Ronald Adams Contractor, Inc.*, 642 F.Supp. 475, 478 (E.D. La. 1986) (rejecting plaintiff's RICO claim for failure to produce any evidence showing an effect on interstate commerce). There is no interstate commerce nexus in this case which could ever be plausible; state law matters related to evictions are quintessential examples of intrastate matters.

## C.     PLAINTIFF HAS FAILED TO PLEAD A CLAIM FOR CIVIL CONSPIRACY

In various places within his Complaint, the plaintiff concludes that these defendants "aided and abetted" certain acts committed by others.  If these conclusions were considered to allege a civil conspiracy, then that claim fails.

To prove a claim for civil conspiracy, the plaintiff must show: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as to the proximate result. *Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995). The plaintiff must present evidence of an agreement, and the court may not infer its existence. *Id*. "Additionally, the purpose of the conspiracy must involve an unlawful act or unlawful means. A party may not be held liable for doing in a proper manner that which it had a lawful right to do." *Id*.; *see also Magin v. DVCO Fuel Sys., Inc.*, 981 P.2d 673, 675 (Colo. App. 1999).

To survive a motion to dismiss, a complaint must contain more than conclusory or general allegations of conspiracy. *Henson v. Bank of Am.*, 2013 U.S. Dist. LEXIS 41307 (D. Colo. Mar. 25, 2013). "A claim of conspiracy requires plaintiff demonstrate direct or circumstantial evidence of a meeting of the minds or agreement among the defendants." *Merritt v. Hawk*, 153 F. Supp. 2d 1216, 1225 (D. Colo. 2001) (citation omitted). "[C]onspiracy can be shown by a sequence of events from which a reasonable jury could infer there was a meeting of the minds." *Id*. "However, conclusory allegations that defendants "aided each other" or acted "in concert," or "conspired" without specific factual allegations to support such assertions are insufficient." *Id*. at 1225 (quoting *Aniniba v. City of Aurora*, 994 F. Supp. 1293, 1298 (D. Colo. 1998)). *Cf. Twombly*, 550 U.S. at 557 (noting that "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality," and "when allegations of parallel conduct are set out . . . they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could

just as well be independent action"). The plaintiff's Complaint does not suggest or detail any agreement; it merely lists a variety of state crimes and vaguely concludes that the defendants "knowingly coordinated, aided and abetted the commission of felonies and misdemeanors." Am. Compl. ¶ 84. Allegations of acting together, without identifying specific facts to establish an agreement to act, accompanied by nothing more than a bare assertion of a conspiracy, do not plausibly suggest a conspiracy" and as such they "fail to nudge . . . claims across the line from conceivable to plausible." *See Am. Dental Assoc. v. Cigna Corp*., 605 F.3d 1283, 1294 (11th Cir. 2010). Accordingly, the plaintiff's civil conspiracy claim should be dismissed.

### D. THE COURT LACKS JURISDICTION OVER PLAINTIFF'S CLAIMS FOR RELIEF PURSUANT TO THE ROOKER-FELDMAN DOCTRINE

If the court were to find that a plausible RICO claim has been pleaded in this case, it is fundamental that absent an assurance that jurisdiction exists, a court may not proceed in a case. *Lightstone Group, LLC v. C.W. Gen. Contractor*, No. 10-cv-03096-PAB, 2010 WL 5387758, at *1, 2010 U.S. Dist. LEXIS 145675 (D. Colo. Dec. 22, 2010). Because the instant plaintiff's claim/claims for relief all seek review and/or rejection of, or are inextricably intertwined with, a final state court judgment, this Court lacks jurisdiction to proceed.

The *Rooker-Feldman* doctrine provides that federal courts, other than the United States Supreme Court, lack jurisdiction to adjudicate claims seeking review of state court judgments. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983); *Rooker v. Fidelity Trust Co*., 263 U.S. 413, 415-16 (1923). More specifically, the *Rooker-Feldman* doctrine precludes "cases brought by state-court

13

losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

The *Rooker-Feldman* doctrine is not limited to the preclusion of claims actually litigated and decided on the merits by the state court, it also precludes claims which are inextricably intertwined with the state court judgment. *Tal v. Hogan,* 453 F.3d 1244,1256 (10th Cir. 2006). "A claim is inextricably intertwined if 'the state-court judgment caused, actually and proximately, the injury for which the federal-court plaintiff seeks redress.'" *Id.* (quoting *Kenman Eng'g v. City of Union*, 314 F.3d 468, 478 (10th Cir. 2002)). "[I]f a favorable resolution of a claim would upset a [state court] judgment, the claim is [barred under the *Rooker-Feldman* doctrine] if it is 'inextricably intertwined' with the judgment, even if the underlying judgment issue was not raised or addressed in the state court that handed down the judgment." *Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1140 (10th Cir. 2006).

Appropriate application of the *Rooker-Feldman* doctrine to a Colorado eviction action is dependent on a few variables, including when the federal case was initiated and what relief is sought by the plaintiff. *Driskell v. Thompson*, 2013 U.S. Dist. LEXIS 129018 *24 (D. Colo. Aug. 21, 2013). Here, plaintiff is in an identical procedural posture as the plaintiff in *Dillard v. Bank of N.Y.*, 476 Fed. Appx. 690 n.3 (10th Cir. 2012), i.e. his eviction proceedings were final prior to the filing of this lawsuit, and nothing in the state court record indicates that any matters were pending in state court when the instant

action was filed. **Exhibit F.** Exercising federal jurisdiction over the aforementioned claim/claims would require this Court to substitute its judgment for that of the state court on the issue of property rights which involves important state interests and looks to state law for their resolution. *See, Yokomizo v. Deutsche Bank Sec., Inc.*, 2011 U.S. Dist. LEXIS 78966, 2011 WL 2912691, at *2 (D. Colo. July 20, 2011). Accordingly, plaintiff's claim/claims for relief must be dismissed for lack of jurisdiction.

WHEREFORE, these defendants request that plaintiffs' Complaint be dismissed with prejudice and that the court award the defendants attorneys' fees and costs.

RESPECTFULLY SUBMITTED this 19th day of September, 2014.

        THE CASTLE LAW GROUP, LLC

        /s/ *Phillip A. Vaglica*
        Phillip A. Vaglica, of counsel
        999 Eighteenth Street, Suite 2201
        Denver, Colorado 80202
        (303) 865-1400
        Fax:  (303) 865-1410
        vaglica@vaglica.com; pvaglica@cmsatty.com

        Attorneys for Defendants Lawrence E. Castle, and
        The Castle Law Group, LLC

## **CERTIFICATE OF SERVICE**

I certify that on September 19, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- **James P. Eckels**
  jeckels@bmas.com,rwhitaker@bmas.com,raccomazzo@bmas.com,madams@bmas.com
- **Herbert C. Phillips**
  hcphillips@hphclaw.com,ama@hphclaw.com,mla@hphclaw.com,vam@hphclaw.com
- **Jamie Grant Siler**
  jsiler@bmas.com,rwhitaker@bmas.com,madams@bmas.com,jeckels@bmas.com
- **Kathryn Anne Teresa Starnella**
  kathryn.starnella@state.co.us,debbie.bendell@state.co.us
- **Martin Thomas Wirth**
  martin.wirth@specialtywrench.com

THE CASTLE LAW GROUP, LLC

s/ *Colette Poeppel*
Colette Poeppel, paralegal