| COUNTY COURT, PARK COUNTY, COLORADO | |
|---|---|
| Court Address:<br>P.O. Box 190, 300 Fourth Street, Fairplay, CO, 80440 | DATE FILED: June 18, 2014 4:54 PM<br>CASE NUMBER: 2014C30068 |
| **Plaintiff(s)** FEDERAL NATIONAL MORTGAGE ASSOCIATION<br>v.<br>**Defendant(s)** MARTIN T WIRTH | |
| | ⚠ **COURT USE ONLY** ⚠ |
| | Case Number: 2014C 30068<br>Division: A       Courtroom: |
| **Order: Motion** | |

The motion/proposed order attached hereto: DENIED.

The Court denies Motion For New Trial as the law allows the Federal and State case to proceed independently as they involve separate issues.
The Court further finds that interests of P.E.R.A. and Plaintiff are insufficient to prevent this Judge from hearing this case.
Judge Arthur Smith

Issue Date: 6/18/2014

*arthur R. Smith*

ARTHUR R SMITH JR.
Senior Judge



Page 1 of 1

| County Court<br>Park County, Colorado<br>Court Address: 300 4th Street, PO Box 190, Fairplay, CO 80440<br>Phone Number: 719-836-2940 | FILED IN COMBINED COURT<br>JUN 1 6 2014<br>PARK COUNTY, COLORADO |
|---|---|
| Plaintiff(s)/Petitioner(s)<br>FEDERAL NATIONAL MORTGAGE ASSOCIATION<br>v.<br>Defendant(s)/Respondent(s)<br>MARTIN T. WIRTH<br>Defendant pro se | ▲         ▲<br>COURT USE ONLY |
| Attorney for Plaintiff:<br>BLOOM, MURR, ACCOMAZZO, & SILER<br>Address: 410 17th St. #2400<br>            Denver, CO 80202<br>Phone Number: 303-534-2277<br>FAX Number: 303-534-1313<br>Email: | Case Number:<br>14C030068 |
| **MOTION FOR NEW TRIAL** ||

1. This motion is filed pursuant to Colo.Rule.Civ.P Rule 59(d)(1) and (4) because of an irregularity in the proceeding by which the Defendant, Wirth, was prevented from having a fair trial. The proceedings in this case (14C030068) were conducted in violation of CRS § 13-1-122.

**BACKGROUND**

2. The forcible entry and detainer proceding was brought against the Defendant by the Plaintiff in violation of the United States Supreme Court Doctrine of Prior Exclusive Jurisdiction. The Defendant had filed a complaint [13-CV-03309-REB-KMT] with the United States Court in the District of Colorado concerning the property and raising a federal question regarding the statutory foundation of the Rule 120 hearing. The

Doctrine of Prior Exclusive Jurisdiction holds that "when one court is exercising in rem jurisdiction over a res, a second court will not assume in rem jurisdiction over the same res." Marshall v. Marshall, 547 U.S. 293, 311 (2006)

3. In this case, the Park County Court usurped the jurisdiction of the US Court in violation of a long-established doctrine in equity. However, this motion shall not be construed in any way as questioning the integrity of the regular Park County Court judge. The regular seated Park County Court judge had recused himself from the case or was replaced with the Honorable Arthur R. Smith, a Senior judge who was assigned to the case after proceedings had begun.

## A STATURY VIOLATION AND OFFICIAL MISCONDUCT

4. Senior judges in Colorado are retired and receiving payments from the privatized funds of the Colorado Public Employees Retirement Association (CoPERA).

5. The *Comprehensive Annual Financial Report of Colorado PERA* published in the fiscal year ending December 31, 2012 stated on page 73 regarding Concentration of Credit Risk, "C.R.S § 24-51-206(3) requires that no investment of the fund in common or preferred stock, or both, of any single corporation shall be of an amount which exceeds 5 percent of the then book value of the fund, nor shall the fund acquire more than 12 percent of the outstanding stock or bonds of any single corporation. The 12 percent requirement does not apply to governmental securities (U.S. Treasuries, sovereigns, etc.), GSE securities (agencies including **FNMA**, FHLMC, etc.), mortgage-backed securities (agency or non-agency), commercial mortgage-backed securities (CMBS)..." [Exhibit E][emphasis added]

6. The *Annual Report for Colorado PERA's 401(k) and DC Plans* for the fiscal year ending December 31, 2010 shows CoPERA investments in PIMCO Low Duration Fund Institutional Class on page 9. The Portfolio Composition-Top Holdings shows itemized investments in FNMA 4.5% TBA of 22%, FNMA 5% TBA of 6.85%, FNMA 1.125% of 3.80%, FNMA 5.5% of 1.45%. [ Exhibit F]

7. Therefore, all retired and senior judges in Colorado have an interest in FNMA and are a party to any case involving FNMA because they are receiving money from FNMA via their pension payments. CRS §13-1-122 describes "When a judge shall not act unless by consent" expressly stating that:

> A judge shall not act as such in any of the following cases: In an action or proceeding to which he is a party, or in which he is interested; when he is related to either party by consanguinity or affinity in the third degree; or when he has been attorney or counsel for either party in the action or proceeding, unless by consent of all parties to the action.

8. The Honorable Arthur R. Smith refused to follow CRS §13-1-122 by hiding his pecuniary interest in the Plaintiff, FNMA, from the Defendant, Wirth, through the entire proceeding. The Defendant, Wirth, was not allowed the legally required opportunity to consent or refuse to have the case heard by a judge who was evidently a party aligned with his adversary, FNMA. Wirth was thereby deprived his right to Due Process and Equal Protection. By hearing the FED case after depriving the Defendant, Wirth, of his right to consent, the Honorable Arthur R. Smith violated CRS §18-8-404. First degree official misconduct, which states:

> (1) A public servant commits first degree official misconduct if, with intent

> to obtain a benefit for the public servant or another or maliciously to cause harm to another, he or she knowingly:
> (a) Commits an act relating to his office but constituting an unauthorized exercise of his official function; or ...(c) **Violates any statute or lawfully adopted rule or regulation relating to his office**.
> (2) First degree official misconduct is a class 2 misdemeanor.
>
> [emphasis added]

9. In his official capacity as a substitute judge in the Park County Court, the Honorable Arthur R. Smith: 1. ignored the self-evidently felonious conduct of the Plaintiff that had been admitted into the County Court records and into the records of the United States Court, 2. usurped two long-standing Doctrines of the United States Supreme Court, and 3. ordered the eviction of the Defendant, Wirth, from his property and home. This order violated CRS §18-8-403. Official Oppression, which states:

    > (1) A public servant, while acting or purporting to act in an official capacity or taking advantage of such actual or purported capacity, commits official oppression if, with actual knowledge that his conduct is illegal, he:
    > (a) Subjects another to arrest, detention, search, seizure, mistreatment, dispossession, assessment, or lien; or...
    >
    > (2) Official oppression is a class 2 misdemeanor.

## CONCLUSION

Whereas:

The Honorable Arthur R. Smith willfully and knowingly refused to follow the lawful requirements of CRS §13-1-122 by hearing the case and while being interested in a favorable outcome for the Plaintiff, FNMA.

Therefore:

Pursuant to CRCP Rule 59(h) the Defendant, Wirth, respectfully requests a new hearing and trial.

Dated: June 16, 2014
Martin T. Wirth
Defendant pro se
36 Iris Drive
Bailey, CO 80421

Telephone: 303-816-1054
Email: martin.wirth@specialtywrench.com

## CERTIFICATE OF MAILING

I certify that on June16, 2014 the original of this Answer was filed with the Court; and a true and accurate copy of this **MOTION FOR NEW TRIAL** was served on the other party(ies) by placing it in the United States mail, postage pre-paid and addressed to the following:

BLOOM, MURR, ACCOMAZZO, & SILER
Address: 410 17th St. #2400
          Denver, CO 80202
Phone Number: 303-534-2277
FAX Number: 303-534-1313

FINANCIAL

## Notes to the Financial Statements
*(In Thousands of Dollars)*

The following table represents the balances relating to the securities lending transactions as of December 31, 2012, and December 31, 2011.

|  | FAIR VALUE OF UNDERLYING SECURITIES DECEMBER 31, 2012 | FAIR VALUE OF UNDERLYING SECURITIES DECEMBER 31, 2011 |
|---|---|---|
| Fixed income | $317,737 | $330,859 |
| Global stocks | 1,079,322 | 1,059,371 |
| **Total** | **$1,397,059** | **$1,390,230** |

As of December 31, 2012, the fair value of lent securities was $1,397,059, the value of associated cash collateral received was $1,438,586, and the cash collateral investment value was $1,434,862. PERA's income net of expenses from securities lending was $12,756 for the year ended December 31, 2012. Included in net securities lending income for the year ended December 31, 2012, is $271 from commingled funds. As of December 31, 2011, the fair value of lent securities was $1,390,230, the value of associated cash collateral received was $1,427,877, and the cash collateral investment value was $1,423,742. PERA's income net of expenses from securities lending was $14,535 for the year ended December 31, 2011. Included in net securities lending income for the year ended December 31, 2011, is $438 from commingled funds.

### *Custodial Credit Risk*
Custodial credit risk for investments is the risk that, in the event of the failure of the counterparty to a transaction, PERA would not be able to recover the value of investment or collateral securities that are in possession of an outside party. PERA has no formal policy for custodial credit risk for investments. Investment securities are exposed to custodial credit risk if the securities are uninsured, are not registered in PERA's name and are held by either a counterparty or the counterparty's trust department or agent, but not in PERA's name. Northern Trust is the master custodian for the majority of PERA's securities. At December 31, 2012, there were no investment or collateral securities subject to custodial credit risk and $24,792 in foreign currency deposits held at Northern Trust which were uninsured and uncollateralized and therefore exposed to custodial credit risk.

### *Concentration of Credit Risk*
Concentration of credit risk is the risk of loss that may be attributed to the magnitude of PERA's investment in a single issuer. C.R.S. § 24-51-206 (3) requires that no investment of the fund in common or preferred stock, or both, of any single corporation shall be of an amount which exceeds 5 percent of the then book value of the fund, nor shall the fund acquire more than 12 percent of the outstanding stock or bonds of any single corporation. The 12 percent requirement does not apply to governmental securities (U.S. Treasuries, sovereigns, etc.), GSE securities (agencies including FNMA, FHLMC, etc.), mortgage-backed securities (agency or non-agency), commercial mortgage-backed securities (CMBS), asset-backed securities, or municipal securities. There is no single issuer exposure that comprises 5 percent of the then book value of the fund and no holdings greater than 12 percent of the outstanding stock or bonds of any single corporation at December 31, 2012.

Reconciliation of Credit and Interest Rate Risk Disclosures to Financial Statements

|  | AS OF DECEMBER 31, 2012 |
|---|---|
| Fixed income | $10,099,258 |
| Real estate debt | 64,998 |
| Fixed-income securities classified as short-term | 283,307 |
| **Total fixed income securities** | **$10,447,563** |

### *Credit Risk*
Credit risk is the risk that an issuer or other counterparty to an investment will not fulfill its obligation. PERA's credit risk policy is as follows: As of December 31, 2012, PERA held investments across the credit ratings spectrum, with the majority invested in investment grade issuers as defined as a minimum rating of Baa3/BBB-, issued by Moody's and Standard and Poor's (S&P), respectively. Investment-grade fixed income managers are prohibited from buying securities rated CCC or below. Some investment grade managers are allowed to purchase below investment grade securities, but in general are limited to no more than 5 percent exposure to below investment grade securities. For portfolio managers that manage below investment grade portfolios, securities rated CCC or below generally cannot exceed the benchmark's weighting of securities rated CCC or below plus 5 percent. The table on the next page provides S&P credit quality ratings for PERA's fixed income holdings as of December 31, 2012.

Exhibit E

# STANDARD & POOR'S

# PIMCO Total Return Fund Institutional Class

AS OF MARCH 31, 2011

TICKER: PTTRX

**ASSET CLASS**
Taxable Bond

**MORNINGSTAR CATEGORY**
Intermediate-Term Bond

**FUND VOLATILITY (RISK)**
Alpha (3-Yr.): 3.27%*
Beta (3-Yr.): 0.92*
Standard Deviation (3-Yr.): 4.55%
*Calculated against BarCap US Agg Bond TR USD.

Alpha is a measure of the difference between a portfolio's actual returns and its expected returns, given its level of market risk, which is known as beta. A positive alpha indicates the portfolio has performed better than predicted, given its level of market risk (beta). A negative alpha indicates a portfolio has underperformed, given the expectations established by the fund's market risk exposure. Alpha may be useful in analyzing a manager's ability to add value on a risk adjusted basis to a portfolio's performance.

Beta is a means of measuring the volatility of a security in comparison with the market as a whole. A beta of 1 indicates that the security's price has moved with the market. A beta of more or less than 1 indicates that the security's price will be more or less volatile, respectively, than the market.

Standard deviation measures the performance volatility of an investment against itself — that is, how much the investment goes up or down. The larger the standard deviation, the more likely the investment may experience a return that is far more or far less than its average.

**GENERAL INFORMATION**
Fund of Funds: No
Share Price (03/31/11): $10.88
Fund Size (03/31/11): $136,166.6m
Fund Began: 05/11/87
Manager: William Gross
Manager Tenure: Since 05/87
Duration: 4.81 Years
Average Credit Quality: A
Average Coupon: 4.86%

Family & Address:
PIMCO
PIMCO Funds
2187 Atlantic Street
Stamford, CT 06902

Mutual funds are currently offered through ING Investment Advisors, LLC, a FINRA Registered Broker Dealer and SEC Registered Investment Adviser.

Fund report published by Standard & Poor's Financial Communications, a division of The McGraw-Hill Companies. This report is for informational purposes only. The report contains statements and statistics that have been obtained from sources believed to be reliable but not guaranteed as to accuracy or completeness. Neither Standard & Poor's nor the information providers shall have any liability, contingent or otherwise, for the accuracy, completeness, or timeliness of the information or for any decision made or action taken by you in reliance upon the information.

The McGraw-Hill Companies

## FUND INVESTMENT OBJECTIVE

The investment seeks maximum total return. The fund normally invests at least 65% of assets in a diversified portfolio of Fixed-Income Instruments of varying maturities, which may be represented by forwards or derivatives such as options, futures contracts, or swap agreements. It invests primarily in investment-grade debt securities, but may invest up to 10% of total assets in high-yield securities ("junk bonds"). The fund may invest in derivative instruments, such as options, futures contracts or swap agreements, or in mortgage- or asset-backed securities.

## PORTFOLIO COMPOSITION

**TOP HOLDINGS** (12/31/10)
| Holding | % |
|---|---|
| Pimco Fds Private Account Portfolio Ser | 10.95% |
| FNMA 4.5% TBA | 8.35% |
| FNMA 5% TBA | 6.10% |
| FNMA | 3.64% |
| US Treasury (Fut) | 3.37% |
| FNMA | 2.43% |
| FNMA 4% TBA | 2.14% |
| US Treasury Note 1.875% | 1.67% |
| BRAZIL NTN-F | 1.59% |
| US Treasury Note 2.125% | 1.46% |

Top 10 Holdings As Percentage of Total: 41.70%
Total Number of Holdings: 16,947
Annual Turnover Ratio: 402%

**ASSET TYPES** (12/31/10)
Stocks 0.04%  |  Bonds 121.41%  |  Cash -40.50%  |  Other 19.05%

**CREDIT QUALITY BREAKDOWN** (03/31/10)
| Rating | % |
|---|---|
| AAA | 64.00% |
| AA | 9.00% |
| A | 13.00% |
| BBB | 8.00% |
| BB | 3.00% |
| B | 2.00% |
| Below B | 1.00% |
| Not Rated | 0.00% |

### ANNUAL RETURNS

| | YTD | 2010 | 2009 | 2008 | 2007 | 2006 | 2005 | 2004 | 2003 | 2002 |
|---|---|---|---|---|---|---|---|---|---|---|
| Fund | 1.10% | 8.83% | 13.83% | 4.82% | 9.07% | 3.99% | 2.89% | 5.14% | 5.56% | 10.20% |
| Benchmark* | 0.34% | 5.89% | 5.24% | 5.08% | 7.39% | 4.08% | 1.58% | 3.04% | 4.31% | 9.84% |
| Peer Group | 0.98% | 7.72% | 13.97% | -4.70% | 4.70% | 4.15% | 1.80% | 3.91% | 5.10% | 8.04% |



**GROWTH OF $10,000** (06/30/01 - 03/31/11)
Fund: $20,001
Benchmark*: $16,486
Peer Group: N/A



**ANNUALIZED TOTAL RETURN**

| | Crt Qtr | 1 Yr | 3 Yr | 5 Yr | 10 Yr |
|---|---|---|---|---|---|
| Fund | 1.10% | 6.86% | 8.31% | 8.40% | 7.15% |
| Benchmark* | 0.34% | 4.63% | 4.49% | 5.68% | 5.20% |
| Peer Group | 0.98% | 6.16% | 5.63% | 5.50% | 5.15% |

### FEES & EXPENSES

Fund Total Expense Ratio (net): 0.46%   Fund Total Expense Ratio (gross): 0.47%
To deter market-timing or other disruptive trading in fund shares, some funds have a fee on a redemption of shares recently purchased.

Total return performance is historical and assumes reinvestment of all dividends and capital gain distributions. Past performance is no guarantee of future results. Mutual and collective funds are not deposits or obligations of, or guaranteed or endorsed by, any bank, and are not insured or guaranteed by the Federal Deposit Insurance Corporation or any other government agency. Investment return and principal value will fluctuate, so that when redeemed, an investor's shares may be worth more or less than their original cost. Current performance may be lower or higher than the performance data quoted; current performance information can be obtained at www.pimco-funds.com or 800-927-4648. The principal of government bonds is guaranteed only at maturity. They can decline in value at any timer prior to maturity.

You should consider the fund's investment goals, risks, charges, and expenses before you invest. You'll find this and other information in the fund's prospectus, which you should read carefully before investing.

*Benchmark for this fund is Barclays Intermediate Government/Credit Index. The Barclays (known as Lehman until 11/2008) Intermediate Government/Credit Index is comprised of U.S.-dollar denominated fixed-income securities that are rated investment grade (BBB or higher by Standard and Poor's), including U.S. government, corporate, and sovereign debt, which have 5-7 years to final maturity. All index information which is credited marked or entitled 'Barclays' is Copyright Barclays Capital 2010. All Rights Reserved Unpublished PROPRIETARY TO BARCLAYS CAPITAL INCORPORATED.

© 2011 Morningstar, Inc. All Rights Reserved. The information contained herein: (1) is proprietary to Morningstar; (2) may not be copied or distributed; and (3) is not warranted to be accurate, complete or timely. Neither Morningstar nor its content providers are responsible for any damages or losses arising from any use of this information. Past performance is no guarantee of future results.

PTTRX



Exhibit F

*Annual Report for Colorado PERA's 401(k) and DC Plans*   9